1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
6  State Bar No. 117315
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-3664
     Telephone: (415) 703-1362
8    Fax: (415) 703-1234
     Email: peggy.ruffra@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13
   **CHRISTOPHER PRATER,**                     C 07-5382 TEH
14
                                  Petitioner,
15
              **v.**
16
   **DERRAL ADAMS, Warden,**
17
                                  Respondent.
18

19    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   STATEMENT OF THE CASE                                                    1

4   STATEMENT OF FACTS                                                       2

5   STANDARD OF REVIEW                                                       3

6   ARGUMENT                                                                 4

7          **NO CONSTITUTIONAL ERROR OCCURRED AT PRATER'S**
           **TRIAL**                                                        4
8
                A.   Jury Instructions                                      5
9
                B.   Prosecutorial Misconduct                               6
10
                C.   Motion To Suppress Confession                          9
11
                D.   Appellate Counsel                                     11
12
    CONCLUSION                                                             12
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Brown v. Payton*
544 U.S. 133 (2005)                                                                                                                8

5

*Coleman v. Thompson*
6     501 U.S. 722 (1991)                                                                                                            11

7     *Colorado v. Connelly*
479 U.S. 175 (1986)                                                                                                               10

8
*Columbe v. Connecticut*
9     367 U.S. 568 (1961)                                                                                                           10

10    *Darden v. Wainwright*
477 U.S. 168 (1986)                                                                                                                8

11
*Donnelly v. DeChristoforo*
12    416 U.S. 637 (1974)                                                                                                            8

13    *Duckett v. Godinez*
67 F.3d 734 (9th Cir. 1995)                                                                                                        6

14
*Evitts v. Lucey*
15    469 U.S. 387 (1985)                                                                                                           11

16    *Garcia v. Bunnell*
33 F.3d 1193 (9th Cir. 1994)                                                                                                       9

17
*In re Clark*
18    5 Cal.4th 750 (1993)                                                                                                          2

19    *In re Miller*
17 Cal.3d 734 (1941)                                                                                                               2

20
*Jones v. Barnes*
21    463 U.S. 745 (1983)                                                                                                           11

22    *Kimmelman v. Morrison*
477 U.S. 365 (1986)                                                                                                               10

23
*Lockyer v. Andrade*
24    538 U.S. 63 (2003)                                                                                                            4

25    *Menendez v. Terhune*
422 F.3d 1012 (9th Cir. 2005)                                                                                                     5, 8

26
*Ortiz-Sandoval v. Gomez*
27    81 F.3d 891 (9th Cir. 1996)                                                                                                   8

28

**TABLE OF AUTHORITIES** (continued)

Page

*Pennsylvania v. Finley*
481 U.S. 551 (1987)                                                    11

*Ross v. Moffitt*
417 U.S. 600 (1974)                                                    11

*Rupe v. Wood*
93 F.3d 1434 (9th Cir. 1996)                                            6

*Schneckloth v. Bustamonte*
412 U.S. 218 (1973)                                                    10

*Smith v. Robbins*
528 U.S. 259 (2000)                                                    11

*Strickland v. Washington*
466 U.S. 668 (1984)                                                4, 6, 9, 11

*Strickland. Bell v. Cone*
535 U.S. 685 (2002)                                                     4

*Tatum v. Dormire*
183 F.3d 875 (8th Cir. 1999)                                            5

*Thompson v. Borg*
74 F.3d 1571  (9th Cir. 1996)                                           8

*United States v. Jackson*
84 F.3d 1154 (9th Cir. 1996)                                            9

*United States v. Necoechea*
986 F.3d 1273 (9th Cir. 1993)                                           8

*United States v. Young*
470 U.S. 1 (1985)                                                       9

*Wilson v. Henry*
185 F.3d 986 (9th Cir. 1999)                                           10

*Woodford v. Visciotti*
537 U.S. 19 (2002) (per curiam)                                         4

*Yarborough v. Gentry*
540 U.S. 1 (2003) (per curiam)                                          4

**Constitutional Provisions**

United States Constitution
    Fourteenth Amendment                                               11

**TABLE OF AUTHORITIES  (continued)**

Page

**Statutes**

Antiterrorism and Effective Death Penalty Act of 1996                          3, 4

