CHRISTOPHER PRATER
V-67110
P.O. BOX ~~8290~~ 5466
~~Soledad, Ca. 93960~~
CORCORAN, CA 93212

**FILED**

JUL 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**R E C E I V E D**
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUL 1 1 2008

FILED _____
DOCKETED _____ DATE _____ INITIAL

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CHRISTOPHER PRATER        ,
          Petitioner,

V.

DERRAL ADAMS, WARDEN,
_____ Respondent.   /

CASE No. C07-5382 TEH

**MOTION FOR :**
NOTICE OF APPEAL

---

**TO: THE HONORABLE COURT IN THE ABOVE ENTITLED ACTION**

**PLEASE TAKE NOTICE:** That as soon as this matter may be heard by the

Court, the above named petitioner will move for a ___ NOTICE OF APPEAL TO

PRISON AUTHORITIES _____

in the above entitled action.

This motion is based on the records and filing in the above entitled action, and the

attached declaration of the petitioner.

DATE: JULY 06, 2008              RESPECTFULLY SUBMITTED

                         CHRISTOPHER K. PRATER, V-67110

**DECLARATION OF** _Notice of Appeal_

I, _Christopher K. Prater_, do hereby declare:

THE PLAINTIFF HERE IN ABOVE, HAS FILED A NOTICE OF APPEAL FROM THE JUDGMENT OF ~~District~~ NORTHERN DISTRICT COURT RENDERED ON MAY 27, 2008. THE PLAINTIFF HUMBLY REQUESTS THAT THE COURT OF APPEAL; FOR THE NORTHERN DISTRICT COURT TO MOVE THIS COURT CASE # C07-5382 TEH UPON THE NINTH CIRCUIT COURT OF APPEALS; REQUESTING THE NINTH CIRCUIT COURT OF APPEALS TO MAKE JUDGMENT & RULING UPON THE FOLLOWING CASE.

THE PLAINTIFF IS AN PRO SE LITIGANT, IN HIS OWN DEFENSE, AND HAS NOT RECEIVED ANY LITIGATION HELP IN THIS SAID MATTERS AS IS REQUIRED. THIS NOTICE OF APPEAL IS REQUESTED BY PLAINTIFF.

**VERIFICATION**

I am the petitioner in the above cause of action, have read the statements herein, and declare under penalty of perjury these statements are true and correct.

DATED: July 06, 2008          RESPECTFULLY SUBMITTED

_Christopher K. Prater_

CHRISTOPHER PRATER
V-67110
P.O. BOX ~~0~~ 3466
~~CORCORAN, CA. 93212~~
CORCORAN, CA 93212

_U.S. Court of Appeals_
_for THE Ninth Circuit_

CHRISTOPHER PRATER,
       Petitioner,

Case no. _C 07-5382 TEH_

v.

**PROOF OF SERVICE BY MAIL**

DERRAL ADAMS, WARDEN
       Respondent. /

     I am a citizen of the United States and a resident in the state of California. I'm currently incarcerated in a California State Prison. I'm over the age of 18 years, and a party to the within action.

     I served the following document to each of the persons named below at the address shown by placing a true copy in a sealed envelope with postage fully prepaid, in the U.S. Mail at the Institutional mailroom.

**DOCUMENT:**

    MOTION FOR NOTICE OF APPEAL

**PARTIES SERVED:**

DERRAI ADAMS, WARDEN
P.O. BOX 3466
CORCORAN, CA 93212

     I declare under penalty of perjury the above statements are true and correct. This document executed on the __06th__ day of __July__ ,200_8_, in ~~Fresno,~~ CORCORAN Ca..

By: _CHRISTOPHER K. PRATER_
       (print your name)

        SIGNED: _____

1

# TABLE OF CONTENTS

2

**Page**

3  STATEMENT OF THE CASE                                              1

4  STATEMENT OF FACTS                                                 2

5  STANDARD OF REVIEW                                                 3

6  ARGUMENT                                                           4

7        **NO CONSTITUTIONAL ERROR OCCURRED AT PRATER'S
         TRIAL**                                                      4
8

9        A.   Jury Instructions                                       5

10       B.   Prosecutorial Misconduct                                6

11       C.   Motion To Suppress Confession                           9

12   CONCLUSION                                                       12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       D.   Appellate Counsel                                        11

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
JULIET B. HALEY
Deputy Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
State Bar No. 117315
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-3664
  Telephone: (415) 703-1362
  Fax: (415) 703-1234
  Email: peggy.ruffra@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CHRISTOPHER PRATER,**<br><br>Petitioner,<br><br>v.<br><br>**DERRAL ADAMS, Warden,**<br><br>Respondent. | C 07-5382 TEH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |

## STATEMENT OF THE CASE

On December 6, 2004, a San Mateo County jury convicted petitioner of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)) and battery resulting in serious bodily injury (Cal. Penal Code § 243(d)), along with great bodily injury and deadly weapon enhancements (Cal. Penal Code §§ 1192.7(c)(8), (c)(23)). Exh. 1, Clerk's Transcript ("CT") 179-182. The trial court found that petitioner had sustained a prior strike and a prior prison term. Exh. 2, Reporter's Transcript ("RT") 504-505. On February 1, 2004, the court sentenced petitioner to nine years in prison. CT 200-201, 205-206.

Petitioner filed a notice of appeal. In the meantime, he filed several habeas corpus petitions in San Mateo County Superior Court, which were denied because the direct appeal was

1  pending. Petition, Exhs. C, D.

2          On March 23, 2006, the California Court of Appeal affirmed the judgment of conviction

3  on direct appeal. Exh. 6. On June 14, 2006, the California Supreme Court denied review. Exh. 8.

4          On July 10, 2006, petitioner filed a habeas corpus petition in the San Mateo County

5  Superior Court. On August 23, 2006, the court denied relief on grounds that the petition was

6  untimely, and alternatively because petitioner had not demonstrated ineffective assistance of counsel.

7  Petition, Exh. D.

8          On September 1, 2006, petitioner filed a habeas corpus petition in the California Court of

9  Appeal, which was denied on October 6, 2006. Exh. 9.

10          On October 25, 2006, petitioner filed a habeas corpus petition in the California Supreme

11  Court, which was denied on April 25, 2007, citing *In re Clark*, 5 Cal.4th 750 (1993). Exh. 10.

12          On May 15, 2007, petitioner filed a habeas corpus petition in the California Supreme

13  Court, which was denied on September 19, 2007, citing *In re Clark*, 5 Cal.4th 750, and *In re Miller*,

14  17 Cal.3d 734 (1941). Exh. 11.

15          On October 22, 2007, petitioner filed the instant petition in district court.[1]

16

17                              **STATEMENT OF FACTS**

18          The California Court of Appeal summarized the facts of the offenses as follows.

19  On September 19, 2004, Prater was living in a room in a house in East Palo Alto. He
   rented the room from Karen Johnson, who owned and resided in the house.
20
   Prater was acquainted with Daryl Thomas, a homeless crack cocaine addict. In early
21  September 2004, Thomas had a disagreement with his girlfriend, with whom he lived, and
   moved out of her home. Prater told him he could stay in his room until the house was
22  sold. Thomas began staying in Prater's room on September 17 or 18, 2004. He brought
   two suitcases full of his clothing and shoes. On the evening of September 18th, he spent
23  the night alone in Prater's room.

24  Thomas left the room early in the morning of September 19th. He returned and crawled
   through Prater's window because he did not have a key. Johnson saw him entering by the
25  window at approximately 9:40 a.m. She told Thomas to get his belongings and leave.
   Thomas and a male friend retrieved his two suitcases and left. Thomas did not steal
26

27  ─────────────────────────────────────────

28      1. Petitioner did not name the warden at the state prison where he is incarcerated. We have
   named that individual, Derral Adams, as the respondent.

1   anything from Prater, "but if [Prater] said something was missing, more than likely
    [Thomas's friend] did."

2

3   At about 2:30 p.m. that day, Johnson told Prater that Thomas had been inside his room and
    had removed two suitcases. When Johnson saw Prater at approximately 6:00 p.m., Prater
    appeared "upset" and a "little" angry. Prater said he thought that Thomas had taken some

4   of his property. Johnson went out, and returned around 8:30 p.m. She saw Prater when
    she returned, who seemed agitated and said he had been looking for Thomas.

5

6   At approximately 11:45 p.m. that evening, Prater came to Johnson's door. He told her that
    Thomas had returned, and Prater asked her to call the police. Johnson called police

7   dispatch. Within five to ten minutes of Prater coming to her door, Johnson heard a voice
    and looked out her window. She saw Prater leaning over a man in the foliage and cursing

8   at him. Johnson then saw the man, whom she assumed to be Thomas, run out of the yard
    screaming loudly. Prater came back inside and asked Johnson if she had called the police.

9   He was holding "two knives, one in each hand." Prater told her "I could have killed that
    nigger, I could have stabbed him in the heart." Police arrived within five minutes.

10  Johnson showed them where she kept her knives in the kitchen.

11  Because Johnson was in the process of selling her home, she entered Prater's room to
    clean during the weekend after the stabbing. She began folding clothing that was on the

12  floor. In the clothing, she found a knife with a brown stain on it. To the best of Johnson's
    knowledge, no one other than Prater had been in the room since September 19, 2004.

13  Dr. David Gregg, a trauma surgeon at Stanford Hospital, treated Thomas shortly after
    midnight on September 20, 2004. Thomas had a deep laceration "into the belly of the

14  muscle" in his right leg. He was "not completely alert," and had lost "probably half of his
    blood volume." Thomas's toxicology screen indicated exposure to marijuana,

15  amphetamines, and cocaine.

16  At approximately 3:00 a.m. on September 20th, San Mateo County Detective Frank Taylor
    interviewed Prater at the police station. Prater told him that Thomas arrived at his

17  residence, and he told Johnson to call the police. Prater went outside to see if Thomas was
    vandalizing his car. Prater stated that Thomas looked like he was "about ready to swing

18  at me," because of "the look on his face." Prater saw nothing in Thomas's hands, and
    Thomas had no weapons that he "knew of." Prater was not afraid of Thomas. He stabbed

19  Thomas when he was already on the ground. Prater was so angry he could have killed
    Thomas, and he told Thomas so. Prater stabbed Thomas because he "just wanted him out

20  of there."

21  At trial, Prater testified that he grabbed one knife, and went outside because he was afraid
    Thomas would damage his car. Once Thomas saw the knife, he became "even more

22  intimidating," and lunged and swung at Prater. Prater stabbed Thomas in the leg, and he
    fell into a tree. He did not stab Thomas while he was on the ground. Prater yelled at him

23  to leave, and Thomas got up and ran away screaming.

24  Exh. 6 at 2-4.

25

26                          **STANDARD OF REVIEW**

27      This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

28  (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

1   "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

2   U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal court has no authority to grant habeas

3   relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"

4   clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A decision constitutes an

5   unreasonable application of Supreme Court law only if the state court's application of law to the

6   facts is not merely erroneous, but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75

7   (2003). The petitioner bears the burden of showing that the state court's decision was unreasonable.

8   *Visciotti*, 537 U.S. at 25.

9

10                                    **ARGUMENT**

11              **NO CONSTITUTIONAL ERROR OCCURRED AT PRATER'S TRIAL**

12              Petitioner contends that he received ineffective assistance of trial counsel for failing to

13   request instructions, failing to object to prosecutorial misconduct, and failing to move to suppress

14   his statement to police; that the prosecutor committed misconduct; and that he received ineffective

15   assistance of appellate counsel. As the claims are related, we address them together.[2]

16              In order to establish that counsel was ineffective, petitioner bears the burden of showing

17   that counsel's performance fell below an objective standard of reasonableness under prevailing

18   professional norms, and that there is a reasonable probability the result of the proceeding would have

19   been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 695-696 (1984). In considering

20   the first prong of the test, the reviewing court "must indulge a strong presumption that counsel's

21   conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. On federal

22   habeas review the question is whether the state court reasonably applied *Strickland*. *Bell v. Cone*,

23   535 U.S. 685, 698-699 (2002). Thus, federal habeas review of the denial of a claim of ineffective

24   assistance is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

25   _____

26          2.   Petitioner's exact claims are somewhat unclear, because he states them summarily on
     the habeas corpus form and then attaches various documents. *See* Petition at 6. The Order to Show
27   Cause identifies the claims generally as ineffective assistance of trial counsel, prosecutorial
     misconduct, and ineffective assistance of appellate counsel. We have attempted as best we can to
28   discern what he intends to raise and to respond to those allegations.

Mem. of Points and Authorities in Support of Answer - C 07-5382 TEH

4

## A.   Jury Instructions

The California Court of Appeal considered this claim both in context of whether the trial court had a sua sponte duty to give additional defense instructions and whether counsel was ineffective for failing to request them. The appellate court held:

> Prater maintains that the instructions he now claims were required were "consistent with [his] theory of the case, namely self-defense, defense of habitation, and attempting to apprehend a person who has committed a felony." Prater's sole theory of the case advanced at trial was that he committed the assault and battery in self-defense. The court gave the jury six different instructions on self-defense: CALJIC numbers 5.30, 5.31, 5.40, 5.50, 5.51, and 5.55. Those instructions were regarding self-defense against assault, defense of property, and the right to eject a trespasser.

> Prater now claims that the court had a duty to instruct the jury regarding justifiable homicide based on three different factual scenarios: self-defense, defense of another, and the necessity to apprehend a dangerous person who has committed a felony. (CALJIC Nos. 5.13, 5.25, 5.10.) "It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) Because justifiable homicide instructions had no application to the facts of this case, Prater claims the court should have given a modified version of the instructions. Altering the justifiable homicide instructions to make them applicable to the crimes charged here, while preserving a correct statement of the law, would result in the self-defense instructions given by the court.