California Penal Code
    § 243(d)                                                                                                    1
    § 245(a)(1)                                                                                               1
    § 1192.7(c)(8)                                                                                        1
    § 1192.7(c)(23)                                                                                      1

United States Code, Title 28
    § 2254(d)(1)                                                                                            4
    § 2254(e)(1)                                                                                            5

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | JULIET B. HALEY
Deputy Attorney General
5 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
6 | State Bar No. 117315
   455 Golden Gate Avenue, Suite 11000
7 |    San Francisco, CA 94102-3664
   Telephone: (415) 703-1362
8 |    Fax: (415) 703-1234
   Email: peggy.ruffra@doj.ca.gov
9 | Attorneys for Respondent

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CHRISTOPHER PRATER,** | C 07-5382 TEH |
| Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |
| v. | |
| **DERRAL ADAMS, Warden,** | |
| Respondent. | |

**STATEMENT OF THE CASE**

On December 6, 2004, a San Mateo County jury convicted petitioner of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)) and battery resulting in serious bodily injury (Cal. Penal Code § 243(d)), along with great bodily injury and deadly weapon enhancements (Cal. Penal Code §§ 1192.7(c)(8), (c)(23)). Exh. 1, Clerk's Transcript ("CT") 179-182. The trial court found that petitioner had sustained a prior strike and a prior prison term. Exh. 2, Reporter's Transcript ("RT") 504-505. On February 1, 2004, the court sentenced petitioner to nine years in prison. CT 200-201, 205-206.

Petitioner filed a notice of appeal. In the meantime, he filed several habeas corpus petitions in San Mateo County Superior Court, which were denied because the direct appeal was

1  pending.  Petition, Exhs. C, D.

2        On March 23, 2006, the California Court of Appeal affirmed the judgment of conviction

3  on direct appeal.  Exh. 6.  On June 14, 2006, the California Supreme Court denied review.  Exh. 8.

4        On July 10, 2006, petitioner filed a habeas corpus petition in the San Mateo County

5  Superior Court.  On August 23, 2006, the court denied relief on grounds that the petition was

6  untimely, and alternatively because petitioner had not demonstrated ineffective assistance of counsel.

7  Petition, Exh. D.

8        On September 1, 2006, petitioner filed a habeas corpus petition in the California Court of

9  Appeal, which was denied on October 6, 2006.  Exh. 9.

10        On October 25, 2006, petitioner filed a habeas corpus petition in the California Supreme

11  Court, which was denied on April 25, 2007, citing *In re Clark*, 5 Cal.4th 750 (1993).  Exh. 10.

12        On May 15, 2007, petitioner filed a habeas corpus petition in the California Supreme

13  Court, which was denied on September 19, 2007, citing *In re Clark*, 5 Cal.4th 750, and *In re Miller*,

14  17 Cal.3d 734 (1941).  Exh. 11.

15        On October 22, 2007, petitioner filed the instant petition in district court.[1]

16

17                    **STATEMENT OF FACTS**

18        The California Court of Appeal summarized the facts of the offenses as follows.

19  On September 19, 2004, Prater was living in a room in a house in East Palo Alto. He
    rented the room from Karen Johnson, who owned and resided in the house.

20

21  Prater was acquainted with Daryl Thomas, a homeless crack cocaine addict. In early
    September 2004, Thomas had a disagreement with his girlfriend, with whom he lived, and

22  moved out of her home. Prater told him he could stay in his room until the house was
    sold. Thomas began staying in Prater's room on September 17 or 18, 2004. He brought

23  two suitcases full of his clothing and shoes. On the evening of September 18th, he spent
    the night alone in Prater's room.

24  Thomas left the room early in the morning of September 19th. He returned and crawled
    through Prater's window because he did not have a key. Johnson saw him entering by the

25  window at approximately 9:40 a.m. She told Thomas to get his belongings and leave.
    Thomas and a male friend retrieved his two suitcases and left. Thomas did not steal

26

27  _____

28      1. Petitioner did not name the warden at the state prison where he is incarcerated. We have
named that individual, Derral Adams, as the respondent.