> Justifiable homicide instructions did not apply either to the evidence adduced at trial or to Prater's defense theory at trial. Moreover, the court instructed the jury regarding self-defense against assault, defense of property, and the right to eject a trespasser. We find no error in the trial court's failure to give the instructions Prater now claims were required.

> Prater claims, in the alternative, his trial counsel was ineffective based on his failure to request the "modified" justifiable homicide instructions. "When a convicted defendant complains of ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 80 L. Ed. 2d 674.) The defendant must show that "'counsel had no rational tactical purpose for [his or her] omission.'" (*People v. Lucas* (1995) 12 Cal.4th 415, 437, citing *People v. Zapien* (1993) 4 Cal.4th 929, 980.) Here, the instructions requested by counsel were consistent with the defense theory and the facts demonstrated at trial. Trial counsel's failure to request modified justifiable homicide instructions did not amount to ineffective assistance of counsel.

Exh. 6 at 5-6.

The state court's finding that there was insufficient evidence to warrant a defense instruction is presumed correct under 28 U.S.C. § 2254(e)(1). *Menendez v. Terhune,* 422 F.3d 1012, 1029 (9th Cir. 2005); *Tatum v. Dormire*, 183 F.3d 875, 879 (8th Cir. 1999). Accordingly, the state court's determination on this state law issue "should be the final word on the subject." *Menendez* at 1029. Here, the state court determined that modifying the justifiable homicide instructions would

1   amount to the same self-defense instructions that were given at petitioner's trial, and that those

2   instructions adequately addressed the defense advanced at trial.    Thus, the six self-defense

3   instructions that were given sufficiently informed the jury of petitioner's defense.  *See Duckett v.*

4   *Godinez,* 67 F.3d 734, 743-746 (9th Cir. 1995).  Counsel was not required to request additional

5   instructions that would have been denied as duplicative. *See Rupe v. Wood,* 93 F.3d 1434, 1445 (9th

6   Cir. 1996) ("the failure to take a futile action can never be deficient performance").  The state court's

7   conclusion that counsel rendered effective assistance was a reasonable application of *Strickland.*

8   **B.    Prosecutorial Misconduct**

9        The California Court of Appeal rejected petitioner's related claims of prosecutorial

10   misconduct and ineffective assistance as follows:

11        Prater argues that the prosecutor committed misconduct in her closing argument. He
     claims that she introduced facts not in evidence and impugned defense counsel's character.
12        Prater also asserts that, even if his claim was waived by his attorney's failure to object,
     that failure amounted to ineffective assistance of counsel.  In light of that claim, we will
13        address Prater's contentions on the merits to the extent necessary.

14        In general, a defendant may not complain on appeal of trial misconduct by a prosecutor
     unless the defendant timely sought an assignment of misconduct and requested that the
15        jury be admonished to disregard the impropriety.  (*People v. Young* (2005) 34 Cal.4th
     1149, 1184-1185.)  Prater has made no claim that any harm could not have been cured by
16        objection, and consequently has waived any objection.

17        Even had Prater preserved his claim, he must demonstrate that the prosecutor's remarks
     during closing argument "comprised a pattern of conduct "so egregious that it infected
18        the trial with such unfairness as to make the conviction a denial of due process.""
     (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214.)  Conduct by a prosecutor that does not
19        render a criminal trial fundamentally unfair is prosecutorial misconduct under state law
     only if it involves "'the use of deceptive or reprehensible methods to attempt to persuade
20        either the court or the jury.'" (*People v. Gray* (2005) 37 Cal.4th 168, 216, citing *People
     v. Hill* (1998) 17 Cal.4th 800, 819.)  "When the claim focuses upon comments made by
21        the prosecutor before the jury, the question is whether there is a reasonable likelihood that
     the jury construed or applied any of the complained-of remarks in an objectionable
22        fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

23        Prater claims that a number of the prosecutor's comments constituted "testimony."  The
     range of the prosecution's argument "is properly very wide, and matters of common
24        knowledge and historical facts may be referred to and interwoven in such argument."
     (*People v. Johnson* (1950) 99 Cal. App. 2d 717, 730.)  A prosecutor may properly
25        "interject her own view if it is based on facts of record." (*People v. Frye* (1998) 18
     Cal.4th 894, 1018.)

26
     Prater objects to the following statement made in the rebuttal portion of the prosecution's
27        closing argument: "But what I do know is that East Palo Alto is a dangerous place because
     of people like the defendant who think it's perfectly fine to stab another human being and
28        then laugh about it later while describing it because that person stole from him." Contrary

to Prater's assertion, the prosecutor's comment was not "testimony" about the relative safety of East Palo Alto, but a permissible comment on the evidence that Prater's actions made East Palo Alto dangerous. Prater's own counsel raised the issue of the dangerousness of East Palo Alto in his opening statement to argue that Prater had a reasonable fear of Thomas in the situation. Moreover, Prater's counsel raised the issue of East Palo Alto's dangers in his closing argument, to which the prosecution was responding. Defense counsel stated: "[Prater] checks and looks outside and doesn't see anyone or any sign of the police. And he lives in East Palo Alto. We don't live in East Palo Alto, but he does. East Palo Alto is not the suburbs in San Carlos, it's not the suburbs in Foster City. None of us want to live in East Palo Alto, but unfortunately, my client does and so does Daryl Thomas."

Next, Prater objects to the following statements by the prosecutor in the rebuttal portion of closing argument: "Please do not be distracted by the let's-trash-the-victim-defense. I hear that in every case. Let's trash the victim. Let's distract you from what really happened and trash on Daryl [Thomas]. Yes, he's a thief. Yes, he smokes crack. Yes, he probably committed a burglary that day when he got immunity. That wasn't discussed, but he'd like to bring it up so that's fine. . . . So what? Prostitutes can be raped, and crackheads can be stabbed." Prater claims that these statements were "testimonial" and improperly cast aspersions on his "'constitutional right to defend himself and be represented by counsel.'" In the rebuttal portion of closing argument, the prosecutor is entitled to rebut defense counsel's arguments. The prosecutor's remark that "I hear [a trash the victim defense] in every case" was not improper testimony, but allowable hyperbole. Likewise, there is no reasonable likelihood that the jury construed the prosecutor's rebuttal of defense counsel's argument that the victim's testimony could not be trusted as somehow "casting aspersions" on Prater's right to counsel and a defense.

Prater also objects to the statement in the colloquy quoted above that "Yes, [Thomas] probably committed a burglary that day when he got immunity. That wasn't discussed, but [defense counsel] would like to bring it up so that's fine." He claims that this comment "intentionally placed before the jury 'facts' outside the record," and "impugned defense counsel's character and integrity." Again, the prosecutor made this argument in rebuttal, after defense counsel argued that Thomas had reason to testify falsely because he had received immunity from prosecution, and stated "what the prosecutor doesn't understand . . . is that Darryl Thomas committed a residential burglary that day." The prosecutor's comment did not impugn defense counsel's character, but simply explained why the prosecutor was discussing the issue in rebuttal. Assuming this fact was outside the record, it was defense counsel, not the prosecutor, who initially revealed it to the jury. Moreover, we fail to see any prejudice to Prater in the revelation that the victim may have committed a burglary on the day of the incident.

Prater also objects to the prosecutor's comments that he was "not just a sociopath and a barbarian, but also the most 'nonchalant, indifferent, nonremorseful' relater of facts surrounding a stabbing that she had ever seen." "Prosecuting attorneys are allowed a wide range of descriptive comment," including "colorful terms." (*People v. Williams* (1997) 16 Cal.4th 153, 221.) "A prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1251, 278 Cal. Rptr. 640.) Courts have considered numerous epithets used in closing arguments, including "animal," "parasite," and "perverted maniac," and found their use not to constitute misconduct. (See *People v. Pensinger, supra*, at p. 1251; *People v. Terry* (1962) 57 Cal.2d 538, 561, 21 Cal. Rptr. 185; *People v. Rodriguez* (1970) 10 Cal. App. 3d 18, 36-37, 88 Cal. Rptr. 789.)

The prosecutor's actual comment here was that "We are not barbarians, we have laws.

1    Defendant seems to be somewhat of a barbarian. He seems to be somewhat nonchalant
     about this stabbing quite frankly. . . . [¶] I don't know what a sociopath is, but he's
2    probably pretty close. I have never seen such a nonchalant, indifferent, nonremorseful
     describing of a stabbing . . . as I have in this case by the defendant." The prosecutor's
3    actual statements, much milder than claimed by Prater, were within the range of "colorful
     terms" properly used by the prosecutor in her rebuttal closing argument.
4
     Prater's final claim of misconduct in closing argument is that the prosecutor "impugned
5    defense counsel's character" by telling the jury, "in no uncertain terms, . . . that [Prater]
     changed his 'story' because of his conversations with his lawyer." The prosecutor's actual
6    words were "The defendant has certainly changed his story since he made that original
     statement to the police. He's had time to think about it, he's had to talk to a lawyer, he's
7    had time to make a plan of attack. And the law tells you, hey, red flag, there's probably
     a reason why his story has changed." There is no reasonable likelihood that the jury
8    understood these comments as impugning defense counsel. Instead, the prosecutor was
     making "a fair comment on the state of the evidence," suggesting that the most logical
9    interpretation of the evidence was that Prater had been telling the truth in his statement to
     police in the early morning after the incident, and not testifying truthfully at trial. (*People*
10   *v. Mayfield* (1993) 5 Cal.4th 142, 178.) We do not find that any of the prosecutor's
     statements in closing argument rose to the level of misconduct.
11

12   Exh. 6 at 6-10.

13          Habeas relief is warranted only if the prosecutor's comments in closing argument "so

14   infected the trial with unfairness as to make the resulting conviction a denial of due process."

15   *Darden v. Wainwright,* 477 U.S. 168, 181 (1986). Because the standard of review on federal habeas

16   corpus is "the narrow one of due process, and not the broad exercise of supervisory power," even

17   improper argument does not necessarily violate a defendant's constitutional rights. *Thompson v.*

18   *Borg,* 74 F.3d 1571, 1576 (9th Cir. 1996); *see Brown v. Payton,* 544 U.S. 133, 143-147 (2005). In

19   determining whether a due process violation occurred, "[t]he arguments of counsel are generally

20   accorded less weight by the jury than the court's instructions and must be judged in the context of

21   the entire argument and the instructions." *Ortiz-Sandoval v. Gomez,* 81 F.3d 891, 898 (9th Cir.

22   1996); *see Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974) ("A court should not lightly infer

23   that a prosecutor intended an ambiguous remark to have its most damaging meaning or that a jury,

24   sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging

25   interpretations."). "Prosecutors must have reasonable latitude to fashion closing argument, and thus

26   can argue reasonable inferences based on the evidence." *United States v. Necoechea,* 986 F.3d 1273,

27   1276 (9th Cir. 1993); *Menendez v. Terhune,* 422 F.3d at 1037. In addition, "[t]he prosecutor's

28   comments must be evaluated in light of the defense argument that preceded it." *Darden v.*

Mem. of Points and Authorities in Support of Answer - C 07-5382 TEH
8

1  *Wainwright,* 477 U.S. at 179. Thus, an argument that is an "invited response" to defense counsel's

2  remarks does not prejudice the jury. *United States v. Young,* 470 U.S. 1, 11-13 (1985); *United States*

3  *v. Jackson,* 84 F.3d 1154, 1158 (9th Cir. 1996).

4        Here, the state court reasonably concluded that no misconduct resulted from the

5  prosecutor's comments about East Palo Alto, victim Thomas, and petitioner's attitude about the

6  stabbing. Those remarks were within the wide range of fair comment in argument, were in response

7  to defense counsel's introduction of those themes, and would not have been construed by the jury

8  as an attack on defense counsel or the right to present a defense. Counsel was not required to make

9  an objection to the prosecutor's comments, as they did not constitute misconduct and would not have

10  changed the outcome of the trial. *See Garcia v. Bunnell,* 33 F.3d 1193, 1199 (9th Cir. 1994) ("many

11  trial lawyers refrain from objecting during closing argument to all but the most egregious

12  misstatements by opposing counsel on the theory that the jury may construe their objections to be

13  a sign of desperation or hyper-technicality"). The state court's conclusion that counsel rendered

14  effective assistance was a reasonable application of *Strickland.*

15    **C.  Motion To Suppress Confession**

16        Petitioner contends counsel should have moved to suppress his statement to police because

17  he was taking prescription medication at the time. He asserts that his "instability due to the

18  medication placed him in an inadequate position." Petition, attached state petition at 3.

19        Petitioner exhausted this claim in his state habeas petitions. The San Mateo County

20  Superior Court provided the last reasoned decision on the issue in its Order of Denial filed on August

21  23, 2006. The superior court rejected the claim, stating:

22        Even assuming the petition is timely filed and is properly before this court, the Petitioner
      has failed to state a prima facie case for relief. An ineffective assistance of counsel claim

23        requires a showing not only that counsel's performance was deficient, but also that the
      defense was prejudiced, i.e. that the errors were so serious that the result of the trial is

24        unreliable. (Strickland v. Washington (1984) 466 U.S. 668, 687.)

25        Here, the Petitioner argues that his counsel ineffectively failed to move to suppress his
      confession on the grounds that his psychiatric medication rendered the confession

26        involuntary. But he has failed to cite any authority that would compel a court to grant a
      suppression motion on such grounds. On the contrary, the cases he cites stand for the

27        opposition proposition. (See e.g. Colorado v. Connelly (1986) 479 U.S. 157, 165-66 (a
      confession is involuntary under the Due Process clause only when it is coerced by state

28        action, not by a defendant's psychiatric problems).)

1    The Petitioner also argues that his counsel ineffectively failed to investigate the defense
     that he could not function effectively due to his medications. However, he has not stated
2    any authority, nor is this court aware of any, that stands for the proposition that such an
     argument would be a valid legal defense to the offenses of which he was charged and
3    convicted.