1   anything from Prater, "but if [Prater] said something was missing, more than likely
    [Thomas's friend] did."
2
3   At about 2:30 p.m. that day, Johnson told Prater that Thomas had been inside his room and
    had removed two suitcases. When Johnson saw Prater at approximately 6:00 p.m., Prater
    appeared "upset" and a "little" angry. Prater said he thought that Thomas had taken some
4   of his property. Johnson went out, and returned around 8:30 p.m. She saw Prater when
    she returned, who seemed agitated and said he had been looking for Thomas.
5
6   At approximately 11:45 p.m. that evening, Prater came to Johnson's door. He told her that
    Thomas had returned, and Prater asked her to call the police. Johnson called police
    dispatch. Within five to ten minutes of Prater coming to her door, Johnson heard a voice
7   and looked out her window. She saw Prater leaning over a man in the foliage and cursing
    at him. Johnson then saw the man, whom she assumed to be Thomas, run out of the yard
8   screaming loudly. Prater came back inside and asked Johnson if she had called the police.
    He was holding "two knives, one in each hand." Prater told her "I could have killed that
9   nigger, I could have stabbed him in the heart." Police arrived within five minutes.
    Johnson showed them where she kept her knives in the kitchen.
10
11  Because Johnson was in the process of selling her home, she entered Prater's room to
    clean during the weekend after the stabbing. She began folding clothing that was on the
    floor. In the clothing, she found a knife with a brown stain on it. To the best of Johnson's
12  knowledge, no one other than Prater had been in the room since September 19, 2004.
13  Dr. David Gregg, a trauma surgeon at Stanford Hospital, treated Thomas shortly after
    midnight on September 20, 2004. Thomas had a deep laceration "into the belly of the
14  muscle" in his right leg. He was "not completely alert," and had lost "probably half of his
    blood volume." Thomas's toxicology screen indicated exposure to marijuana,
15  amphetamines, and cocaine.
16  At approximately 3:00 a.m. on September 20th, San Mateo County Detective Frank Taylor
    interviewed Prater at the police station. Prater told him that Thomas arrived at his
17  residence, and he told Johnson to call the police. Prater went outside to see if Thomas was
    vandalizing his car. Prater stated that Thomas looked like he was "about ready to swing
18  at me," because of "the look on his face." Prater saw nothing in Thomas's hands, and
    Thomas had no weapons that he "knew of." Prater was not afraid of Thomas. He stabbed
19  Thomas when he was already on the ground. Prater was so angry he could have killed
    Thomas, and he told Thomas so. Prater stabbed Thomas because he "just wanted him out
20  of there."
21  At trial, Prater testified that he grabbed one knife, and went outside because he was afraid
    Thomas would damage his car. Once Thomas saw the knife, he became "even more
22  intimidating," and lunged and swung at Prater. Prater stabbed Thomas in the leg, and he
    fell into a tree. He did not stab Thomas while he was on the ground. Prater yelled at him
23  to leave, and Thomas got up and ran away screaming.
24  Exh. 6 at 2-4.
25
26                              **STANDARD OF REVIEW**
27       This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996
28  (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

1  "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

2  U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal court has no authority to grant habeas

3  relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"

4  clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A decision constitutes an

5  unreasonable application of Supreme Court law only if the state court's application of law to the

6  facts is not merely erroneous, but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75

7  (2003). The petitioner bears the burden of showing that the state court's decision was unreasonable.

8  *Visciotti*, 537 U.S. at 25.

9

10                                **ARGUMENT**

11          **NO CONSTITUTIONAL ERROR OCCURRED AT PRATER'S TRIAL**

12          Petitioner contends that he received ineffective assistance of trial counsel for failing to

13  request instructions, failing to object to prosecutorial misconduct, and failing to move to suppress

14  his statement to police; that the prosecutor committed misconduct; and that he received ineffective

15  assistance of appellate counsel. As the claims are related, we address them together.[2/]

16          In order to establish that counsel was ineffective, petitioner bears the burden of showing

17  that counsel's performance fell below an objective standard of reasonableness under prevailing

18  professional norms, and that there is a reasonable probability the result of the proceeding would have

19  been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 695-696 (1984). In considering

20  the first prong of the test, the reviewing court "must indulge a strong presumption that counsel's

21  conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. On federal

22  habeas review the question is whether the state court reasonably applied *Strickland*. *Bell v. Cone*,

23  535 U.S. 685, 698-699 (2002). Thus, federal habeas review of the denial of a claim of ineffective

24  assistance is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

25  _____

26          2.    Petitioner's exact claims are somewhat unclear, because he states them summarily on
     the habeas corpus form and then attaches various documents. *See* Petition at 6. The Order to Show
27  Cause identifies the claims generally as ineffective assistance of trial counsel, prosecutorial
     misconduct, and ineffective assistance of appellate counsel. We have attempted as best we can to
28  discern what he intends to raise and to respond to those allegations.