4    Thus, the Petitioner was not prejudiced by his counsel's performance and has failed to
     state a prima facie case for the ineffective assistance of counsel.

5

6    Petition, Exh. D.

7        The Supreme Court has held that a confession is voluntary if it is "the product of an

8    essentially free and unconstrained choice;" it is involuntary where the suspect's "will has been

9    overborne and his capacity for self-determination critically impaired." *Columbe v. Connecticut*, 367

10   U.S. 568, 602 (1961). To make this determination, the court must consider the totality of the

11   surrounding circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). To establish

12   ineffective assistance as a result of counsel's failure to file a motion to suppress, petitioner must

13   show that "(1) had his counsel filed the motion, it is reasonable that the trial court would have

14   granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have

15   been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999);

16   *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

17       The transcript of petitioner's interview with police reveals no psychological coercion

18   whatsoever by the detectives. Petition, Exh. A. The transcript also shows that petitioner was lucid

19   and responded appropriately to the detectives' questions. *Id*. In addition, petitioner told the

20   probation officer that his mental health was "getting better" as a result of his prescription

21   medications. Petition, Exh. B at 8. Thus, there appears to be no factual basis for the claim that

22   petitioner's medications impaired his mental capacity in any way.

23       Even if there were such a factual basis, as the superior court observed, a defendant's

24   psychiatric problems alone do not render a confession involuntary. In *Colorado v. Connelly*, 479

25   U.S. 175 (1986), the Supreme Court rejected a claim that the defendant's statement to police was

26   coerced as a result of his schizophrenic condition, which caused him to hear God's voice telling him

27   to confess. *Id*. at 161. The Supreme Court held, "Absent police conduct causally related to the

28   confession, there is simply no basis for concluding that any state actor has deprived a criminal

Mem. of Points and Authorities in Support of Answer - C 07-5382 TEH

10

1    defendant of due process of law." *Id.* at 164. The Supreme Court concluded that "coercive police

2    activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning

3    of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167. The superior court reasonably

4    found that no state action caused petitioner's confession in this case. It follows that a motion to

5    suppress the statement as involuntary would not have succeeded. Nor would the exclusion of

6    petitioner's statement have resulted in a more favorable outcome, as petitioner testified at trial and

7    told essentially the same story he had provided to police. Therefore, the superior court's conclusion

8    that counsel rendered effective assistance was a reasonable application of *Strickland.*

9    **D.    Appellate Counsel**

10           Petitioner contends he received ineffective assistance because his appellate counsel failed

11   to argue that trial counsel was ineffective for failing to move to suppress the confession as

12   involuntary and for failing to investigate and present a mental defense.

13          The *Strickland* standard applies to claims of ineffective assistance of appellate counsel.

14   *Evitts v. Lucey*, 469 U.S. 387 (1985). "Experienced advocates since time beyond memory have

15   emphasized the importance of winnowing out weaker arguments on appeal and focusing on one

16   central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752

17   (1983). Thus, "it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure

18   to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith*

19   *v. Robbins*, 528 U.S. 259, 288 (2000).

20          Petitioner concedes that his appellate counsel on direct appeal was limited to raising only

21   claims that appeared on the record. Petition, attached state petition at 4. He also appears to

22   acknowledge that the claims he wanted appellate counsel to raise were outside the record, as they

23   involved evidence of his mental condition. *Id.* Petitioner's appellate counsel could not have raised

24   those claims on direct appeal. Accordingly, the state courts' denial of relief was not unreasonable.[3]

25   _____

26          3. We note that petitioner has no right to counsel, and therefore no right to effective
     assistance of counsel, for any state post-conviction proceedings other than the first direct appeal in

27   the appellate court. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see Pennsylvania v. Finley*,
     481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Thus, to the extent petitioner's

28   claim may be construed as one that appellate counsel was ineffective for failing to raise these issues

1                                **CONCLUSION**

2          Accordingly, respondent respectfully requests that the petition for writ of habeas corpus

3  be denied.

4

5        Dated:  May 27, 2008

6                         Respectfully submitted,

7                         EDMUND G. BROWN JR.
                               Attorney General of the State of California

8                         DANE R. GILLETTE
                                 Chief Assistant Attorney General
9
                         GERALD A. ENGLER
10                       Senior Assistant Attorney General

11                       JULIET B. HALEY
                                 Deputy Attorney General
12

13                       /s/ Peggy S. Ruffra

14                       PEGGY S. RUFFRA
                                 Supervising Deputy Attorney General

15                       Attorneys for Respondent

16

17

18

19

20

21

22

23

24

25

26

27
_____

28  in a state habeas petition, the claim is not cognizable.

1                             **TABLE OF AUTHORITIES**

2                                                                                 **Page**

3   **Cases**

4   *Brown v. Payton*
    544 U.S. 133 (2005)                                                             8
5
    *Coleman v. Thompson*
6   501 U.S. 722 (1991)                                                            11

7   *Colorado v. Connelly*
    479 U.S. 175 (1986)                                                            10
8
    *Columbe v. Connecticut*
9   367 U.S. 568 (1961)                                                            10

10  *Darden v. Wainwright*
    477 U.S. 168 (1986)                                                             8
11
    *Donnelly v. DeChristoforo*
12  416 U.S. 637 (1974)                                                             8

13  *Duckett v. Godinez*
    67 F.3d 734 (9th Cir. 1995)                                                     6
14
    *Evitts v. Lucey*
15  469 U.S. 387 (1985)                                                            11

16  *Garcia v. Bunnell*
    33 F.3d 1193 (9th Cir. 1994)                                                    9
17
    *In re Clark*
18  5 Cal.4th 750 (1993)                                                            2

19  *In re Miller*
    17 Cal.3d 734 (1941)                                                            2
20
    *Jones v. Barnes*
21  463 U.S. 745 (1983)                                                            11

22  *Kimmelman v. Morrison*
    477 U.S. 365 (1986)                                                            10
23
    *Lockyer v. Andrade*
24  538 U.S. 63 (2003)                                                              4

25  *Menendez v. Terhune*
    422 F.3d 1012 (9th Cir. 2005)                                                5, 8
26
    *Ortiz-Sandoval v. Gomez*
27  81 F.3d 891 (9th Cir. 1996)                                                     8

28

Mem. of Points and Authorities in Support of Answer - C 07-5382 TEH

TABLE OF AUTHORITIES  (continued)

1

|  | Page |
|---|---|
| 2 | |
| *Pennsylvania v. Finley*<br>3 481 U.S. 551 (1987) | 11 |
| 4 *Ross v. Moffitt*<br>417 U.S. 600 (1974) | 11 |
| 5 | |
| *Rupe v. Wood*<br>6 93 F.3d 1434 (9th Cir. 1996) | 6 |
| 7 *Schneckloth v. Bustamonte*<br>412 U.S. 218 (1973) | 10 |
| 8 *Smith v. Robbins*<br>9 528 U.S. 259 (2000) | 11 |
| 10 *Strickland v. Washington*<br>466 U.S. 668 (1984) | 4, 6, 9, 11 |
| 11 *Strickland. Bell v. Cone*<br>12 535 U.S. 685 (2002) | 4 |
| 13 *Tatum v. Dormire*<br>183 F.3d 875 (8th Cir. 1999) | 5 |
| 14 *Thompson v. Borg*<br>15 74 F.3d 1571  (9th Cir. 1996) | 8 |
| 16 *United States v. Jackson*<br>84 F.3d 1154 (9th Cir. 1996) | 9 |
| 17 *United States v. Necoechea*<br>18 986 F.3d 1273 (9th Cir. 1993) | 8 |
| 19 *United States v. Young*<br>470 U.S. 1 (1985) | 9 |
| 20 *Wilson v. Henry*<br>21 185 F.3d 986 (9th Cir. 1999) | 10 |
| 22 *Woodford v. Visciotti*<br>537 U.S. 19 (2002) (per curiam) | 4 |
| 23 *Yarborough v. Gentry*<br>24 540 U.S. 1 (2003) (per curiam) | 4 |

25 **Constitutional Provisions**

| 26 United States Constitution<br>27        Fourteenth Amendment | 11 |

28

## TABLE OF AUTHORITIES  (continued)

1

**Page**

2  **Statutes**

3  Antiterrorism and Effective Death Penalty Act of 1996                                    3, 4

4  California Penal Code
5      § 243(d)                                                                                          1
       § 245(a)(1)                                                                                       1
6      § 1192.7(c)(8)                                                                                    1
       § 1192.7(c)(23)                                                                                   1

7  United States Code, Title 28
8      § 2254(d)(1)                                                                                      4
       § 2254(e)(1)                                                                                      5

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COPY**

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
6  State Bar No. 117315
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-3664
     Telephone: (415) 703-1362
8  Fax: (415) 703-1234
   Email: peggy.ruffra@doj.ca.gov
9  Attorneys for Respondent

10                 IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13
    **CHRISTOPHER PRATER,**                    C 07-5382 TEH
14
                                Petitioner,    **NOTICE OF LODGING OF, AND
15                                             INDEX TO, EXHIBITS**

16          v.

    **DERRAL ADAMS, Warden,**
17
                                Respondent.
18

19

20          Exhibit 1:    Clerk's Transcript (2 volumes)

21          Exhibit 2:    Reporter's Transcript (7 volumes)

22          Exhibit 3:    Appellant's Opening Brief

23          Exhibit 4:    Respondent's Brief

24          Exhibit 5:    Appellant's Reply Brief

25          Exhibit 6:    Opinion by California Court of appeal

26          Exhibit 7:    Petition for Review

27          Exhibit 8:    Order denying review

28          Exhibit 9:    Docket, Case No. A115101

    Notice of Lodging of, and Index to, Exhibits  - C 07-5382 TEH
                                    1

1        Exhibit 10:     Docket, Case No. S147547

2        Exhibit 11:     Docket, Case No. S152660

3

4        Dated:  May 27, 2008

5                              Respectfully submitted,

6                              EDMUND G. BROWN JR.
                              Attorney General of the State of California

7                              DANE R. GILLETTE
                              Chief Assistant Attorney General
8
                              GERALD A. ENGLER
9                              Senior Assistant Attorney General

10                             JULIET B. HALEY
                              Deputy Attorney General
11
                              /s/ Peggy S. Ruffra
12
                              PEGGY S. RUFFRA
13                             Supervising Deputy Attorney General

14                             Attorneys for Respondent

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    *Prater v. Adams*

No.:    **C 07-05382 TEH (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004.

On May 27, 2008, I served the attached **(1) ANSWER TO ORDER TO SHOW CAUSE; (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER; (3) NOTICE OF LODGING OF, AND INDEX TO, EXHIBITS** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

**Christopher Prater**
**V-67110**
**California State Prison-Corcoran**
**P.O. Box 3481**
**Corcoran, CA 93212**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 27, 2008, at San Francisco, California.

|  |  |
|---|---|
| Susan Chiang | |
| Declarant | Signature |

40257965.wpd



1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
6  State Bar No. 117315
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-3664
     Telephone: (415) 703-1362
8    Fax: (415) 703-1234
     Email: peggy.ruffra@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13
   **CHRISTOPHER PRATER,**                  C 07-5382 TEH
14
                              Petitioner,   **ANSWER TO ORDER TO SHOW**
15                                          **CAUSE**
              **v.**
16
   **DERRAL ADAMS, Warden,**
17
                              Respondent.
18

19        Respondent hereby provides this answer to the Order to Show Cause why the petition for

20  writ of habeas corpus should not be granted.

21                                  **I.**

22                               **CUSTODY**

23        Petitioner is lawfully in the custody of Derral Adams, Warden of California State Prison -

24  Corcoran,[1/] as a result of a judgment of conviction in Case No. SC57263.  On December 6, 2004,

25  a San Mateo County jury convicted petitioner of assault with a deadly weapon (Cal. Penal Code §

26

27  ──────────────────────────────

        1. Petitioner did not name the warden at the state prison where he is incarcerated.  We have
28  named that individual, Derral Adams, as the respondent.

   Answer to Order to Show Cause - C 07-5382 TEH

                                    1

1 | 245(a)(1)) and battery resulting in serious bodily injury (Cal. Penal Code § 243(d)), along with great
2 | bodily injury and deadly weapon enhancements (Cal. Penal Code §§ 1192.7(c)(8), (c)(23)). The trial
3 | court found that petitioner had sustained a prior strike and a prior prison term. On February 1, 2004,
4 | the court sentenced petitioner to nine years in prison.

5 | **II.**

6 | **GENERAL AND SPECIFIC DENIALS**

7 | Respondent denies that the state court's ruling was based on an unreasonable
8 | determination of fact or was contrary to or involved an unreasonable application of clearly
9 | established United States Supreme Court law. Respondent specifically denies that (1) petitioner
10 | received ineffective assistance of trial counsel; (2) the prosecutor committed prejudicial misconduct;
11 | and (3) petitioner received ineffective assistance of appellate counsel.

12 | **III.**

13 | **PROCEDURAL ISSUES**

14 | The claims in the petition are exhausted. The petition is timely within the meaning of 28
15 | U.S.C. § 2244(d).

16 | **IV.**

17 | **LODGED DOCUMENTS**

18 | Respondent has lodged concurrently with this answer the following exhibits: (1) Clerk's
19 | Transcript (2 volumes); (2) Reporter's Transcript (7 volumes); (3) Appellant's Opening Brief; (4)
20 | Respondent's Brief; (5) Appellant's Reply Brief; (6) Opinion by California Court of Appeal; (7)
21 | Petition for Review; (8) Order denying review; (9) Docket, Case No. A115101; (10) Docket, Case
22 | No. S147547; (11) Docket, Case No. S152660.