**A.  Jury Instructions**

The California Court of Appeal considered this claim both in context of whether the trial court had a sua sponte duty to give additional defense instructions and whether counsel was ineffective for failing to request them.  The appellate court held:

> Prater maintains that the instructions he now claims were required were "consistent with [his] theory of the case, namely self-defense, defense of habitation, and attempting to apprehend a person who has committed a felony." Prater's sole theory of the case advanced at trial was that he committed the assault and battery in self-defense. The court gave the jury six different instructions on self-defense: CALJIC numbers 5.30, 5.31, 5.40, 5.50, 5.51, and 5.55.  Those instructions were regarding self-defense against assault, defense of property, and the right to eject a trespasser.
>
> Prater now claims that the court had a duty to instruct the jury regarding justifiable homicide based on three different factual scenarios: self-defense, defense of another, and the necessity to apprehend a dangerous person who has committed a felony. (CALJIC Nos. 5.13, 5.25, 5.10.)  "It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)  Because justifiable homicide instructions had no application to the facts of this case, Prater claims the court should have given a modified version of the instructions.  Altering the justifiable homicide instructions to make them applicable to the crimes charged here, while preserving a correct statement of the law, would result in the self-defense instructions given by the court.
>
> Justifiable homicide instructions did not apply either to the evidence adduced at trial or to Prater's defense theory at trial.  Moreover, the court instructed the jury regarding self-defense against assault, defense of property, and the right to eject a trespasser.  We find no error in the trial court's failure to give the instructions Prater now claims were required.
>
> Prater claims, in the alternative, his trial counsel was ineffective based on his failure to request the "modified" justifiable homicide instructions.  "When a convicted defendant complains of ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 80 L. Ed. 2d 674.)  The defendant must show that "'counsel had no rational tactical purpose for [his or her] omission.'" (*People v. Lucas* (1995) 12 Cal.4th 415, 437, citing *People v. Zapien* (1993) 4 Cal.4th 929, 980.)  Here, the instructions requested by counsel were consistent with the defense theory and the facts demonstrated at trial.  Trial counsel's failure to request modified justifiable homicide instructions did not amount to ineffective assistance of counsel.

Exh. 6 at 5-6.

The state court's finding that there was insufficient evidence to warrant a defense instruction is presumed correct under 28 U.S.C. § 2254(e)(1). *Menendez v. Terhune,* 422 F.3d 1012, 1029 (9th Cir. 2005); *Tatum v. Dormire*, 183 F.3d 875, 879 (8th Cir. 1999).  Accordingly, the state court's determination on this state law issue "should be the final word on the subject." *Menendez* at 1029. Here, the state court determined that modifying the justifiable homicide instructions would

1  amount to the same self-defense instructions that were given at petitioner's trial, and that those

2  instructions adequately addressed the defense advanced at trial.    Thus, the six self-defense

3  instructions that were given sufficiently informed the jury of petitioner's defense.  *See Duckett v.*

4  *Godinez*, 67 F.3d 734, 743-746 (9th Cir. 1995).  Counsel was not required to request additional

5  instructions that would have been denied as duplicative.  *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th

6  Cir. 1996) ("the failure to take a futile action can never be deficient performance").  The state court's

7  conclusion that counsel rendered effective assistance was a reasonable application of *Strickland*.

8  **B.  Prosecutorial Misconduct**

9  The California Court of Appeal rejected petitioner's related claims of prosecutorial

10  misconduct and ineffective assistance as follows:

11  Prater argues that the prosecutor committed misconduct in her closing argument. He
   claims that she introduced facts not in evidence and impugned defense counsel's character.

12  Prater also asserts that, even if his claim was waived by his attorney's failure to object,
   that failure amounted to ineffective assistance of counsel.  In light of that claim, we will

13  address Prater's contentions on the merits to the extent necessary.

14  In general, a defendant may not complain on appeal of trial misconduct by a prosecutor
   unless the defendant timely sought an assignment of misconduct and requested that the

15  jury be admonished to disregard the impropriety. (*People v. Young* (2005) 34 Cal.4th
   1149, 1184-1185.) Prater has made no claim that any harm could not have been cured by

16  objection, and consequently has waived any objection.