23 | **V.**

24 | **INCORPORATION BY REFERENCE**

25 | Respondent hereby incorporates by reference the accompanying memorandum of points
26 | and authorities in support of this answer.

27 | ///

28 | ///

Answer to Order to Show Cause - C 07-5382 TEH

2

1

# VI.

2

## CONCLUSION

3        Respondent respectfully requests that the petition for writ of habeas corpus be denied.

4

5        Dated:  May 27, 2008

6                            Respectfully submitted,

7                            EDMUND G. BROWN JR.
                            Attorney General of the State of California

8                            DANE R. GILLETTE
                            Chief Assistant Attorney General

9
                            GERALD A. ENGLER
10                           Senior Assistant Attorney General

11                           JULIET B. HALEY
                            Deputy Attorney General

12
                            /s/ Peggy S. Ruffra

13
                            PEGGY S. RUFFRA
14                           Supervising Deputy Attorney General

15                           Attorneys for Respondent

16

17

18

19

20

21

22

23

24

25

26

27

28

Answer to Order to Show Cause - C 07-5382 TEH

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    *Prater v. Adams*

No.:    **C 07-05382 TEH (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004.

On <u>May 27, 2008</u>, I served the attached **(1) ANSWER TO ORDER TO SHOW CAUSE; (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER; (3) NOTICE OF LODGING OF, AND INDEX TO, EXHIBITS** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

**Christopher Prater**
**V-67110**
**California State Prison-Corcoran**
**P.O. Box 3481**
**Corcoran, CA 93212**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 27, 2008, at San Francisco, California.

| | |
|---|---|
| Susan Chiang | _____ |
| Declarant | Signature |

40257965.wpd

Case No.  _SCH7263A_

2.    What are the facts of your case?

(SEE : EXHIBIT -B)

# EXHIBIT - B

## STATEMENT OF THE CASE

By way of information petitioner was charged with two counts. Count One alleged a violation of Penal Code[1] section 245, subdivision (a) (1), assault with a deadly weapon. A great bodily injury enhancement was also charged as to Count one. Count Two claimed that petitioner also committed the crime of battery resulting in serious bodily injury, a violation of section 243, subdivision (d). The information also alleged that petitioner was armed with a knife during the commission of Count Two. Additionally, the information contended that petitioner had suffered prior convictions, pursuant to sections 667.5, subdivision (b) and 1170.12, subdivision (c) (1). (CT 5-9.)

Petitioner entered pleas of not guilty and denied the enhancing allegations. (CT 81.)

Jury trial began on November 29, 2004. (CT 85.)

Petitioner was found guilty of Counts One and Two. Both the great bodily injury allegation, as alleged in Count One, and use of a knife, as alleged in Count Two, were found to be true. (CT 127, 179-182; RT 495-496.)

Petitioner waived jury trial as to the prior conviction allegations. (CT 127; RT 493.) The court found the prior allegations to be true. (CT 128; RT 505.)

Petitioner's *Romero* motion[2] to strike the prior convictions was denied. (CT 200; RT, 2/1/05, 13-14.) The court then sentenced petitioner to state prison

---

[1]    All statutory references are to the Penal Code unless otherwise indicated.
[2]    *People v. Superior Court (Romero)* (1996) 13 Cal. 4th 497.

4

for a total of nine years.  The sentence was arrived at by selecting the middle term of three years for Count one.  That term was doubled pursuant to section 1170.12, subdivision (c) (1).  An additional three years was imposed for the infliction of great bodily injury enhancement.  Count two was stayed pursuant to section 654.  The enhancement alleged pursuant to section 667.5, subdivision (b) was also stayed.  (CT 200-201, 205-206; RT, 2/1/05, 14-17.)

A timely notice of appeal was filed on February 1, 2005.  (CT 202-204.)

The Court of Appeal, First Appellate District, Division Two, affirmed the judgment of conviction on March 23, 2006.  (Exhibit A.)

## STATEMENT OF THE FACTS

Daryl Thomas, the prosecution's most important witness, was a homeless drug abuser who had no legitimate source of income.  (RT 103, 104, 115, 140, 147.)  Early in September, 2004, he shared an apartment with his girlfriend and his two children.  But Thomas got into an argument with his girlfriend, the police were called, and Thomas moved out.  (RT 103, 104.)  He took his belongings, packed into two suitcases.  One suitcase contained his shoes and the other contained his clothes.  (RT 103.)

Thomas took his two suitcases and went to Red Bone's (Rosemary's) house in East Palo Alto.  (RT 103, 334.)  There he got into an argument with Red Bone.  Red Bone asked petitioner to get Thomas out of the house.  (RT 335.)  Petitioner took Thomas to the room he was renting and allowed Thomas to stay that night.  (RT 104, 105, 335, 336.)

5

The next morning, petitioner took Thomas to see Thomas's girlfriend. Thomas left his suitcases in petitioner's room. Petitioner did not give Thomas a key to the house or to his room. Petitioner told Thomas that he could only get the suitcases when petitioner was present. Petitioner and Thomas exchanged telephone numbers so that Thomas could contact petitioner when he wanted to retrieve the suitcases. (RT 105, 109, 336-337.)

Once at the girlfriend's house, an argument between Thomas and the woman ensued. (RT 337.) Thomas called petitioner to come and pick him up. Petitioner picked Thomas up and took him back to his house. Thomas left petitioner's house early that Sunday morning. (RT 337.)

Later that morning, Thomas entered petitioner's room by crawling through a window and retrieved his goods. Thomas was there with another person. Though Thomas claimed that he did not steal anything from petitioner's room, the other person Thomas was with "more than likely" did. (RT 109-110, 154-156, 223-225, 338-339.) Thomas and his friend left petitioner's house with three suitcases. (RT 226.)

Petitioner came back to his house at about eleven in the morning on that Sunday. There he met his landlord of the board and care home in which he rented a room, Karen Johnson. She told petitioner that Thomas and another person had come to the house, and that Thomas had crawled into petitioner's room through the window. Johnson further told petitioner that Thomas had indicated that petitioner had given Thomas permission to get his belongings that had been left in

6

the room.  Petitioner told Johnson that this was not true, that he had only given Thomas permission to be at the house when petitioner was present.  (RT 228.) According to petitioner, Thomas and his friend had taken a number of items from his room, CDs, DVDs, and a scanner in a suitcase.  (RT 231, 338-339.)

Petitioner and Thomas then traded cell phone messages.  Petitioner told Thomas that things were missing from his room.  (RT 112.)  Petitioner also told Thomas not to come back to his house.  (RT 340.)

Sometime that day, after crawling into petitioner's house, Thomas placed the suitcases in the back of his mother's house.  (RT 157.)  He then smoked cocaine.  (RT 158.)

Later that night Thomas met a woman named Ebony.  Thomas and Ebony were driving around in Ebony's car.  Thomas had been smoking crack cocaine periodically throughout the day.  (RT 115.)  Thomas and Ebony got into an argument.  Thomas had "lost" something in Ebony's car and, according to Thomas, Ebony would not let him look for the item.  Thomas told Ebony to pull the car over and she did.  Ebony called the police.  According to Thomas, Ebony told the police that he was trying to steal her car.  (RT 116.)  Thomas told the 911 dispatcher "I took the car, yes I took your car."  (CT 113.)  Thomas had her keys but then threw the keys back into the car.  (RT 116.)  The police came and sent them each away separately.  (RT 117.)

Close to midnight on September 19, Thomas returned to petitioner's house. He walked straight to petitioner's room, knocking on the door and window.  (RT

7

123, 235.) According to Thomas he asked petitioner to come outside, telling petitioner that it was "Daryl, man, it's me." (RT 124.) According to petitioner, somebody was outside "messing with my door," "messing with my window," and "was trying to break in" to his room. (RT 342.) Petitioner told Rodney Green (RT 305) that Thomas was outside of his door. He told Rodney not to answer or open the door, "even if [Thomas] tries to break, breaks windows." (CT, Supp., 6.) Petitioner heard Thomas's voice and went to Karen's room and knocked on her door. Petitioner told Karen that the "guy that broke into my room is at my door." According to Karen, petitioner's knocking was hard and his voice had urgency to it. He told her to call the police because Daryl was back. (RT 236.)

Petitioner armed himself and went outside. (RT 127, 344.) He was fearful of what Thomas might do. (RT 344.) Karen called the police. (RT 236.) According to Thomas he did not attack petitioner. Thomas sat down on the ground. Petitioner approached him and stabbed Thomas in the leg. (RT 129-131.) Thomas then got up and ran to a nearby Chevron gas station. (RT 138.)

Karen, who viewed a portion of the incident from inside the house, saw two people outside. (RT 238.) She heard petitioner tell Thomas to get off the property. She did not see petitioner make any motion with either of his arms that was consistent with a stabbing motion. (RT 242, 268.) Karen heard Thomas scream and run out of the yard. She assumed that Thomas had screamed "out of fear or maybe because of what Chris had said to him." (RT 243.) She did not see petitioner strike Thomas.

8

According to Karen, petitioner reentered the house holding two knives, one in each hand.  As petitioner walked toward the kitchen with the knives he said, "I could have killed that nigger, I could have stabbed him in the heart." (RT 246.) Petitioner then went toward his room.  She did not see any blood on either knife and did not know what, if anything, petitioner had done with the knives.  (RT 247.)

Petitioner armed himself and went outside because he was afraid of what Thomas might do. (RT 344.)  Petitioner knew that Thomas was the kind of person to have a weapon and fight with people. (CT, Supp., 24.)  Petitioner and Thomas met outside and became engaged in a heated conversation.  Petitioner told Thomas to leave the property.  At that moment, Thomas rushed petitioner and swung at him. (RT 346.)  Petitioner was fearful of what Thomas would do to him because Thomas had previously burglarized his house, was told not to return, then returned to petitioner's house near midnight, knocking on the windows and doors.  (RT 355.)  Thomas looked to petitioner like he was crazy and had lost his senses.  (RT 356.)  It was dark and Thomas lunged at petitioner, swinging at him.  Petitioner ducked. (RT 357, 364.)  That is when Thomas got stuck with the knife. (RT 347, 357.)

Petitioner told the prosecutor that he did not mean to stab Thomas, and that it was not intentional. "I did not intentionally stab this gentleman.  He swung at me.  And when he swung at me, I just ducked and stabbed him in the leg.  That's all." (RT 389.)

9

Petitioner waited for the police to arrive at his house.  He met the police and told them what had happened.  (RT 351.)  Petitioner told the police moments after the incident that Thomas had attacked him.  (RT 392, 400.)

10

I.

**PETITIONER IS DENIED DUE PROCESS OF LAW AND A MEANINGFUL OPPORTUNITY TO PRESENT A DEFENSE WHEN THE TRAIL COURT FAILS TO INSTRUCT THE JURY ON THE DEFENSE THEORY OF THE CASE WHERE THAT THEORY IS LEAGALLY SOUND AND EVIDENCE IN THE CASE MAKES IT APPLICABLE.**

"Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require criminal defendants be afforded a meaningful opportunity to present a complete defense." (*California v. Trombetta* (1984) 467 U.S. 479, 485.) The right to present a complete defense would be an empty one "if it did not entail the further right to an instruction that allowed the jury to consider the defense." (*Bradley v. Duncan* (9th Cir. 2002) 315 F. 3d 1091, 1098.)

In California, a defendant is entitled to an instruction on the defense theory of the case if that theory is supported by substantial evidence. (See, e.g., *People v. Lemus* (1988) 203 Cal. App. 3d 470, 477.) Substantial evidence is evidence sufficient to deserve consideration by the jury. The question is not whether the trial court believes the evidence underlying the defense, but whether a jury composed of reasonable persons could find the facts underlying the instructions to exist. (*People v. Wickersham* (1982) 32 Cal. 3d 307, 324, overruled on another ground in *People v. Barton* (1995) 12 Cal. 4th 186, 200-201.) Doubts about whether evidence is sufficient to warrant an instruction on a particular defense

11

theory must be resolved in the defendant's favor. (*People v. Barnett* (1998) 17 Cal. 4th 1044, 1145.)

Generally, to justify an act of self-defense a defendant must have an honest and reasonable belief that bodily injury is about to be inflicted upon him. (*People v. Minifie* (1996) 13 Cal. 4th 1055, 1064.) The threat of bodily injury must be imminent, and any right to self-defense is limited to the use of such force as is reasonable under the circumstances. "[T]he peril must appear to the defendant as immediate and present and not prospective or even in the near future.   An imminent peril is one that, form appearances, must be instantly dealt with." (*In re Christian S.* (1994) 7 Cal. 4th 768, 783.) The right to self-defense does not extend beyond the time of real or apparent danger. "[O]nly that force which is necessary to repel an attack may be used in self-defense; force which exceeds the necessity is not justified." (*People v. Clark* (1982) 130 Cal. App. 3d 371, 380.)

The test of reasonableness is objective; it is determined from the point of view of a reasonable person in the defendant's position. The jury must be allowed to consider what would appear necessary to a reasonable person in a similar situation and with similar knowledge of the defendant. A defendant, therefore, is entitled to have the jury consider all the elements of the case that might be expected to operate upon the defendant's thoughts.   (See, e.g., *People v. Humphrey* (1996) 13 Cal. 4th 1073, 1082-1083.)

12

Yet, those general rules of self-defense do not apply in all situations. Deadly force is "justifiable" in various circumstances in California.[3]  Jury instructions provide that the use of deadly force "is justifiable and not unlawful when committed by any person who is resisting an attempt to commit a forcible or atrocious crime." (CALJIC 5.10.)  A forcible or atrocious crime is one "that by its nature and manner of commission threatens, or is reasonably believed to threaten life or great bodily injury so as to instill in him a reasonable fear of death or great bodily injury." (CALJIC 5.16.)  The use of deadly force "is justifiable and not unlawful when necessarily committed in attempting by lawful ways and means: [To apprehend any dangerous person who has committed a felony.  A dangerous person is one who . . .  (b) has committed a forcible and atrocious felony.]" (CALJIC 5.25.)