17  Even had Prater preserved his claim, he must demonstrate that the prosecutor's remarks
   during closing argument "'comprised a pattern of conduct "so egregious that it infected

18  the trial with such unfairness as to make the conviction a denial of due process."'"
   (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214.)  Conduct by a prosecutor that does not

19  render a criminal trial fundamentally unfair is prosecutorial misconduct under state law
   only if it involves "'the use of deceptive or reprehensible methods to attempt to persuade

20  either the court or the jury.'" (*People v. Gray* (2005) 37 Cal.4th 168, 216, citing *People
   v. Hill* (1998) 17 Cal.4th 800, 819.)  "When the claim focuses upon comments made by

21  the prosecutor before the jury, the question is whether there is a reasonable likelihood that
   the jury construed or applied any of the complained-of remarks in an objectionable

22  fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

23  Prater claims that a number of the prosecutor's comments constituted "testimony."  The
   range of the prosecution's argument "is properly very wide, and matters of common

24  knowledge and historical facts may be referred to and interwoven in such argument."
   (*People v. Johnson* (1950) 99 Cal. App. 2d 717, 730.)  A prosecutor may properly

25  "interject her own view if it is based on facts of record." (*People v. Frye* (1998) 18
   Cal.4th 894, 1018.)

26

27  Prater objects to the following statement made in the rebuttal portion of the prosecution's
   closing argument: "But what I do know is that East Palo Alto is a dangerous place because
   of people like the defendant who think it's perfectly fine to stab another human being and

28  then laugh about it later while describing it because that person stole from him."  Contrary

1   to Prater's assertion, the prosecutor's comment was not "testimony" about the relative
2   safety of East Palo Alto, but a permissible comment on the evidence that Prater's actions
    made East Palo Alto dangerous.   Prater's own counsel raised the issue of the
3   dangerousness of East Palo Alto in his opening statement to argue that Prater had a
    reasonable fear of Thomas in the situation. Moreover, Prater's counsel raised the issue of
4   East Palo Alto's dangers in his closing argument, to which the prosecution was
    responding. Defense counsel stated: "[Prater] checks and looks outside and doesn't see
5   anyone or any sign of the police. And he lives in East Palo Alto. We don't live in East
    Palo Alto, but he does. East Palo Alto is not the suburbs in San Carlos, it's not the suburbs
6   in Foster City. None of us want to live in East Palo Alto, but unfortunately, my client does
    and so does Daryl Thomas."

7   Next, Prater objects to the following statements by the prosecutor in the rebuttal portion
    of closing argument: "Please do not be distracted by the let's-trash-the-victim-defense.
8   I hear that in every case. Let's trash the victim. Let's distract you from what really
    happened and trash on Daryl [Thomas]. Yes, he's a thief. Yes, he smokes crack. Yes, he
9   probably committed a burglary that day when he got immunity. That wasn't discussed,
    but he'd like to bring it up so that's fine. . . . So what? Prostitutes can be raped, and
10  crackheads can be stabbed." Prater claims that these statements were "testimonial" and
    improperly cast aspersions on his "'constitutional right to defend himself and be
11  represented by counsel.'" In the rebuttal portion of closing argument, the prosecutor is
    entitled to rebut defense counsel's arguments. The prosecutor's remark that "I hear [a
12  trash the victim defense] in every case" was not improper testimony, but allowable
    hyperbole. Likewise, there is no reasonable likelihood that the jury construed the
13  prosecutor's rebuttal of defense counsel's argument that the victim's testimony could not
    be trusted as somehow "casting aspersions" on Prater's right to counsel and a defense.
14
15  Prater also objects to the statement in the colloquy quoted above that "Yes, [Thomas]
    probably committed a burglary that day when he got immunity. That wasn't discussed,
16  but [defense counsel] would like to bring it up so that's fine." He claims that this comment
    "intentionally placed before the jury 'facts' outside the record," and "impugned defense
17  counsel's character and integrity." Again, the prosecutor made this argument in rebuttal,
    after defense counsel argued that Thomas had reason to testify falsely because he had
18  received immunity from prosecution, and stated "what the prosecutor doesn't understand
    . . . is that Darryl Thomas committed a residential burglary that day." The prosecutor's
19  comment did not impugn defense counsel's character, but simply explained why the
    prosecutor was discussing the issue in rebuttal. Assuming this fact was outside the record,
20  it was defense counsel, not the prosecutor, who initially revealed it to the jury. Moreover,
    we fail to see any prejudice to Prater in the revelation that the victim may have committed
21  a burglary on the day of the incident.