California courts have consistently held that a nighttime residential burglary is a forcible and atrocious felony which may allow for the use of deadly force, even when the perpetrator is fleeing the scene.  (See, e.g., *People v.*

---

[3]     Section 197 states the following: "Homicide [and therefore deadly force] is also justifiable when committed by any person in any of the following cases:
1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,
2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or, . . .
4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace."

13

*Ceballos* (1974) 12 Cal. 3d 470, 478-479; *People v. Martin* (1985) 148 Cal. App. 3d 1111, 1125; *People v. Walker* (1973) 32 Cal. App. 3d 897, 902.) Because of the nature of the forcible or atrocious crime, an individual is presumed to be in peril. That peril fulfills the requirements, normally required for self-defense, of an honest and reasonable belief that great bodily injury or death is about to be imminently inflicted. Moreover, the right to employ deadly force extends beyond the time of the real or apparent danger and allows a defendant to use all force, not just that force which is necessary to repel the attack.

Intertwined with self-defense is the ability of an individual to use deadly force in a lawful attempt to apprehend an individual who is fleeing from the scene of a nighttime residential burglary (see, e.g., *People v. Martin, supra; Gilmore v. Superior Court* (1991) 230 Cal. App. 3d 416, 422), and the ability to use deadly force in defense of habitation against a perpetrator that attempt to enter into a home and harm the inhabitants. (See, e.g., § 197, subd. 2.)

In the instant case, the trial court had a sua sponte duty, consistent with federal due process, to instruct the jury on the use of deadly force. Contrary to the Court of Appeal's conclusion, altering the justifiable homicide instructions would not have resulted in the self-defense instructions given by the court. (Slip Op., p. 5.)

**The Court of Appeal's decision states, in essence, that the use of deadly force instruction could not be given because petitioner did not kill Thomas. That reasoning, to say the least, is quite unusual.**

14

Here, this Court must grant petitioner's Petition for Review and determine whether due process requires that trial courts provide jury instructions that allow the jury to fully consider petitioner's defense.

## II.

## PETITIONER IS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL BY IMPROPER ACTS OF THE PROSECUTOR.

"A prosecutor has a duty to prosecute vigorously. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." (*People v. Pitts* (1990) 223 Cal.App.3d 606, 691, citing *Berger v. United States* (1934) 295 U.S. 78, 88; see *People v. Hill* (1998) 17 Cal.4th 800, 820.) "It is a prosecutor's duty to see that those accused of crime are afforded a fair trial. The role of the prosecution far transcends the objective of high scores of conviction; its function is rather to serve as a public instrument of inquiry and, pursuant to the tenets of the decisions, to expose the facts." (*People v. Daggett* (1990) 225 Cal.App.3d 751, 759.) "As the United States Supreme Court has explained, the prosecutor represents a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution **is not that it shall win a case, but that justice shall be done.**" (*People v. Hill, supra*, 17 Cal.4th at p. 820, citing *Berger v. United States, supra*, 295 U.S. at p. 88. "The applicable federal and state standards regarding prosecutorial

15

misconduct are well established.  A prosecutor's . . . intemperate behavior violates

the federal Constitution when it comprises a pattern of conduct so egregious that it

infects the trial with such unfairness as to make the conviction a denial of due

process.    Conduct  by  a  prosecutor  that  does  not  render  a  criminal  trial

fundamentally unfair is prosecutorial misconduct under state law only if it

involves the use of deceptive or reprehensible methods to attempt to persuade

either the court or the jury." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

Prosecutors are forbidden to make unfair appeals to sympathy, passion or

emotion. "It is settled that an appeal to the jury to view the crime through the eyes

of the victim is misconduct at the guilt phase of trial; an appeal for sympathy for

the victim is out of place during an objective determination of guilt." (*People v.*

*Arias* (1996) 13 Cal.4th 92, 161, citing *People v. Stansbury* (1993) 4 Cal.4th 1017,

1057.) Misconduct occurs when in closing argument in the guilt phase of a trial

the prosecution makes an appeal to passion or prejudice. (*United States v. Koon*

(9th Cir. 1994) 34 F.3d 1416, 1443; *People v. Stansbury*, supra, 4 Cal.4th at p.

1056; *People v. Simington* (1993) 19 Cal.App.4th 1374; *People v. Pensinger*

(1991) 52 Cal.3d 1210, 125; *People v. Talle* (1952) 111 Cal.App.2d 650, 675.)  It

has often been stated that "an appeal for sympathy for the victim is out of place

during an objective determination of guilt". (*People v. Arias, supra,* 13 Cal.4th at

p. 160; *People v. Stansbury, supra,* at p. 1057; *People v. Fields* (1983) 35 Cal.3d

329, 362.)

The fact that a prosecutor may not appeal to the passion or prejudice of the jury has been long established. More than fifty years ago it was noted that:

> It hardly needs citation of authority that an argument by the prosecution that appeals to the passion or prejudice of the jury, that asks for a guilty verdict because of sympathy for the deceased... that engages in fanciful inferences, not warranted by the evidence, and makes statements of fact not warranted by the record..., is erroneous and prejudicial. (*People v. Talle, supra*, 111 Cal.App.2d at 675.)

The jury's job is to weigh the evidence; there is no right verdict or wrong verdict, and certainly the verdict either way is not something deserved by the victim. There is only the verdict that the jury comes to based on its weighing of the evidence and the jury may not base its result on what the victim, or the community, deserves. If it does so, the result must be based on the deepest levels of sympathy for the victim. In short, these were irrelevant arguments of an incredibly inflammatory nature and constitute prosecutorial misconduct.

Prosecutorial misconduct also occurs when a prosecutor argues facts not in evidence. (*People v. Hill, supra*, 17 Cal.4th 800; *People v. Teixeira* (1955) 136 Cal. App. 2d 136, 147-148; *People v. Kirkes* (1952) 39 Cal.2d 719, 723-724; *People v. Ford* (1948) 89 Cal.App.2d 467, 472.)

An example of this may be found in *People v. Kirkes, supra*, 39 Cal.2d 719. In that case, the District Attorney argued that a witness waited to report information to the police because of fear of the defendant, a fact for which there was no supporting evidence introduced. The court held that a statement for which there is no support in the record is prosecutorial misconduct.

17

Although a prosecutor may draw inferences from the record, such argument must be limited to evidence before the court. For example, a prosecutor may argue the impact of a crime on a victim's family, even if there is no testimony as to that impact, when the argument is based on "predictable and obvious consequences" of the proven facts. (*People* v. *Sanders* (1995) 11 Cal.4th 475, 551.)

As stated in *People* v. *Hill, supra*, 17 Cal.4th at p. 819:

> A prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, *which can include reasonable inferences, or deductions* to be drawn therefrom. It is also clear that counsel during summation may state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature. (*Id.*, at p. 819. Italics added.)

It is established that a prosecutor may not express a personal opinion or belief in a defendant's guilt, where there is substantial danger that jurors will interpret this as being based on information at the prosecutor's command, other than evidence adduced at trial. The danger is acute when the prosecutor offers his opinion and does not explicitly state that it is based solely on inferences from the evidence at trial. (*People* v. *Bain* (1971) 5 Cal.3d 839, 848.) ] "[N]o attorney should venture a bald opinion, stated as a fact, with reference to an issue or as to the effect, or value, or weight, of the evidence, as it may affect any ultimate issue in the case." (*People* v. *Nolan* (1932) 126 Cal.App. 623, 640.) In determining whether a prosecutor's comments are improper, a court should look to the comments to determine what a jury would naturally take those

18

comments to mean. (*People* v. *Cummings* (1993) 4 Cal.4th 1233, 1303; *People* v. *Stansbury, supra*, 4 Cal.4th 1017, 1067.) A jury is likely to understand a comment that "I know" to mean that the prosecutor is placing the authority of her office behind her witnesses. It is improper to do so.

Under the facts presented in the instant case, the prosecutor repeatedly engaged in pervasive misconduct. She intentionally placed before the jury "facts" that were outside the record and impugned defense counsel's character.

In a justice system like that found in the state of California, such actions of the prosecutor cannot be allowed to stand. Therefore, petitioner respectfully requests that this Court grant his Petition for Review and set limits on pervasive misconduct on the part of prosecutors.

### III.

PETITIONER WAS DENIED DUE PRCESS OF LAW WHEN THE PROSECUTION WAS ALLOWED TO INTRODUCE EVIDENCE OF A KNIFE THAT THE COMPLAINING WITNESS TESTIFIED WAS DIFFERENT THAN THE KNIVES POSSESSED BY PETITIONER AT THE TIME OF THE INCIDENT.

Thomas testified that the second knife, the knife found in petitioner's room some ten days after the incident, was *different* from the knife petitioner possessed at the time of the confrontation. He testified that People's 6 "didn't kind of look like that. It wasn't like that brand new like that." He testified that the knife shown to him at trial by the prosecutor was different from either of the knives petitioner possessed on the night of the incident. (RT 145.)

19

In the instant case there was no showing that the knife found in petitioner's room had been used by him on the day of the incident. No one could identify it as having been used; in fact, Thomas testified that the knife found in appellant's room, People's 6, was different than the knife petitioner possessed at the time of the incident. The knife that had been used in the incident was found in the kitchen of the house, in a red sheet metal-metal like box with ten other large butcher knives. (RT 284-285.) Under such a set of circumstances, the court erroneously ruled that the knife could be introduced to demonstrate consciousness of guilt.

The fundamental purpose of the due process clause of the United States Constitution is to assure "that no man's life, liberty or property be forfeited as criminal punishment for violation of that law until there had been a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement and tyrannical power." (*Chambers v. Florida* (1940) 309 U.S. 227, 236-237.)

Because of the highly prejudicial impact which the admission of the knife had in this case, the trial court's error impacted upon petitioner's federal constitutional rights to due process and a fair trial. For this reason, the trial court error must be judged under the stricter standard of prejudice applicable to federal constitutional errors, that is, whether the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 23-24.)

Petitioner was prejudiced by the erroneous admission of People's 6. The prosecutor, in her argument to the jury, used the knife for an impermissible, and highly inflammatory, inference upon the jury. Though she *knew* that Thomas had

20

been stabbed with only one knife, the knife that had been bent, she told the jury that petitioner wiped off blood from the knife and hid it in his room.

The introduction of the knife, and the prosecutor's improper argument related to that piece of evidence, influenced the jury's determination of petitioner. People's 6, and the prosecutor's improper argument, falsely painted petitioner as a guilty man who deserved to be locked up whether he committed the offense or not.

Based upon the above, petitioner respectfully requests that this Court grant his Petition for Review.

## IV.

## PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL TO WHICH HE WAS ENTITLED.

A criminal defendant is guaranteed the right to the assistance of counsel by both the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 15, of the California Constitution. "Construed in light of its purpose, the right entitled the defendant not to some bare assistance but rather to *effective* assistance." (*People v. Ledesma* (1987) 43 Cal. 3d 171, 217. Emphasis in original.) "This means that before counsel undertakes to act, or not to act, counsel must make a rational and informed decision on strategy and tactics founded upon adequate investigation and preparation." (*In re Marquez* (1992) 1 Cal. 4th 584, 602.) "Counsel's first duty is to investigate the facts of his client's case and to research the law applicable to those facts." (*People v. Ledesma, supra*, 43 Cal. 3d at p. 222. See also *People v. Frierson* (1979) 25 Cal. 3d 142, 163, 164;

21

*People v. Day* (1992) 2 Cal. App. 4th 405, 419, 420.)  Moreover, counsel must confer with the client as often as necessary to elicit information that is helpful to the defense and move for the appointment of ancillary defense services where appropriate. (*People v. Pope* (1979) 23 Cal. 3d 412, 425.)  Counsel must also seek to suppress evidence or testimony that may incriminate his client. (*In re Neely* (1993) 6 Cal. 4th 901, 919.)

To establish ineffective assistance of counsel, petitioner must show that counsel's representation was deficient and that it fell below an objective standard of reasonableness under prevailing norms, and that the deficient performance prejudiced the defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) Stated another way, a defendant is denied the effective assistance of counsel if, by reason of counsel's failure to engage in adequate pretrial preparation and/or fails to seek suppression of incriminating evidence, defendant is deprived of a crucial or potentially meritorious defense. (*People v. Pope, supra.*)  Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*In re Sixto* (1989) 48 Cal. 3d 1247, 1257.)  Therefore, it is not required that the defendant establish that the adjudication would necessarily be in his or her favor. **A crucial or potentially meritorious defense is not necessarily one that, if** presented, would result in defendant's acquittal. (*People v. Farley* (1979) 90 Cal. App. 3d 851, 865.)

22

Faced with a fact situation suggesting self-defense, defense of habitation, and apprehension of a felon, there is no reason not to request such instructions should the trial court fail to provide the jury sua sponte with the general principles of law contained therein.    Failing to request instructions based upon those principles means that trial counsel's performance fell below an objective standard of reasonableness.

In the instant case, counsel failed to interpose appropriate objections and/or ask for appropriate admonitions or curative instructions.  Should this Court believe that such claims of prosecutorial conduct are waived by counsel's failure to timely and specifically object, and that such an objection would not have been futile, petitioner submits that he received ineffective assistance of counsel and that such ineffectiveness resulted in petitioner suffering prejudice.

Here, the prosecutor's misconduct so pervaded the case against petitioner that one cannot have confidence in the outcome.  Petitioner suffered prejudice and his convictions must be reversed.