22  Prater also objects to the prosecutor's comments that he was "not just a sociopath and a
    barbarian, but also the most 'nonchalant, indifferent, nonremorseful' relater of facts
23  surrounding a stabbing that she had ever seen." "Prosecuting attorneys are allowed a wide
    range of descriptive comment," including "colorful terms." (*People v. Williams* (1997) 16
24  Cal.4th 153, 221.) "A prosecutor is allowed to make vigorous arguments and may even
    use such epithets as are warranted by the evidence, as long as these arguments are not
25  inflammatory and principally aimed at arousing the passion or prejudice of the jury."
    (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1251, 278 Cal. Rptr. 640.) Courts have
26  considered numerous epithets used in closing arguments, including "animal," "parasite,"
    and "perverted maniac," and found their use not to constitute misconduct. (See *People v.*
27  *Pensinger, supra,* at p. 1251; *People v. Terry* (1962) 57 Cal.2d 538, 561, 21 Cal. Rptr.
    185; *People v. Rodriguez* (1970) 10 Cal. App. 3d 18, 36-37, 88 Cal. Rptr. 789.)

28  The prosecutor's actual comment here was that "We are not barbarians, we have laws.

1  Defendant seems to be somewhat of a barbarian. He seems to be somewhat nonchalant
   about this stabbing quite frankly. . . . [¶] I don't know what a sociopath is, but he's
2  probably pretty close. I have never seen such a nonchalant, indifferent, nonremorseful
   describing of a stabbing . . . as I have in this case by the defendant." The prosecutor's
3  actual statements, much milder than claimed by Prater, were within the range of "colorful
   terms" properly used by the prosecutor in her rebuttal closing argument.
4
   Prater's final claim of misconduct in closing argument is that the prosecutor "impugned
5  defense counsel's character" by telling the jury, "in no uncertain terms, . . . that [Prater]
   changed his 'story' because of his conversations with his lawyer." The prosecutor's actual
6  words were "The defendant has certainly changed his story since he made that original
   statement to the police. He's had time to think about it, he's had to talk to a lawyer, he's
7  had time to make a plan of attack. And the law tells you, hey, red flag, there's probably
   a reason why his story has changed." There is no reasonable likelihood that the jury
8  understood these comments as impugning defense counsel. Instead, the prosecutor was
   making "a fair comment on the state of the evidence," suggesting that the most logical
9  interpretation of the evidence was that Prater had been telling the truth in his statement to
   police in the early morning after the incident, and not testifying truthfully at trial. (*People
10 v. Mayfield* (1993) 5 Cal.4th 142, 178.) We do not find that any of the prosecutor's
   statements in closing argument rose to the level of misconduct.
11

12 Exh. 6 at 6-10.

13    Habeas relief is warranted only if the prosecutor's comments in closing argument "so

14 infected the trial with unfairness as to make the resulting conviction a denial of due process."

15 *Darden v. Wainwright,* 477 U.S. 168, 181 (1986). Because the standard of review on federal habeas

16 corpus is "the narrow one of due process, and not the broad exercise of supervisory power," even

17 improper argument does not necessarily violate a defendant's constitutional rights. *Thompson v.*

18 *Borg,* 74 F.3d 1571, 1576 (9th Cir. 1996); *see Brown v. Payton*, 544 U.S. 133, 143-147 (2005). In

19 determining whether a due process violation occurred, "[t]he arguments of counsel are generally

20 accorded less weight by the jury than the court's instructions and must be judged in the context of

21 the entire argument and the instructions." *Ortiz-Sandoval v. Gomez,* 81 F.3d 891, 898 (9th Cir.