23

## TABLE OF AUTHORITIES

| Case | Page |
|------|------|
| Berger v. United States (1934) 295 U.S. 78 | 15 |
| Bradley v. Duncan (9th Cir. 2002) 315 F. 3d 1091 | 11 |
| California v. Trombetta (1984) 467 U.S. 479 | 11 |
| Chambers v. Florida (1940) 309 U.S. 227 | 20 |
| Chapman v. California (1967) 386 U.S. 18 | 20 |
| Gilmore v. Superior Court (1991) 230 Cal. App. 3d 416 | 14 |
| In re Marquez (1992) 1 Cal. 4th 584 | 21 |
| In re Neely (1993) 6 Cal. 4th 901 | 22 |
| In re Christian S. (1994) 7 Cal. 4th 768 | 12 |
| In re Sixto (1989) 48 Cal. 3d 1247 | 22 |
| People v. Arias (1996) 13 Cal. 4th 92 | 16 |
| People v. Bain (1971) 5 Cal. 3d 839 | 18 |
| People v. Barnett (1998) 17 Cal. 4th 1044 | 12 |
| People v. Barton (1995) 12 Cal. 4th 186 | 11 |
| People v. Ceballos (1974) 12 Cal. 3d 470 | 14 |
| People v. Clark (1982) 130 Cal. App. 3d 371 | 12 |
| People v. Cummings (1993) 4 Cal. 4th 1233 | 19 |
| People v. Daggett (1990) 225 Cal. App. 3d 751 | 15 |
| People v. Day (1992) 2 Cal. App. 4th 405 | 22 |
| People v. Farley (1979) 90 Cal. App. 3d 851 | 22 |

| | Page |
|---|---|
| People v. Fields (1983) 35 Cal. 3d 329 | 16 |
| People v. Ford (1948) 89 Cal. App. 2d 467 | 17 |
| People v. Frierson (1979) 25 Cal. 3d 142 | 21 |
| People v. Hill (1998) 17 Cal. 4th 800 | 15, 17, 18 |
| People v. Humphrey (1996) 13 Cal. 4th 1073 | 12 |
| People v. Kirkes (1952) 39 Cal. 2d 719 | 17 |
| People v. Ledesma (1987) 43 Cal. 3d 171 | 21 |
| People v. Lemus (1988) 203 Cal. App. 3d 470 | 11 |
| People v. Martin (1985) 148 Cal. App. 3d 1111 | 14 |
| People v. Nolan (1932) 126 Cal. App. 623 | 18 |
| People v. Pensinger (1991) 52 Cal. 3d 1210 | 16 |
| People v. Pitts (1990) 223 Cal. App. 3d 606 | 15 |
| People v. Pope (1979) 23 Cal. 3d 412 | 22 |
| People v. Samayoa (1997) 15 Cal. 4th 795 | 16 |
| People v. Sanders (1995) 11 Cal. 4th 475 | 18 |
| People v. Simington (1993) 19 Cal. App. 4th 1374 | 16 |
| People v. Stansbury (1993) 4 Cal. 4th 1017 | 16, 19 |
| People v. Superior Court (Romero) (1996) 13 Cal. 4th 497 | 4 |
| People v. Talle (1952) 111 Cal. App. 2d 650 | 16, 17 |
| People v. Teixeira (1955) 136 Cal. App. 2d 136 | 17 |
| People v. Walker (1973) 32 Cal. App. 3d 897 | 14 |

iii

**Page**

People v. Wickersham (1982) 32 Cal. 3d 307          11

Strickland v. Washington (1984) 466 U.S. 668        22

United States v. Koon (9th Cir. 1994) 34 F. 3d 1416     16

**Statutes**

Penal Code section
    197          13
    197, subdivision (2)    14
    243, subdivision (d)    4
    245, subdivision (a) (1)    4
    654          5
    667.5, subdivision (b)    4, 5
    1170.12, subdivision (c) (1)    4, 5

**Additional Authorities**

California Rules of Court
    Rule 28         1
    Rule 29         1

CALJIC
    5.10         13
    5.16         13
    5.25         13

Case No. SC 57263A

3.    What did you ask the district court to do (for example, award damages, give
      injunctive relief, etc.)?

      REVERSAL OF CONVICTION ; AND RELEASE FROM PRISON ; OR
      REDUCTION OF SENTENCE TO HALF TIME.

4.    State the claim or claims you raised at the district court.

                    ( SEE : EXHIBIT C. ) :(B)

5.    What issues are you raising on appeal?

                    ( SEE : EXHIBIT D.)

# EXHIBIT  C

050

January 8, 2005


Dear Mr. Marbardy,

I am writing this letter on behalf of my son Christoper Prater.  I am his only parent living .His mental stability  is of great concern to me.  Christopher is under a lot of stress and suffering from a mental disorder and depression.

I was a nurse for 33 years and 26 of those years I supervised and coordinated in the department of Mental Health at S.F. General hospital acute psychiatric day treatment department.

Christopher has always had some stability in his life, but lately he has displayed some abnormal behavier.  He is being treated now and is on medication. Also  he had been diagnosed with a disability that requires psychological treatment.

Although he is incarcerated he needs to be in a hospital that can give him the treatment  he needs.

 I would appreciate your recommendation or help in selecting a hospital that addresses psychological disorders.


Sincerely,

Pearl V. Prater

049

CHRISTOPHER KYLE PRATER                                      Court Number SC057263A



## INTERESTED PARTIES 

1) The defendant's attorney, Mr. Gerritt A. Rutgers, provided a packet of documents to this writer regarding the defendant's correctional health records. It was noted in a letter dated December 27, 2004 from Mr. Rutgers, that the defendant suffers from auditory hallucinations and is currently prescribed Risperdal through the V A Hospital in Menlo Park. He is also a polysubstance abuser and has written a number of programs seeking help for substance abuse and mental health issues. Copies of letters indicating that the defendant applied to several programs including Delancey Street Foundation, Daytop, Cronin House, Cordilleras Mental Health Center, and Recovery Concepts were received.

2) A letter dated January 8, 2005 was received from the defendant's mother. That letter is attached to this report for the Court's review.

## MISCELLANEOUS

Records of the DMV reveal that the defendant currently has a suspended driver's license, effective November 4, 2004, for reason of DCSS/Suspended Service: Mailed not Returned, Unclaimed. He has had no convictions, no failures to appear, no moving violations in the past three years, and no accidents.

## FINANCIAL

The defendant is currently incarcerated and unemployed. He listed no current income, one asset, a motor vehicle valued at $700 with no unpaid balance, $30 in savings, $20,000 in unpaid loans, including $15,000 for child support and $5,000 for a college loan, and approximately $2,280 in unsecured debt.

## PROBATION/PAROLE PERFORMANCE

On January 19, 2005, this writer attempted to reach the defendant's last parole agent, however, our call was unsuccessful. To date, we have not reached the parole agent. A review of the defendant's CII record show that he violated his parole in February 2002.

Respectfully submitted,

Approved,                                   By _____
                                                BRUCE C. MABARDY
                                                Deputy Probation Officer

By _____
   CINDY L. PERRY
   Probation Services Manager I

BCM:gpp
File #122137

12

044

CHRISTOPHER KYLE PRATER

Court Number SC057263A

## EMPLOYMENT

The defendant has primarily been employed as a truck driver over the past 10 to 12 years. He was last employed as a moving truck driver for five months until January 2004.

The defendant has also had employment as a construction laborer and as a construction company lead foreman.

## MARITAL

The defendant first met Terri Mae Banks in high school. They were married in 1981 and divorced in 1985 as a result of the defendant's cocaine usage. The defendant noted "we both indulged." He stated that they also had various conflicts of interest. They had one child together, now an adult. The defendant stated that he paid child support and last saw his daughter in August 2004. He stated that he did not see his daughter frequently because he remarried and his daughter lives with her mother in Sacramento.

The defendant first met Patricia Ann Brown in 1985. They married in 1986 and divorced in 1995, as a result of the defendant's drug usage. They had no children together.

## HEALTH

The defendant noted that he has high blood pressure and takes medication for this condition.

When he was 12, the defendant had an appendectomy. When he was 13, he broke his left wrist. At the age of 28, he broke his left knee. At the age of 43, he suffered a nervous breakdown with loss of memory.

The defendant stated that his mental health diagnosis is bipolar disorder with acute sensory perception behavioral disorder, along with bipolar, anxiety, and depression. He stated that he was diagnosed with this condition by his doctor at the VA Hospital, Dr. Perrin French. The defendant was in treatment with Dr. French in March 2004.

## MENTAL HEALTH HISTORY



The defendant noted that he first began seeing his psychiatrist, Dr. Perrin French, in March 2004 at the Menlo Park VA Hospital. He stated that he last saw Dr. French in August 2004. The defendant participated in group therapy which he entered for memory lapse due to a nervous breakdown. He stated that his nervous breakdown occurred due to job stress, his being fired wrongfully, homelessness, and having no money. He noted that he was wrongfully fired from a job and filed a case against his employer and won. He stated that this victory was not very satisfying to him because he was homeless at the time and living out of his car.

The defendant noted that his only mental health history is with the VA Hospital in Menlo Park. He stated that he saw another doctor there one time, a clinical psychologist named Joyce Snyder. He stated that he saw Dr. Snyder in 2001 for anxiety and depression problems.

The defendant noted that his primary care physician at the VA Hospital is Dr. Joyce Chin.

7

7. Ground 2 or Ground _____ (if applicable):

INEFFECTIVE ASSISTANCE OF COUNSEL

a. Supporting facts:

THE PETITIONER'S DEFENSE COUNSEL HIRED A PRIVATE INVESTIGATOR
NAMED, KEN CASSATERI. THE PRIVATE INVESTIGATOR HAD STATED IN HIS
REPORT THAT PETITIONER SUFFERED A MENTAL CONDITION, AND WAS
UNDER PSYCHIATRICT MEDICATION AT THE TIME OF INCIDENT, AND COULD
NOT FUNCTION RESPONSIBLY. PETITIONER'S DEFENSE COUNSEL FAILED TO
OBTAIN MEDICAL RECORDS FROM V.A. MENLO PARK, MENTAL HEALTH; AND
V.A. PALO ALTO UPON PETITIONER'S REQUEST. (★★ ★★★★ ★)

b. Supporting cases, rules, or other authority:

UNITED STATES V. BOOKER, (2005) 543 U.S. ___, 160 L.Ed. 2d 621, 125 S.Ct. 738
IN RE WINSHIP, (1970) 397 U.S. 358, 25 L.Ed. 2d 368, 90 S.Ct. 1068
SANDSTROM V. MONTANA, (1979) 442 U.S. 510, 61 L.Ed. 2d. 39, 99 S.Ct. 2450
YATES V. EVATT, (1991) 500 U.S. 391, 114 L.Ed. 2d 432, 111 S.Ct. 1184
CUYLER V. SULLIVAN, (1980) 446 U.S. 335, 348
STOIA V. U.S. (7th Cir. 1994) 22 F.3d 766, 769

6. GROUNDS FOR RELIEF

**Ground 1:**   State briefly the ground on which you base your claim for relief.  For example, "the trial court imposed an illegal enhancement."  *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

PETITIONER'S DEFENSE COUNSEL FAILED TO SUBMIT 1538.5 MOTION, AND 995 MOTION TO SUPPRESS EVIDENCE, (INCOMPETENCE OF COUNSEL).

a. Supporting facts:

Tell your story briefly without citing cases or law.  If you are challenging the legality of your conviction, describe the facts upon which your conviction is based.  *If necessary, attach additional pages.*  CAUTION: You must state facts, not conclusions.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial.  Failure to allege sufficient facts will result in the denial of your petition.  (See *In re Swain* (1949) 34 Cal.2d 300, 304.)  A rule of thumb to follow is:  *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*.  *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

THE PETITIONER'S APPOINTED DEFENSE COUNSEL; GERRITT RUTGERS; HAD FAILED TO CONTACT PETITIONER'S PSYCHIATRIST; DR. PERRIN FRENCH; AT V.A. MENLO PARK. THE PETITIONER WAS UNDER PSYCHIATRICT MEDICATION AT TIME OF INCIDENT; AND AT TIME OF INTERROGATION; AND HAD TAKEN MORE OF THE MEDICATION THAN PRESCRIBED. PETITIONER'S INSTABILITY; DUE TO THE MEDICATION; PLACED HIM IN A INADEQUATE POSITION, AND THE VIDEO TAPED INTERROGATION BY DETECTIVES SHOULD HAVE BEEN SUPPRESSED. (SEE EXHIBIT A.)

DEFENSE COUNSEL'S FAILURE TO CONTACT PETITIONER'S PSYCHIATRIST ABOUT EFFECTS OF PSYCHIATRICT MEDICATION UPON PETITIONER; WHEN REQUESTED BY PETITIONER; VIOLATED PETITIONERS DUE PROCESS OF EFFECTIVE COUNSEL. (SEE EXHIBIT B.)

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim.  If necessary, attach an extra page.)*

MORAN V. BURBINE (1986) 475 U.S. 412, 421

MALLOY V. HOGAN, (1964) 378 U.S. 1, 8

MIRANDA V. ARIZONA (1966) 384 U.S. 436, 457-58, 492, 479

NEW YORK V. QUARLES (1984) 467 U.S. 649, 654

STRICKLAND V. WASHINGTON, (1984) 466 U.S. 668-692

MC-275 [Rev. January 1, 1999]                **PETITION FOR WRIT OF HABEAS CORPUS**                Page three of six

7. Ground ▮ or Ground **3**  *(if applicable)*:

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

a. Supporting facts:

PETITIONER SENT A LETTER TO HIS APPELLATE COUNSEL IN REGARDS TO ISSUES OF GROUNDS (1), & (2). APPELLATE COUNSEL FAILED TO ADDRESS THE ISSUES IN PETITIONER'S DIRECT APPEAL THIS CONCLUDED THAT APPELLATE COUNSEL'S PERFORMANCE WAS CONSTITUTIONALLY DEFICIENT & PREJUDICIAL. (▮▮▮▮▮▮▮).