22 1996); *see Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974) ("A court should not lightly infer

23 that a prosecutor intended an ambiguous remark to have its most damaging meaning or that a jury,

24 sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging

25 interpretations."). "Prosecutors must have reasonable latitude to fashion closing argument, and thus

26 can argue reasonable inferences based on the evidence." *United States v. Necoechea,* 986 F.3d 1273,

27 1276 (9th Cir. 1993); *Menendez v. Terhune*, 422 F.3d at 1037. In addition, "[t]he prosecutor's

28 comments must be evaluated in light of the defense argument that preceded it." *Darden v.*

1    *Wainwright,* 477 U.S. at 179.  Thus, an argument that is an "invited response" to defense counsel's

2    remarks does not prejudice the jury.  *United States v. Young,* 470 U.S. 1, 11-13 (1985); *United States*

3    *v. Jackson,* 84 F.3d 1154, 1158 (9th Cir. 1996).

4            Here, the state court reasonably concluded that no misconduct resulted from the

5    prosecutor's comments about East Palo Alto, victim Thomas, and petitioner's attitude about the

6    stabbing.  Those remarks were within the wide range of fair comment in argument, were in response

7    to defense counsel's introduction of those themes, and would not have been construed by the jury

8    as an attack on defense counsel or the right to present a defense.  Counsel was not required to make

9    an objection to the prosecutor's comments, as they did not constitute misconduct and would not have

10   changed the outcome of the trial.  *See Garcia v. Bunnell*, 33 F.3d 1193, 1199 (9th Cir. 1994) ("many

11   trial lawyers refrain from objecting during closing argument to all but the most egregious

12   misstatements by opposing counsel on the theory that the jury may construe their objections to be

13   a sign of desperation or hyper-technicality").  The state court's conclusion that counsel rendered

14   effective assistance was a reasonable application of *Strickland*.

15   **C.    Motion To Suppress Confession**

16           Petitioner contends counsel should have moved to suppress his statement to police because

17   he was taking prescription medication at the time.  He asserts that his "instability due to the

18   medication placed him in an inadequate position."  Petition, attached state petition at 3.

19           Petitioner exhausted this claim in his state habeas petitions.  The San Mateo County

20   Superior Court provided the last reasoned decision on the issue in its Order of Denial filed on August

21   23, 2006.  The superior court rejected the claim, stating:

22       Even assuming the petition is timely filed and is properly before this court, the Petitioner
         has failed to state a prima facie case for relief.  An ineffective assistance of counsel claim
23       requires a showing not only that counsel's performance was deficient, but also that the
         defense was prejudiced, i.e. that the errors were so serious that the result of the trial is
24       unreliable.  (Strickland v. Washington (1984) 466 U.S. 668, 687.)

25       Here, the Petitioner argues that his counsel ineffectively failed to move to suppress his
         confession on the grounds that his psychiatric medication rendered the confession
26       involuntary.  But he has failed to cite any authority that would compel a court to grant a
         suppression motion on such grounds.  On the contrary, the cases he cites stand for the
27       opposition proposition.  (See e.g. Colorado v. Connelly (1986) 479 U.S. 157, 165-66 (a
         confession is involuntary under the Due Process clause only when it is coerced by state
28       action, not by a defendant's psychiatric problems).)

1   The Petitioner also argues that his counsel ineffectively failed to investigate the defense
    that he could not function effectively due to his medications. However, he has not stated
2   any authority, nor is this court aware of any, that stands for the proposition that such an
    argument would be a valid legal defense to the offenses of which he was charged and
3   convicted.

4   Thus, the Petitioner was not prejudiced by his counsel's performance and has failed to
    state a prima facie case for the ineffective assistance of counsel.

5

6   Petition, Exh. D.

7           The Supreme Court has held that a confession is voluntary if it is "the product of an

8   essentially free and unconstrained choice;" it is involuntary where the suspect's "will has been

9   overborne and his capacity for self-determination critically impaired." *Columbe v. Connecticut*, 367

10  U.S. 568, 602 (1961). To make this determination, the court must consider the totality of the

11  surrounding circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). To establish

12  ineffective assistance as a result of counsel's failure to file a motion to suppress, petitioner must

13  show that "(1) had his counsel filed the motion, it is reasonable that the trial court would have

14  granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have

15  been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999);

16  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

17          The transcript of petitioner's interview with police reveals no psychological coercion

18  whatsoever by the detectives. Petition, Exh. A. The transcript also shows that petitioner was lucid

19  and responded appropriately to the detectives' questions. *Id.* In addition, petitioner told the

20  probation officer that his mental health was "getting better" as a result of his prescription

21  medications. Petition, Exh. B at 8. Thus, there appears to be no factual basis for the claim that

22  petitioner's medications impaired his mental capacity in any way.