JUDGMENT WAS MADE IN REGARDS TO THE TWO (2) PETITIONS; AND A LETTER WAS SENT TO THE STATE SUPREME COURT IN REGARDS TO JUDGMENTS GIVEN. JUDGMENT WAS ALSO GIVEN TOWARDS PETITION PRESENTED, IN REGARDS TO LETTER. (▮▮▮▮▮▮▮).

APPELLATE COUNSEL WAS BOUND BY THE APPELLATE PROCEDURAL RULES OF THE FIRST DISTRICT APPELLATE PROJECT; THAT ISSUES OFF THE RECORD WOULD NOT BE RAISED. FOR APPELLATE COUNSEL WOULD NOT ADDRESS ISSUES OFF THE RECORD PERSUANT TO RULES OF FIRST DISTRICT APPELLATE PROJECT. (▮▮▮▮▮▮▮).

b. Supporting cases, rules, or other authority:

U.S. V. COOK, 45 F.3d 388 (CA.10/OKLA. 1995).
MAITRE V. WAINWRIGHT, 811 F.2d. 1430, 1438 (11th CIR. 1987).
EVITTS V. LUCEY, 469 U.S. 387 (U.S. KY. 1985).
MARTIN V. MITCHELL, (2002) 280 F.3d. 605.

Page  4

Case No. _SC57263A_

6.    Did you present all these issues to the district court?

       _YES_____    If not, why?
       (Yes)/No

7.    What law supports these issues on appeal?   (You may, but need not, refer to cases
       and statutes.)
                    (SEE: EXHIBIT D.)

# EXHIBIT D

✳ TABLE OF AUTHORITIES ✳

[
## EXCERPTS
### OF
### RECORD
]

✳ TABLE OF AUTHORITIES ✳

[8 PAGES] 

EXCERPTS OF RECORD

FROM

APPELLANT'S OPENING BRIEF.

"THE COURT DID NOT INSTRUCT THE JURY THAT THE USE OF DEADLY FORCE IS PERMISSIBLE WHEN RESISTING ANY ATTEMPT TO COMMIT A FELONY, WHEN COMMITTED IN DEFENSE OF HABITATION AGAINST ONE WHO COMMITS A FELONY, OR WHEN ATTEMPTING TO APPREHEND ANY PERSON WHO HAS COMMITTED A FELONY."

(P.C. §197, SUBDS. 1, 2, & 4.)

"APPELLANT MAINTAINS THAT THE COURT SHOULD HAVE INSTRUCTED THE JURY BASED UPON THE PRINCIPLES CONTAINED WITHIN THE PROVISIONS OF SECTION 197, AND SUPPLYING THE JURY WITH MODIFIED VERSIONS OF CALJIC 5.10; 5.13; & 5.25."



[Pg. 1.]

EXCERPTS (CONT)

" THE USE OF DEADLY FORCE IS JUSTIFIABLE AND NOT
UNLAWFUL WHEN COMMITTED BY ANY PERSON WHO IS
RESISTING AN ATTEMPT TO COMMIT A FORCIBLE AND
ATROCIOUS CRIME "

(CALJIC 5.10)


" A FORCIBLE AND ATROCIOUS CRIME IS ANY FELONY
THAT BY IT'S NATURE, AND THE MANNER OF IT'S
COMMISSION THREATENS, OR IS REASONABLY BELIEVED
BY THE DEFENDANT TO THREATEN LIFE, OR GREAT
BODILY INJURY SO AS TO INSTILL IN HIM A REASONABLE
FEAR OF DEATH, OR GREAT BODILY INJURY".

(CALJIC 5.16)


' THE USE OF DEADLY FORCE IS JUSTIFIABLE AND NOT
UNLAWFUL WHEN NECESSARILY COMMITTED IN
ATTEMPTING BY LAWFUL WAYS AND MEANS TO APPREHEND

(CALJIC 5.25)


[Pg. 2]

EXCERPTS OF RECORD (CON'T)

"THE FACTS PRESENTED IN THE INSTANT CASE SATISFY THE REQUIREMENTS FOUND IN 'CEBALLOS'. BURGLARY, ACCORDING TO CEBALLOS, HAS BEEN INCLUDED IN THE GROUP OF CRIMES WHERE, FROM THEIR ATROCITY, AND VIOLENCE HUMAN LIFE, (OR PERSONAL SAFETY FROM GREAT HARM) EITHER IS, OR IS PERSUMED TO BE, IN PERIL".

(PEOPLE VS. CEBALLOS (1974) 12 CAL. 3d. 470, 478)

"AN INDIVIDUAL CHARGED WITH A CRIMINAL OFFENSE HAS A CONSTITUTIONAL RIGHT TO HAVE A JURY DETERMINE EVERY MATERIAL ISSUE PRESENTED BY THE EVIDENCE."

(P.C. § 1093, SUBDS. (f)).

[Pg. 3]

# EXCERPTS OF RECORD (CON'T)

"EVEN IN THE ABSENCE OF A REQUEST, A TRIAL COURT MUST INSTRUCT ON THE GENERAL PRINCIPLES OF LAW RELEVANT TO THE ISSUES RAISED BY THE EVIDENCE; THAT IS, THOSE PRINCIPLES THAT ARE CLOSELY, AND OPENLY CONNECTED WITH THE FACTS BEFORE THE COURT, AND WHICH ARE NECESSARY FOR THE JURY'S UNDERSTANDING OF THE CASE."

(PEOPLE VS. SEDENO, (1974) 10 CAL. 3d 703, 715-716).

"THE TRIAL COURT MUST THEREFORE INSTRUCT ON EVERY THEORY OF THE CASE THAT IS SUPPORTED BY SUBSTANTIAL EVIDENCE."

(PEOPLE V. GLENN, (1991) 229 CAL. APP 3d 1461, 1465).

"THE DEFENDANT IS ENTITLED TO SUCH INSTRUCTIONS REGARDLESS OF THE DEFENDANT'S TESTIMONY, AS LONG AS THERE IS SUBSTANTIAL EVIDENCE TO SUPPORT THE INSTRUCTION."

(PEOPLE V. ELIZE, (1999) 71 CAL. APP. 4th 605, 612-613).

[Pg. 4]

EXCERPTS OF RECORD (CON'T)

"UNDER THE SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, THE SUPREME COURT HAS HELD THAT AS A GENERAL PROPOSITION, A DEFENDANT IS ENTITLED TO AN INSTRUCTION AS TO ANY RECOGNIZED DEFENSE FOR WHICH THERE EXISTS EVIDENCE FOR A REASONABLE JURY TO FIND IN HIS FAVOR".

(MATHEWS V. UNITED STATES, (1988) 485 U.S. 58, 63.)

"A FAILURE TO PROVIDE THE JURY WITH INSTRUCTIONS ON THE DEFENSE THEORY OF THE CASE INFRINGES UPON APPELLANT'S CONSTITUTIONAL RIGHTS BECAUSE IT STOPS THE JURY FROM CONSIDERING DEFENDANT'S DEFENSE TO THE CHARGES AGAINST HIM, AND FROM MAKING FINDINGS OF FACT NECESSARY TO ESTABLISH GUILT. AN INSTRUCTIONAL ERROR THAT DISTORTS, OR ELIMINATES THE BURDEN OF PROOF APPLICABLE TO A DEFENSE IS SUBJECT TO FEDERAL CONSTITUTIONAL ERROR ANALYSIS.

(PEOPLE V. SPRY, (1997) 58 CAL. APP. 4th 1345, 1371-1372.)

[Pg. 5]

EXCERPTS OF RECORDS (CONT)

"A CRIMINAL DEFENDANT IS GUARANTEED THE RIGHT TO THE ASSISTANCE OF COUNSEL BY BOTH THE SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SEC. 15, OF THE CALIFORNIA CONSTITUTION. CONSTRUED IN LIGHT OF IT'S PURPOSE, THE RIGHT ENTITLED THE DEFENDANT NOT TO SOME BARE ASSISTANCE BUT RATHER TO EFFECTIVE ASSISTANCE"

   (PEOPLE V. LEDESMA, (1987) 43 CAL. 3d. 171, 217, 222.)


"DEFENDANT MUST SHOW THAT COUNSEL'S REPRESENTATION WAS DEFICIENT, AND THAT IT FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS UNDER PREVAILING NORMS, AND THAT THE DEFICIENT PERFORMANCE PREJUDICED THE DEFENSE.

   (STRICKLAND V. WASHINGTON, (1984) 466 U.S. 668, 687.)


[Pg. 6]

EXCERPTS OF RECORD (CON'T)

"A PROSECUTOR'S CONDUCT THAT DOES NOT RENDER A CRIMINAL TRIAL FUNDAMENTALLY UNFAIR IS PROSECUTORIAL MISCONDUCT UNDER STATE LAW ONLY IF IT INVOLVES THE USE OF DECEPTIVE, OR REPREHENSIBLE METHODS TO ATTEMPT TO PERSUADE EITHER THE TRIAL COURT, OR THE JURY."

( PEOPLE V. MORALES, (2001) 25 CAL. 4TH 34, 44.)

"A PROSECUTOR'S RUDE, AND INTEMPERATE BEHAVIOR VIOLATES THE FEDERAL CONSTITUTION WHEN IT COMPRISES A PATTERN OF CONDUCT SO EGREGIOUS THAT IT INFECTS THE TRIAL WITH SUCH UNFAIRNESS AS TO MAKE THE CONVICTION A DENIAL OF DUE PROCESS."

( DONNELLY V. DECHRISTOFORD, (1974) 416 U.S. 637, 642-643

[Pg. 7]

EXCERPTS OF RECORD  (CON'T)

"THE COURT ERRED IN REFUSING TO GIVE THE FOLLOWING INSTRUCTION: "THE COURT INSTRUCTS THE JURY THAT A PERSON IN THE EXERCISE OF HIS RIGHTS OF SELF-DEFENSE NOT ONLY HAS A RIGHT TO STAND HIS GROUND, AND DEFEND HIMSELF WHEN ATTACKED, BUT HE MAY PURSUE HIS ADVERSARY UNTILL HE HAS SECURED HIMSELF FROM DANGER."

    (PEOPLE V. RUSSELL [59 C.A. 2d 660] P.663 [1].)


"A PERSON ASSAILED HAS THE RIGHT TO REPEL FORCE WITH FORCE; THAT HE MAY EMPLOY THE RIGHT TO DEFEND HIMSELF FROM APPREHENDED DANGER TO ANY EXTENT WHICH TO HIM IS APPARENTLY NECESSARY."

    (PEOPLE V. RUSSELL [59 C.A. 2d 660] P.663 [1].)

"TO RAISE THE ISSUE OF SELF-DEFENSE, THE DEFENDANT MUST ADMIT THAT HE COMMITTED THE CRIMINAL ACT, BUT THAT HE ACTED," UNDER EXCUSABLY EXTENUATING CIRCUMSTANCES" THAT REMOVED THE KILLING, OR ASSAULT FROM BEING A CRIMINAL ACT."

    (PATTERSON V. NEW YORK, 432 U.S. 230), (1977).
    (PATTERSON V. NEW YORK, 432 U.S. 197, (1977).

[Pg. 8]

AUTHORITIES FOR EXHIBITS

＊ TABLE OF AUTHORITIES ＊

[1.] OF 3.

TABLE OF AUTHORITIES

# * AUTHORITIES FOR EXHIBITS *

CONCLUSION:

$$\boxed{\underline{\underline{A.}} \atop \text{EXHIBIT}}$$

1.) ROWE VS. UNITED STATES, (1896) 164 U.S. 546, 557, 17 S.CT. 174-175,

2.) GRYGER VS. BURKE, (1948) 334 U.S. 728, 68 S.CT. 12-59.

3.) MATTHEWS VS. UNITED STATES, (1988) 485 U.S. 58, 63.

4.) IN RE WINSHIP, (1970) 397 U.S. 358, 25 L.Ed. 2d 368, 90 S.CT. 2450.

5.) UNITED STATES VS. BOOKER, (2005) 543 U.S. — 1160 L.Ld 621, 125 S.CT 738.

6.) MALLOY VS. HOGAN, (1964) 378 U.S. 1, 8.

# * TABLE OF AUTHORITIES *

[2.] OF 3.

# TABLE OF AUTHORITIES

## ✳ AUTHORITIES FOR EXHIBITS ✳

C.
EXHIBIT

CONCLUSION:

1). SANDSTROM VS. MONTANA, (1979) 442 U.S. 510, 61 L.Ed. 2d 39, 99 S.Ct. 242

2.) CUYLER VS. SULLIVAN, (1980) 446 U.S. 335, 348.

3.) MORAN VS. BURBINE, (1986) 475 U.S. 412, 421.

4.) PEOPLES VS. ROSALES, (1984) 153 CA 3d 353, 200 CR 310.

5.) NEW YORK VS. QUARLES, (1984) 467 U.S. 649, 654.

## ✳ TABLE OF AUTHORITIES ✳

[3.] OF 3.

CHRISTOPHER KYLE PRATER

Court Number SC057263A

0 4 5

* * * * * * * * * * *

The defendant related that he believes his mental health is getting better. He stated that he has been prescribed the psychiatric medications Visteril for anxiety/depression (100 mg daily), and Risperdon to control hallucinations/voices (4 mg per day). He currently takes both of these medications.

## SUBSTANCE ABUSE/TREATMENT HISTORY

The defendant first began the use of alcohol at the age of 13. He stated that he consumed alcohol on a chronic basis from his teenage years through the military. He stated that he last used over one year ago.

The defendant related that he had alcohol was not a factor prior to his commission of the present offense. He stated that he does believe himself to be an alcoholic and that alcohol is a problem for him.