23          Even if there were such a factual basis, as the superior court observed, a defendant's

24  psychiatric problems alone do not render a confession involuntary. In *Colorado v. Connelly*, 479

25  U.S. 175 (1986), the Supreme Court rejected a claim that the defendant's statement to police was

26  coerced as a result of his schizophrenic condition, which caused him to hear God's voice telling him

27  to confess. *Id.* at 161. The Supreme Court held, "Absent police conduct causally related to the

28  confession, there is simply no basis for concluding that any state actor has deprived a criminal

1 | defendant of due process of law." *Id.* at 164. The Supreme Court concluded that "coercive police
2 | activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning
3 | of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167. The superior court reasonably
4 | found that no state action caused petitioner's confession in this case. It follows that a motion to
5 | suppress the statement as involuntary would not have succeeded. Nor would the exclusion of
6 | petitioner's statement have resulted in a more favorable outcome, as petitioner testified at trial and
7 | told essentially the same story he had provided to police. Therefore, the superior court's conclusion
8 | that counsel rendered effective assistance was a reasonable application of *Strickland.*

9 |    **D.    Appellate Counsel**

10 |         Petitioner contends he received ineffective assistance because his appellate counsel failed
11 | to argue that trial counsel was ineffective for failing to move to suppress the confession as
12 | involuntary and for failing to investigate and present a mental defense.

13 |         The *Strickland* standard applies to claims of ineffective assistance of appellate counsel.
14 | *Evitts v. Lucey,* 469 U.S. 387 (1985). "Experienced advocates since time beyond memory have
15 | emphasized the importance of winnowing out weaker arguments on appeal and focusing on one
16 | central issue if possible, or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751-752
17 | (1983). Thus, "it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure
18 | to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith*
19 | *v. Robbins,* 528 U.S. 259, 288 (2000).

20 |         Petitioner concedes that his appellate counsel on direct appeal was limited to raising only
21 | claims that appeared on the record. Petition, attached state petition at 4. He also appears to
22 | acknowledge that the claims he wanted appellate counsel to raise were outside the record, as they
23 | involved evidence of his mental condition. *Id.* Petitioner's appellate counsel could not have raised
24 | those claims on direct appeal. Accordingly, the state courts' denial of relief was not unreasonable.[3]

25 |

26 |         3. We note that petitioner has no right to counsel, and therefore no right to effective
27 | assistance of counsel, for any state post-conviction proceedings other than the first direct appeal in
the appellate court. *Coleman v. Thompson,* 501 U.S. 722, 752 (1991); *see Pennsylvania v. Finley,*
481 U.S. 551, 555 (1987); *Ross v. Moffitt,* 417 U.S. 600 (1974). Thus, to the extent petitioner's
28 | claim may be construed as one that appellate counsel was ineffective for failing to raise these issues

1

**CONCLUSION**

2         Accordingly, respondent respectfully requests that the petition for writ of habeas corpus

3    be denied.

4

5         Dated:  May 27, 2008

6                          Respectfully submitted,

7                          EDMUND G. BROWN JR.
                           Attorney General of the State of California

8                          DANE R. GILLETTE
                           Chief Assistant Attorney General

9
                           GERALD A. ENGLER
10                         Senior Assistant Attorney General

11                         JULIET B. HALEY
                           Deputy Attorney General

12
                           /s/ Peggy S. Ruffra

13
                           PEGGY S. RUFFRA
14                         Supervising Deputy Attorney General

                           Attorneys for Respondent
15

16

17

18

19

20

21

22

23

24

25

26

27

28    in a state habeas petition, the claim is not cognizable.

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    *Prater v. Adams*

No.:    **C 07-05382 TEH (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004.

On May 27, 2008, I served the attached **(1) ANSWER TO ORDER TO SHOW CAUSE; (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER; (3) NOTICE OF LODGING OF, AND INDEX TO, EXHIBITS** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

**Christopher Prater**
**V-67110**
**California State Prison-Corcoran**
**P.O. Box 3481**
**Corcoran, CA 93212**


I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 27, 2008, at San Francisco, California.


| | |
|---|---|
| Susan Chiang | |
| Declarant | Signature |

40257965.wpd