The defendant first used marijuana at age 13. He stated that he last used this substance in 2003. He related that he used it "every day."

The defendant stated that he first began the use of powder cocaine as a teenager at age 16. He last used it in 2002. He stated that his means of ingestion was through snorting. He stated that this was his primary drug of choice and he would normally use it one time weekly or on the weekends.

The defendant stated that from 1995 to 1996, he snorted heroin "almost every day."

The defendant stated that he first began the use of crystal methamphetamine in 1996 with means of ingestion through snorting. He stated that he would use this substance during the weekends and stopped using it in 2003.

The defendant noted that he participated in one residential treatment program, Project 90, from November 2002 to April 2003. He stated that he entered that program on a voluntary basis and completed it successfully. When asked why he entered the program, he stated, "truthfully, I went there 'cause I was homeless." The defendant noted that the Project 90 program was a regular program and not a dual-diagnosis program.

The defendant stated he has never used drugs intravenously.

## MILITARY

The defendant entered the U.S. Marine Corps in November 1981 and was generally discharged under honorable conditions in March 1984. He stated that the reason for his general discharge was that he was having problems with his daughter at the time and that his ex-wife left her with various people and the defendant had to go and find her. The defendant served as an aircraft mechanic for the Marines.

The defendant entered the U.S. Army in 1985 and was honorably discharged in 1993. He stated that he served in a field artillery unit and as a supply clerk.

8

002

1  • INTERVIEW OF CHRISTOPHER PRATER

2  Case Name/Number: People vs. Christopher Prater // SC57263

3  Date and Time: September 20, 2004 approx. 0255 hours

4  Location:

5  Present: Detective Frank Taylor // Sergeant Rick Yearman // Christopher Prater

6  (Initials = Name of person speaking)

7  FT:      Frank Taylor, Detective

8  CP:      Christopher Prater

9  RY:      Rick Yearman, Sergeant

10 ——————————————————————————————————————

11 (Unintelligible conversation)

12 RY:    Let's go; let's get this over with, okay.

13 CP:    Man, I'm tired.

14 RY:    Me too.

15 CP:    (Unintelligible)

16 RY:    I came out; I got out of bed to come see you man.

17 CP:    It's not what there doing, what they got nothing?

18 FT:    No, we wouldn't leave you in there.

19 CP:    Mmm, somebody did.

20 RY:    All right, you know it's about seven minutes to three in the morning? You know the uh, date

21      today?

22 CP:    (unintelligible)

23 RY:    Christopher.

24 CP:    Hmm.

25 RY:    Do you know the date today?

003

| | | |
|---|---|---|
| 1 | CP: | (Unintelligible) um. |
| 2 | RY: | Twentieth of September, does that sound right? |
| 3 | CP: | Yah. |
| 4 | RY: | Monday morning. |
| 5 | CP: | Okay. |
| 6 | FT: | Chris, my name's Frank Taylor, and I'm a detective with the Sheriffs Office. And that's Rick |
| 7 | | Yearman, he's a sergeant with the Sheriffs office and you met him earlier, right? |
| 8 | CP: | Uh-uh. |
| 9 | FT: | No, okay. All right Chris, what's your uh, your name's Christopher? |
| 10 | CP: | Yes. |
| 11 | FT: | And your last name? |
| 12 | CP: | Prater, P-r-a-t-e-r. |
| 13 | FT: | Prater. How old are you right now? |
| 14 | CP: | I'm 42. |
| 15 | FT: | And what's your date of birth? |
| 16 | CP: | Eight fourteen sixty-one. |
| 17 | FT: | Eight fourteen sixty-one. And you live there, usually at 2080 Glen? |
| 18 | CP: | That is one of the places I live, since October. |
| 19 | FT: | Since October? |
| 20 | CP: | End of July, started in July. |
| 21 | FT: | Since July? |
| 22 | CP: | Yes. |
| 23 | FT: | Okay, I guess she selling that house huh? |
| 24 | CP: | Huh, yes, she is. |
| 25 | FT: | She sell that house? And uh, who do you live there with? |

C:\...\LOCALS~1\Temp\pratertranscorrected1.doc

0 0 4

1   CP:   Uh, myself uh.

2   FT:   You, you live there alone?

3   CP:   Uh, it's her house and I rent a room from her.

4   FT:   Okay. All right, I'm going to read you something here just uh, just uh, formality, okay. We

5         uhm, you have the right to remain silent, you understand that? And anything you say can and

6         will be used against you in a court of law, you understand that, right? Okay. And you have the

7         right to talk to an attorney and have an attorney present before or during questioning if you

8         desire, you understand that? Okay, if you can't afford an attorney one will be appointed free

9         of charge to represent you before and during questioning if you desire. You understand these

10        are the rights I explained to you?

11  CP:   M-hmm.

12  FT:   Do you know why you're uh, here tonight?

13  CP:   Uh, investigation.

14  FT:   Investigation about what?

15  CP:   Um, that I tried to rob uh, rob my room.

16  FT:   Okay. So, someone, someone tried to break into your house?

17  CP:   Someone did break into my house.

18  FT:   Who was that?

19  CP:   Uh, his name was uh, Daryl Thomas.

20  FT:   Okay. Do you know where Daryl is right now?

21  CP:   Uh, supposedly he's homeless.

22  FT:   Okay.

23  RY:   Did he go, could we uh, (unintelligible) out of the room, do you go by Randy? Is that what

24        people call you?

25  CP:   No.

005

| | | |
|---|---|---|
| 1 | FT: | Do you have a nickname of Randy? |
| 2 | CP: | No. |
| 3 | CW: | Okay. Do you know uh, forget the guys name already. |
| 4 | RY: | Long time ago. |
| 5 | FT: | Yah. Do you know uh, Rodney Green? |
| 6 | CP: | Yes. |
| 7 | FT: | He was hanging out there tonight. |
| 8 | CP: | Yup, yeah. |
| 9 | FT: | -Could you tell me about Rodney? |
| 10 | CP: | Uh, supposedly he um, got kicked out by the guy who's taking care of him I don't know, so I |
| 11 | | say well, cause I'm moving from my place to another place. |
| 12 | FT: | Where are you moving to? What's that new address? |
| 13 | CP: | Um, what the hell is it, just a minute. I can't remember right now man, but it's over. |
| 14 | FT: | I understand. |
| 15 | CP: | Somewhere on the other side of uh, freeway. |
| 16 | FT: | Okay. |
| 17 | RY: | Why, why would Rodney refer to you as Randy? |
| 18 | FT: | How long have you known, how long have you known him? |
| 19 | CP: | Who? |
| 20 | FT: | Rodney. |
| 21 | CP: | Uh, it's been about maybe, it about a week or so. |
| 22 | FT: | Okay. Had you known him from, uh, from before? |
| 23 | CP: | No, no. |
| 24 | FT: | And he takes care of somebody, huh? |
| 25 | CP: | Yes. |

C:\DOCUME~1\echev\LOCALS~1\Temp\pretertranscriptress.rtf.doc

006

1   FT:   And that's all you know, you just, you just met him?

2   CP:   Yah, yah, yah.

3   FT:   On the street?

4   CP:   Yah.

5   RY:   He was at your place tonight.

6   CP:   Yah, yah.

7   RY:   What was he doing there?

8   CP:   Cause he said he needed a spot until uh, the (unintelligible), until, I guess the older guy cool

9         off or something like that, so, I know, and uh, on my way to taking him home that's when this

10        guy came knocking on the door. And I heard his voice on the door, that's when I went to the

11        owner and knocked on her door. And then when I knocked on her door and told her, hey uh,

12        the guy that broke into my room is at my door, and um, so she called the police, and so, I, like

13        he's still out there, (unintelligible), didn't know if he's still out there and I thought about my

14        car because I like he's trying to vandalize my car my car, so, then I just grabbed a knife

15        (unintelligible) out of the kitchen and went outside

16  FT:   I'm sorry, you did what?

17  CP:   Grabbed a knife out of the kitchen to go outside with, I'm thinking like, only cause I told uh,

18        because we about to leave, Rodney, I say hey Rodney, what's his name out there at that door,

19        I say man, don't um, don't answer nothing and don't open it, I don't care what, even of he

20        tries to break, breaks windows or something like that, right. And so I'm thinking that, if I tell

21        Karen and Karen look, he's going to try to vandalize the house or something man, call the

22        police no matter what.

23  FT:   You wanted her to call the police?

24  CP:   Yah. And uh, when she called 9-1-1, it was like, you know, a few minutes till and no response

25        and I'm thinking, ah this man going to mess up my car so, like I went outside. And than as uh,

1  you know approach to see he was like, (unintelligible) my doors at, he come right out of

2  bushes and says, get away from me man..

3  FT:  He said what?

4  CP:  He says, I left a jacket there, so I said man, you crazy, you just robbed my place and now get

5  the hell away from here, all right. And he tried to uh, you know, attack me like this, with his

6  leg and then like, 'cause I guess he didn't expect a knife, and then he's like, I didn't do

7  anything. I said man, get away from me, get out of here man, and than he tried running fast,

8  ran, tried to run him off.

9  FT:  You ran fast?

10 CP:  He did.

11 FT:  He did.

12 RY:  You said your house was burglarized?

13 CP:  Yes, it was.

14 RY:  When?

15 CP:  Let me uh..

16 RY:  When was it burglarized?

17 CP:  That morning. He did it.

18 RY:  (Unintelligible).

19 CP:  The, the landlord seen it.

20 RY:  Okay, you weren't there though.

21 CP:  No I wasn't.

22 RY:  Because the land, the landlord saw it.

23 CP:  Because the landlord saw it.

24 FT:  What was taken?

25  .

008

1  CP:   CD's, DVD's, um, a little bit, uh, a suitcase of clothes um, that pretty much that's it like

2        sixteen DVD's and um, oh, and some VCR tapes about 40 or so VCR tapes.

3  FT:   How many times had he ripped you off?

4  CP:   He never did.

5  FT:   This one time?

6  CP:   Just this time, yah.

7  FT:   How did you know it was him?

8  CP:   Cause I know the landlord say it was him.

9  RY:   Did you ever say what his, uh, first name is, who is he?

10 CP:   Hmm?

11 RY:   The guy that ripped you off, who is he, what's him name?

12 CP:   Darryl Thomas.

13 FT:   How do you know him?

14 CP:   What do you mean how I know him?

15 CP:   Yah, yah, knew him from the neighborhood, yah, (unintelligible) I grew up in the

16        neighborhood.

17 FT:   About, uh, about how many years have you known him?

18 CP:   I don't know, no, nothing, nothing like that, it was this, the guy, the guy was homeless, he

19        didn't really have no place to go. I met him through, um, another lady friend of mine and so he

20        said man (unintelligible) place, I said I tell you what man, if you just stay the day with me,

21        you know (unintelligible). So he did and uh, you know, I left, he left. I said hey look, you can

22        come here, get your clothes and whatever you know because I'm moving to an apartment woo

23        woo. So, just when, when I'm here you call me when you need to get in here and you call me

24        other than that, you can't come over here.

25 FT:   And, what do you know about Darryl? Tell me about his uh personality, or his character.

C:\DOCUME~1\owlmx\LOCALS~1\Temp\brater.transcript.revised1.doc   7

## PROOF OF SERVICE BY MAIL

I, _CHRISTOPHER PRATER_ , declare that I am over 18 years of age, and a

party to the attached herein cause of action, that I reside at California State Prison at

Corcoran, in the County of King, California.

My mailing address is: _P.O. Box 3466, / 3B·03-14/L_

_CORCORAN, CA 93212_ .

On _July 8th_ , 2008 , I delivered to prison officials for mailing, at the

above address, the attached: _UNITED STATES COURT OF APPEALS Ninth Circuit_

_____

_____

in sealed envelope(s), with postage fully prepaid, and addressed to the following:

(1) _UNITED STATES Ninth Circuit_  (2) _____

_U.S. COURT OF APPEALS_  . _____

_95 SEVENTH ST_  _____

_S.F. CA 94103_  _____

(3)_____  (4)_____

_____  _____

_____  _____

_____  _____

I declare under penalty of perjury that the foregoing is true and correct to the best of
my knowledge. Executed this _08_ day of _July_ , 2008 , at
California State Prison, Corcoran.

_Christopher V. Prater_
In Pro Per

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CHRISTOPHER K. PRATER
_____
Appellant/Petitioner

CASE NO. SC 57263A

vs.

SC 57263A

STATE OF CALIFORNIA
_____
Appellee/Respondent

RECEIVED
CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

JUL 1 1 2008

FILED_____
DOCKETED_____   DATE

## APPELLANT'S INFORMAL BRIEF

1.  Jurisdiction

    a.  Timeliness of Appeal or Petition:

        (i)   Date of entry of judgment or order
              of lower court: ____MAY 27, 2008____

        (ii)  Date of service of any motion made after judgment
              (other than for fees and costs): _____

        (iii) Date of entry of order deciding motion  MAY 27, 2008

        (iv)  Date notice of appeal filed  JUNE 1, 2008

        (v)   For prisoners, date you gave notice of appeal
              to prison authorities  ~~JUNE 1, 2008~~ JULY 08th, 2008

    b.  IF POSSIBLE, PLEASE ATTACH ONE COPY OF EACH OF THE
        FOLLOWING:  (SEE EXHIBITS A.)

            1.  The order from which you are appealing
            2.  The district court's entry of judgment
            3.  The district court docket sheet

# EXHIBIT  A

CLERK, U.S. COURT OF APPEALS
FOR THE NINTH CIRCUIT
95 SEVENTH STREET
P.O. BOX 193939
SAN FRANCISCO, CA 94119-3939

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

OFFICE OF THE CLERK
U.S. DISTRICT COURT
NORTHERN CALIFORNIA
BOX 36060, U.S. COURTHOUSE
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102





$ 04.80

U.S. POSTAGE