**FILED**

AUG X 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

**RECEIVED**

AUG  5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*TEH*

*District Court*

*District*

*Ave*

*94102-3483*



Label 107R, February 2006

PRIORITY
MAIL
UNITED STATES POSTAL SERVICE ®

www.usps.com

Christopher K. Prater, V-67110

P.O. Box 8800 / B303-141L

Corcoran, Ca 93212

United Sta

for the Northe

U.S. Court No.

450 Golden G

San Francisco, C

7/31/08

**COPY**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER K. PRATER,                    )    No. C 07-05382 TEH (PR)
                                          )
              Petitioner,                 )    ORDER DENYING MOTION FOR
                                          )    NOTICE OF APPEAL AND
vs.                                       )    GRANTING EXTENSION
                                          )
                                          )    (Docket No. 11)
FOLSOM STATE PRISON, Warden,              )
                                          )
              Respondent.                 )
                                          )

Petitioner, a state prisoner currently incarcerated at the California State Prison - Corcoran, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction.   On May 27, 2008, Respondent filed an answer to the petition.  Thereafter, Petitioner filed a motion seeking to file a notice of appeal in the instant case.  However, Petitioner's motion is filed in error, as no judgment has been rendered in this action.  Therefore, the motion is DENIED as moot (docket no. 11). Petitioner will be granted an extension of thirty days in which to file a traverse, should he choose to do so.

IT IS SO ORDERED.

DATED:  7/23/08

THELTON E. HENDERSON
United States District Judge

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER KYLE PRATER,

Plaintiff,

v.

WARDEN et al,

Defendant.

_____/

Case Number: CV07-05382 TEH

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 23, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Christopher K. Prater #V-67110
California State Prison-Corcoran
P.O. Box 3481, 4B-3L-30L
Corcoran, CA 93212

Dated: July 23, 2008

Richard W. Wieking, Clerk
By: R.B. Espinosa, Deputy Clerk

ON ~~XXXXX~~ MAY 27, 2008 APPELLANT RECEIVED A
ANSWER FROM THE DISTRICT COURTS UNDER WARDEN
DERRELL ADAMS. PETITIONER WAITED BUT No JUDGMENT
WAS GIVEN. PETITIONER OBSERVE THAT THE RESPONDENT
REQUESTED TO HAVE MOTION DENIED. UPON THAT DECISION,
PETITIONER FELT THAT THE MOTION HAD BEEN ANSWERED.
   PETITIONER RESPECTFULLY ~~SAY~~ THAT PETITIONER'S CASE (SEE A
                    REQUEST
BE LEFT TO THE NINTH CIRCUIT TO BE ANSWERED.

Name   CHRISTOPHER K. PRATER        MC 275
       V-67110
Address   P.O. BOX 8800/3BD3-141L
       CORCORAN, CA 93212

CDC or ID Number   V-67110

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT
*(Court)*

CHRISTOPHER K. PRATER
Petitioner                           PETITION FOR WRIT OF HABEAS CORPUS

            vs.
STATE OF CALIFORNIA        No. C 07-05382 TEH (PR)
Respondent                 *(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS – READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable question in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by
the Judicial Council
of California MC 275
[Rev. Jun 1 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code § 1473 et seq
Cal. Rules of Court, rule
60 et al

**This petition concerns:**

☒ A conviction                    ☐ Parole

☐ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☐ Other *(specify):* _____

1. Your name: CHRISTOPHER KYLE PRATER

2. Where are you incarcerated? CORCORAN STATE PRISON

3. Why are you in custody? ☐ Criminal Conviction  ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reasons for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

ASSAULT WITH A DEADLY WEAPON TO CREATE G.B.I.

b. Penal or other code sections: P.C. 245 (a) (1)

c. Name and location of sentencing or committing court: SAN MATEO COUNTY SUPERIOR COURT
400 COUNTY CENTER, REDWOOD CITY, CA 94063-1655.

d. Case number: SCD57263A

e. Date convicted or committed: FEBRUARY 1ST, 2005

f. Date sentenced: FEBRUARY 1ST, 2005

g. Length of sentence: NINE YEARS

h. When do you expect to be released? 11/11/2002

i. Were you represented by counsel in the trial court? ☒ Yes. ☐ No. If yes, state the attorney's name and address:
GERRIT RUTGERS 300 BRADFORD ST, REDWOOD CITY, CA

4. What was the LAST plea you entered? *(check one)*
☒ Not guilty  ☐ Guilty  ☐ Nolo Contendere  ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?
☒ Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

7. Ground 2 or Ground _____ (if applicable):
   INEFFECTIVE ASSISTANCE OF COUNSEL

a. Supporting facts:
   THE PETITIONER'S DEFENSE COUNSEL HIRED A PRIVATE INVESTIGATOR
   NAMED, KEN CASSATERI. THE PRIVATE INVESTIGATOR HAD STATED IN HIS
   REPORT THAT PETITIONER SUFFERED A MENTAL CONDITION, AND WAS
   UNDER PSYCHIATRICT MEDICATION AT THE TIME OF INCIDENT, AND COULD
   NOT FUNCTION RESPONSIBLY. PETITIONER'S DEFENSE COUNSEL FAILED TO
   OBTAIN MEDICAL RECORDS FROM V.A. MENLO PARK, MENTAL HEALTH; AND
   V.A. PALO ALTO UPON PETITIONER'S REQUEST. (EXHIBIT H)

b. Supporting cases, rules, or other authority:
   UNITED STATES V. BOOKER, (2005) 543 U.S. ___, 160 L.Ed. 2d 621, 125 S.CT. 738.
   IN RE WINSHIP, (1970) 397 U.S. 358, 25 L.Ed. 2d 368, 90 S.CT. 1068
   SANDSTROM V. MONTANA, (1979) 442 U.S. 510, 61 L.Ed. 2d.39, 99 S.CT. 2450
   YATES V. EVATT, (1991) 500 U.S. 391, 114 L.Ed. 2d 432, 111 S.CT. 1184
   CUYLER V. SULLIVAN, (1980) 446 U.S. 335, 348
   STDIA V. U.S. (7ᵗʰ CIR. 1994) 22 F.3d 766,769

6. GROUNDS FOR RELIEF

**Ground 1:**   State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

PETITIONER'S DEFENSE COUNSEL FAILED TO SUBMIT 1538.5 MOTION, AND 995 MOTION TO SUPPRESS EVIDENCE. (INCOMPETENCE OF COUNSEL).

a.   Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

THE PETITIONER'S APPOINTED DEFENSE COUNSEL; GERRITT RUTGERS; HAD FAILED TO CONTACT PETITIONER'S PSYCHIATRIST; DR. PERRIN FRENCH; AT V.A. MENLO PARK. THE PETITIONER WAS UNDER PSYCHIATRIC MEDICATION AT TIME OF INCIDENT; AND AT TIME OF INTERROGATION; AND HAD TAKEN MORE OF THE MEDICATION THAN PRESCRIBED. PETITIONER'S INSTABILITY; DUE TO THE MEDICATION; PLACED HIM IN A INADEQUATE POSITION, AND THE VIDEO TAPED INTERROGATION BY DETECTIVES SHOULD HAVE BEEN SUPPRESSED. (SEE EXHIBIT A.)

DEFENSE COUNSEL'S FAILURE TO CONTACT PETITIONER'S PSYCHIATRIST ABOUT EFFECTS OF PSYCHIATRIC MEDICATION UPON PETITIONER; WHEN REQUESTED BY PETITIONER; VIOLATED PETITIONERS DUE PROCESS OF EFFECTIVE COUNSEL. (SEE EXHIBIT B.)

b.   Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

MORAN V. BURBINE (1986) 475 U.S. 412, 421
MALLOY V. HOGAN, (1964) 378 U.S. 1, 8
MIRANDA V. ARIZONA (1966) 384 U.S. 436, 457-58, 492, 479
NEW YORK V. QUARLES (1984) 467 U.S. 649, 654
STRICKLAND V. WASHINGTON, (1984) 466 U.S. 668-692

7. Ground ▓ or Ground **3**    *(if applicable):*

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

a. Supporting facts:

PETITIONER SENT A LETTER TO HIS APPELLATE COUNSEL IN REGARDS TO
ISSUES OF GROUNDS (1), & (2). APPELLATE COUNSEL FAILED TO ADDRESS
THE ISSUES IN PETITIONER'S DIRECT APPEAL THIS CONCLUDED THAT APPELLATE
COUNSEL'S PERFORMANCE WAS CONSTITUTIONALLY DEFICIENT & PREJUDICIAL.
(▓▓▓▓▓▓▓▓▓▓) . (EXHIBIT. C)
    JUDGMENT WAS MADE IN REGARDS TO THE TWO (2) PETITIONS ; AND A LETTER
WAS SENT TO THE STATE SUPREME COURT IN REGARDS TO JUDGMENTS GIVEN.
JUDGMENT WAS ALSO GIVEN TOWARDS PETITION PRESENTED, IN REGARDS TO LETTER.
(▓▓▓▓▓▓▓) . (EXHIBIT. D)
    APPELLATE COUNSEL WAS BOUND BY THE APPELLATE PROCEDURAL RULES OF THE
FIRST DISTRICT APPELLATE PROJECT ; THAT ISSUES OFF THE RECORD WOULD NOT BE
RAISED . FOR APPELLATE COUNSEL WOULD NOT ADDRESS ISSUES OFF THE RECORD
PERSUANT TO RULES OF FIRST DISTRICT APPELLATE PROJECT.
(▓▓▓▓▓▓▓▓) .

b. Supporting cases, rules, or other authority:

U.S. V. COOK , 45 F. 3d 388 (CA. 10 / OKLA. 1995).
MAITIRE V. WAINWRIGHT., 811 F. 2d. 1430, 1438 (11th CIR. 1987).
EVITTS V. LUCEY., 469 U.S. 387 (U.S. KY. 1985).
MARTIN V. MITCHELL , (2002) 280 F.3d, 605 .

COPY

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
6  State Bar No. 117315
   455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA 94102-3664
   Telephone: (415) 703-1362
8  Fax: (415) 703-1234
   Email: peggy.ruffra@doj.ca.gov
9  Attorneys for Respondent

10             IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13
   **CHRISTOPHER PRATER,**                    C 07-5382 TEH
14
                                 Petitioner,   **ANSWER TO ORDER TO SHOW**
15                                             **CAUSE**
                   v.
16
   **DERRAL ADAMS, Warden,**
17
                                 Respondent.
18

19        Respondent hereby provides this answer to the Order to Show Cause why the petition for

20  writ of habeas corpus should not be granted.

21                              **I.**

22                          **CUSTODY**

23        Petitioner is lawfully in the custody of Derral Adams, Warden of California State Prison -

24  Corcoran,[1/] as a result of a judgment of conviction in Case No. SC57263. On December 6, 2004,

25  a San Mateo County jury convicted petitioner of assault with a deadly weapon (Cal. Penal Code §

26

27        1. Petitioner did not name the warden at the state prison where he is incarcerated. We have
28  named that individual, Derral Adams, as the respondent.

Answer to Order to Show Cause - C 07-5382 TEH

                                 1

1   245(a)(1)) and battery resulting in serious bodily injury (Cal. Penal Code § 243(d)), along with great

2   bodily injury and deadly weapon enhancements (Cal. Penal Code §§ 1192.7(c)(8), (c)(23)). The trial

3   court found that petitioner had sustained a prior strike and a prior prison term. On February 1, 2004,

4   the court sentenced petitioner to nine years in prison.

5                                           **II.**

6                           **GENERAL AND SPECIFIC DENIALS**

7            Respondent denies that the state court's ruling was based on an unreasonable

8   determination of fact or was contrary to or involved an unreasonable application of clearly

9   established United States Supreme Court law. Respondent specifically denies that (1) petitioner

10  received ineffective assistance of trial counsel; (2) the prosecutor committed prejudicial misconduct;

11  and (3) petitioner received ineffective assistance of appellate counsel.

12                                          **III.**

13                              **PROCEDURAL ISSUES**

14           The claims in the petition are exhausted. The petition is timely within the meaning of 28

15  U.S.C. § 2244(d).

16                                          **IV.**

17                              **LODGED DOCUMENTS**

18           Respondent has lodged concurrently with this answer the following exhibits: (1) Clerk's

19  Transcript (2 volumes); (2) Reporter's Transcript (7 volumes); (3) Appellant's Opening Brief; (4)

20  Respondent's Brief; (5) Appellant's Reply Brief; (6) Opinion by California Court of Appeal; (7)

21  Petition for Review; (8) Order denying review; (9) Docket, Case No. A115101; (10) Docket, Case

22  No. S147547; (11) Docket, Case No. S152660.

23                                          **V.**

24                          **INCORPORATION BY REFERENCE**

25           Respondent hereby incorporates by reference the accompanying memorandum of points

26  and authorities in support of this answer.

27  ///

28  ///

Answer to Order to Show Cause - C 07-5382 TEH

COPY

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
6  State Bar No. 117315
   455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA 94102-3664
   Telephone: (415) 703-1362
8  Fax: (415) 703-1234
   Email: peggy.ruffra@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13
    **CHRISTOPHER PRATER,**                    C 07-5382 TEH
14
                                Petitioner,    **NOTICE OF LODGING OF, AND**
15                                             **INDEX TO, EXHIBITS**
              v.
16
    **DERRAL ADAMS, Warden,**
17
                                Respondent.
18

19

20        Exhibit 1:    Clerk's Transcript (2 volumes)

21        Exhibit 2:    Reporter's Transcript (7 volumes)

22        Exhibit 3:    Appellant's Opening Brief

23        Exhibit 4:    Respondent's Brief

24        Exhibit 5:    Appellant's Reply Brief

25        Exhibit 6:    Opinion by California Court of appeal

26        Exhibit 7:    Petition for Review

27        Exhibit 8:    Order denying review

28        Exhibit 9:    Docket, Case No. A115101

1      Exhibit 10:    Docket, Case No. S147547

2      Exhibit 11:    Docket, Case No. S152660

3

4      Dated: May 27, 2008

5                              Respectfully submitted,

6                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

7                              DANE R. GILLETTE
                               Chief Assistant Attorney General
8
                               GERALD A. ENGLER
9                              Senior Assistant Attorney General

                               JULIET B. HALEY
10                             Deputy Attorney General

11                             /s/ Peggy S. Ruffra

12                             PEGGY S. RUFFRA
                               Supervising Deputy Attorney General
13
                               Attorneys for Respondent
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# VI.

2

## CONCLUSION

3 Respondent respectfully requests that the petition for writ of habeas corpus be denied.

4

5 Dated: May 27, 2008

6                      Respectfully submitted,

7                      EDMUND G. BROWN JR.
                     Attorney General of the State of California

8                      DANE R. GILLETTE
                     Chief Assistant Attorney General

9

10                      GERALD A. ENGLER
                     Senior Assistant Attorney General

11                      JULIET B. HALEY
                     Deputy Attorney General

12                      /s/ Peggy S. Ruffra

13                      PEGGY S. RUFFRA
                     Supervising Deputy Attorney General

14

                     Attorneys for Respondent

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Answer to Order to Show Cause - C 07-5382 TEH

# EXHIBIT  A

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Brown v. Payton*
544 U.S. 133 (2005)                                                                 8

5

*Coleman v. Thompson*
6   501 U.S. 722 (1991)                                                             11

7   *Colorado v. Connelly*
479 U.S. 175 (1986)                                                                10

8

*Columbe v. Connecticut*
9   367 U.S. 568 (1961)                                                            10

10  *Darden v. Wainwright*
477 U.S. 168 (1986)                                                                 8

11

*Donnelly v. DeChristoforo*
12  416 U.S. 637 (1974)                                                              8

13  *Duckett v. Godinez*
67 F.3d 734 (9th Cir. 1995)                                                         6

14
*Evitts v. Lucey*
15  469 U.S. 387 (1985)                                                            11

16  *Garcia v. Bunnell*
33 F.3d 1193 (9th Cir. 1994)                                                        9

17
*In re Clark*
18  5 Cal.4th 750 (1993)                                                            2

19  *In re Miller*
17 Cal.3d 734 (1941)                                                                2

20
*Jones v. Barnes*
21  463 U.S. 745 (1983)                                                            11

22  *Kimmelman v. Morrison*
477 U.S. 365 (1986)                                                                10

23
*Lockyer v. Andrade*
24  538 U.S. 63 (2003)                                                              4

25  *Menendez v. Terhune*
422 F.3d 1012 (9th Cir. 2005)                                                    5, 8

26
*Ortiz-Sandoval v. Gomez*
27  81 F.3d 891 (9th Cir. 1996)                                                     8

28

**TABLE OF AUTHORITIES  (continued)**

Page

*Pennsylvania v. Finley*
481 U.S. 551 (1987)                                                          11

*Ross v. Moffitt*
417 U.S. 600 (1974)                                                         11

*Rupe v. Wood*
93 F.3d 1434 (9th Cir. 1996)                                                 6

*Schneckloth v. Bustamonte*
412 U.S. 218 (1973)                                                         10

*Smith v. Robbins*
528 U.S. 259 (2000)                                                         11

*Strickland v. Washington*
466 U.S. 668 (1984)                                                  4, 6, 9, 11

*Strickland. Bell v. Cone*
535 U.S. 685 (2002)                                                          4

*Tatum v. Dormire*
183 F.3d 875 (8th Cir. 1999)                                                 5

*Thompson v. Borg*
74 F.3d 1571  (9th Cir. 1996)                                                8

*United States v. Jackson*
84 F.3d 1154 (9th Cir. 1996)                                                 9

*United States v. Necoechea*
986 F.3d 1273 (9th Cir. 1993)                                                8

*United States v. Young*
470 U.S. 1 (1985)                                                            9

*Wilson v. Henry*
185 F.3d 986 (9th Cir. 1999)                                                10

*Woodford v. Visciotti*
537 U.S. 19 (2002) (per curiam)                                              4

*Yarborough v. Gentry*
540 U.S. 1 (2003) (per curiam)                                               4


**Constitutional Provisions**

United States Constitution
            Fourteenth Amendment                                            11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES  (continued)**

1

Page

2  **Statutes**

3  Antiterrorism and Effective Death Penalty Act of 1996                              3, 4

4  California Penal Code
5      § 243(d)                                                                          1
       § 245(a)(1)                                                                       1
6      § 1192.7(c)(8)                                                                    1
       § 1192.7(c)(23)                                                                   1

7  United States Code, Title 28
8      § 2254(d)(1)                                                                      4
       § 2254(e)(1)                                                                      5

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3  STATEMENT OF THE CASE                                                    1

4  STATEMENT OF FACTS                                                       2

5  STANDARD OF REVIEW                                                       3

6  ARGUMENT                                                                 4

7        NO CONSTITUTIONAL ERROR OCCURRED AT PRATER'S
         TRIAL                                                             4
8
              A.    Jury Instructions                                      5
9
              B.    Prosecutorial Misconduct                               6
10
              C.    Motion To Suppress Confession                          9
11
              D.    Appellate Counsel                                     11
12
    CONCLUSION                                                            12
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  EDMUND G. BROWN JR.,
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
6  State Bar No. 117315
   455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA 94102-3664
   Telephone: (415) 703-1362
8  Fax: (415) 703-1234
   Email: peggy.ruffra@doj.ca.gov
9  Attorneys for Respondent

10                 IN THE UNITED STATES DISTRICT COURT

11                FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13
   **CHRISTOPHER PRATER,**                    C 07-5382 TEH
14
                                Petitioner,   **MEMORANDUM OF POINTS**
15                                            **AND AUTHORITIES IN**
          v.                                  **SUPPORT OF ANSWER**
16
   **DERRAL ADAMS, Warden,**
17
                                Respondent.
18

19                        **STATEMENT OF THE CASE**

20         On December 6, 2004, a San Mateo County jury convicted petitioner of assault with a

21  deadly weapon (Cal. Penal Code § 245(a)(1)) and battery resulting in serious bodily injury (Cal.

22  Penal Code § 243(d)), along with great bodily injury and deadly weapon enhancements (Cal. Penal

23  Code §§ 1192.7(c)(8), (c)(23)). Exh. 1, Clerk's Transcript ("CT") 179-182. The trial court found

24  that petitioner had sustained a prior strike and a prior prison term. Exh. 2, Reporter's Transcript

25  ("RT") 504-505. On February 1, 2004, the court sentenced petitioner to nine years in prison. CT

26  200-201, 205-206.

27         Petitioner filed a notice of appeal. In the meantime, he filed several habeas corpus

28  petitions in San Mateo County Superior Court, which were denied because the direct appeal was

Mem. of Points and Authorities in Support of Answer - C 07-5382 TEH

1

1 | pending. Petition, Exhs. C, D.

2 |     On March 23, 2006, the California Court of Appeal affirmed the judgment of conviction

3 | on direct appeal. Exh. 6. On June 14, 2006, the California Supreme Court denied review. Exh. 8.

4 |     On July 10, 2006, petitioner filed a habeas corpus petition in the San Mateo County

5 | Superior Court. On August 23, 2006, the court denied relief on grounds that the petition was

6 | untimely, and alternatively because petitioner had not demonstrated ineffective assistance of counsel.

7 | Petition, Exh. D.

8 |     On September 1, 2006, petitioner filed a habeas corpus petition in the California Court of

9 | Appeal, which was denied on October 6, 2006. Exh. 9.

10 |     On October 25, 2006, petitioner filed a habeas corpus petition in the California Supreme

11 | Court, which was denied on April 25, 2007, citing *In re Clark*, 5 Cal.4th 750 (1993). Exh. 10.

12 |     On May 15, 2007, petitioner filed a habeas corpus petition in the California Supreme

13 | Court, which was denied on September 19, 2007, citing *In re Clark*, 5 Cal.4th 750, and *In re Miller*,

14 | 17 Cal.3d 734 (1941). Exh. 11.

15 |     On October 22, 2007, petitioner filed the instant petition in district court.[1]/

16 |

17 | **STATEMENT OF FACTS**

18 |     The California Court of Appeal summarized the facts of the offenses as follows.

19 |     On September 19, 2004, Prater was living in a room in a house in East Palo Alto. He rented the room from Karen Johnson, who owned and resided in the house.

20 |

21 |     Prater was acquainted with Daryl Thomas, a homeless crack cocaine addict. In early September 2004, Thomas had a disagreement with his girlfriend, with whom he lived, and moved out of her home. Prater told him he could stay in his room until the house was

22 | sold. Thomas began staying in Prater's room on September 17 or 18, 2004. He brought two suitcases full of his clothing and shoes. On the evening of September 18th, he spent

23 | the night alone in Prater's room.

24 |     Thomas left the room early in the morning of September 19th. He returned and crawled through Prater's window because he did not have a key. Johnson saw him entering by the

25 | window at approximately 9:40 a.m. She told Thomas to get his belongings and leave. Thomas and a male friend retrieved his two suitcases and left. Thomas did not steal

26 |

27 |

28 |    1. Petitioner did not name the warden at the state prison where he is incarcerated. We have named that individual, Derral Adams, as the respondent.

1   anything from Prater, "but if [Prater] said something was missing, more than likely [Thomas's friend] did."

2

3   At about 2:30 p.m. that day, Johnson told Prater that Thomas had been inside his room and had removed two suitcases. When Johnson saw Prater at approximately 6:00 p.m., Prater appeared "upset" and a "little" angry. Prater said he thought that Thomas had taken some

4   of his property. Johnson went out, and returned around 8:30 p.m. She saw Prater when she returned, who seemed agitated and said he had been looking for Thomas.

5

6   At approximately 11:45 p.m. that evening, Prater came to Johnson's door. He told her that Thomas had returned, and Prater asked her to call the police. Johnson called police dispatch. Within five to ten minutes of Prater coming to her door, Johnson heard a voice

7   and looked out her window. She saw Prater leaning over a man in the foliage and cursing at him. Johnson then saw the man, whom she assumed to be Thomas, run out of the yard

8   screaming loudly. Prater came back inside and asked Johnson if she had called the police. He was holding "two knives, one in each hand." Prater told her "I could have killed that

9   nigger, I could have stabbed him in the heart." Police arrived within five minutes. Johnson showed them where she kept her knives in the kitchen.

10

11   Because Johnson was in the process of selling her home, she entered Prater's room to clean during the weekend after the stabbing. She began folding clothing that was on the floor. In the clothing, she found a knife with a brown stain on it. To the best of Johnson's

12   knowledge, no one other than Prater had been in the room since September 19, 2004.

13   Dr. David Gregg, a trauma surgeon at Stanford Hospital, treated Thomas shortly after midnight on September 20, 2004. Thomas had a deep laceration "into the belly of the

14   muscle" in his right leg. He was "not completely alert," and had lost "probably half of his blood volume." Thomas's toxicology screen indicated exposure to marijuana,

15   amphetamines, and cocaine.

16   At approximately 3:00 a.m. on September 20th, San Mateo County Detective Frank Taylor interviewed Prater at the police station. Prater told him that Thomas arrived at his

17   residence, and he told Johnson to call the police. Prater went outside to see if Thomas was vandalizing his car. Prater stated that Thomas looked like he was "about ready to swing

18   at me," because of "the look on his face." Prater saw nothing in Thomas's hands, and Thomas had no weapons that he "knew of." Prater was not afraid of Thomas. He stabbed

19   Thomas when he was already on the ground. Prater was so angry he could have killed Thomas, and he told Thomas so. Prater stabbed Thomas because he "just wanted him out

20   of there."

21   At trial, Prater testified that he grabbed one knife, and went outside because he was afraid Thomas would damage his car. Once Thomas saw the knife, he became "even more

22   intimidating," and lunged and swung at Prater. Prater stabbed Thomas in the leg, and he fell into a tree. He did not stab Thomas while he was on the ground. Prater yelled at him

23   to leave, and Thomas got up and ran away screaming.

24   Exh. 6 at 2-4.

25

26                                 **STANDARD OF REVIEW**

27        This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

28   (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

1  "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537
2  U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal court has no authority to grant habeas
3  relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"
4  clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A decision constitutes an
5  unreasonable application of Supreme Court law only if the state court's application of law to the
6  facts is not merely erroneous, but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75
7  (2003). The petitioner bears the burden of showing that the state court's decision was unreasonable.
8  *Visciotti*, 537 U.S. at 25.

9

10                                          **ARGUMENT**

11                  **NO CONSTITUTIONAL ERROR OCCURRED AT PRATER'S TRIAL**

12          Petitioner contends that he received ineffective assistance of trial counsel for failing to
13  request instructions, failing to object to prosecutorial misconduct, and failing to move to suppress
14  his statement to police; that the prosecutor committed misconduct; and that he received ineffective
15  assistance of appellate counsel. As the claims are related, we address them together.[2]

16          In order to establish that counsel was ineffective, petitioner bears the burden of showing
17  that counsel's performance fell below an objective standard of reasonableness under prevailing
18  professional norms, and that there is a reasonable probability the result of the proceeding would have
19  been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 695-696 (1984). In considering
20  the first prong of the test, the reviewing court "must indulge a strong presumption that counsel's
21  conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. On federal
22  habeas review the question is whether the state court reasonably applied *Strickland*. *Bell v. Cone*,
23  535 U.S. 685, 698-699 (2002). Thus, federal habeas review of the denial of a claim of ineffective
24  assistance is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

25

26          2.   Petitioner's exact claims are somewhat unclear, because he states them summarily on
    the habeas corpus form and then attaches various documents. *See* Petition at 6. The Order to Show
27  Cause identifies the claims generally as ineffective assistance of trial counsel, prosecutorial
    misconduct, and ineffective assistance of appellate counsel. We have attempted as best we can to
28  discern what he intends to raise and to respond to those allegations.

1  ## A.  Jury Instructions

2  The California Court of Appeal considered this claim both in context of whether the trial

3  court had a sua sponte duty to give additional defense instructions and whether counsel was

4  ineffective for failing to request them.  The appellate court held:

5  Prater maintains that the instructions he now claims were required were "consistent with [his] theory of the case, namely self-defense, defense of habitation, and attempting to
6  apprehend a person who has committed a felony." Prater's sole theory of the case advanced at trial was that he committed the assault and battery in self-defense. The court
7  gave the jury six different instructions on self-defense: CALJIC numbers 5.30, 5.31, 5.40, 5.50, 5.51, and 5.55.  Those instructions were regarding self-defense against assault,
8  defense of property, and the right to eject a trespasser.

9  Prater now claims that the court had a duty to instruct the jury regarding justifiable homicide based on three different factual scenarios: self-defense, defense of another, and
10  the necessity to apprehend a dangerous person who has committed a felony. (CALJIC Nos. 5.13, 5.25, 5.10.) "It is error to give an instruction which, while correctly stating a
11  principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) Because justifiable homicide instructions had no application to the
12  facts of this case, Prater claims the court should have given a modified version of the instructions. Altering the justifiable homicide instructions to make them applicable to the
13  crimes charged here, while preserving a correct statement of the law, would result in the self-defense instructions given by the court.

14  Justifiable homicide instructions did not apply either to the evidence adduced at trial or
15  to Prater's defense theory at trial. Moreover, the court instructed the jury regarding self-defense against assault, defense of property, and the right to eject a trespasser. We find
16  no error in the trial court's failure to give the instructions Prater now claims were required.

17  Prater claims, in the alternative, his trial counsel was ineffective based on his failure to request the "modified" justifiable homicide instructions. "When a convicted defendant
18  complains of ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." (*Strickland*
19  *v. Washington* (1984) 466 U.S. 668, 687-688, 80 L. Ed. 2d 674.) The defendant must show that "'counsel had no rational tactical purpose for [his or her] omission.'" (*People*
20  *v. Lucas* (1995) 12 Cal.4th 415, 437, citing *People v. Zapien* (1993) 4 Cal.4th 929, 980.) Here, the instructions requested by counsel were consistent with the defense theory and
21  the facts demonstrated at trial.  Trial counsel's failure to request modified justifiable homicide instructions did not amount to ineffective assistance of counsel.

22

23  Exh. 6 at 5-6.

24  The state court's finding that there was insufficient evidence to warrant a defense

25  instruction is presumed correct under 28 U.S.C. § 2254(e)(1). *Menendez v. Terhune,*422 F.3d 1012,

26  1029 (9th Cir. 2005); *Tatum v. Dormire*, 183 F.3d 875, 879 (8th Cir. 1999). Accordingly, the state

27  court's determination on this state law issue "should be the final word on the subject." *Menendez*

28  at 1029. Here, the state court determined that modifying the justifiable homicide instructions would

1  amount to the same self-defense instructions that were given at petitioner's trial, and that those

2  instructions adequately addressed the defense advanced at trial.    Thus, the six self-defense

3  instructions that were given sufficiently informed the jury of petitioner's defense.  *See Duckett v.*

4  *Godinez*, 67 F.3d 734, 743-746 (9th Cir. 1995).  Counsel was not required to request additional

5  instructions that would have been denied as duplicative. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th

6  Cir. 1996) ("the failure to take a futile action can never be deficient performance"). The state court's

7  conclusion that counsel rendered effective assistance was a reasonable application of *Strickland*.

8  **B.    Prosecutorial Misconduct**

9        The California Court of Appeal rejected petitioner's related claims of prosecutorial

10  misconduct and ineffective assistance as follows:

11  Prater argues that the prosecutor committed misconduct in her closing argument. He
claims that she introduced facts not in evidence and impugned defense counsel's character.

12  Prater also asserts that, even if his claim was waived by his attorney's failure to object,
that failure amounted to ineffective assistance of counsel. In light of that claim, we will

13  address Prater's contentions on the merits to the extent necessary.

14  In general, a defendant may not complain on appeal of trial misconduct by a prosecutor
unless the defendant timely sought an assignment of misconduct and requested that the

15  jury be admonished to disregard the impropriety. *(People v. Young* (2005) 34 Cal.4th
1149, 1184-1185.) Prater has made no claim that any harm could not have been cured by

16  objection, and consequently has waived any objection.

17  Even had Prater preserved his claim, he must demonstrate that the prosecutor's remarks
during closing argument "'comprised a pattern of conduct "so egregious that it infected

18  the trial with such unfairness as to make the conviction a denial of due process."'"
*(People v. Gionis* (1995) 9 Cal.4th 1196, 1214.) Conduct by a prosecutor that does not

19  render a criminal trial fundamentally unfair is prosecutorial misconduct under state law
only if it involves "'the use of deceptive or reprehensible methods to attempt to persuade

20  either the court or the jury.'" *(People v. Gray* (2005) 37 Cal.4th 168, 216, citing *People
v. Hill* (1998) 17 Cal.4th 800, 819.) "When the claim focuses upon comments made by

21  the prosecutor before the jury, the question is whether there is a reasonable likelihood that
the jury construed or applied any of the complained-of remarks in an objectionable

22  fashion." *(People v. Morales* (2001) 25 Cal.4th 34, 44.)

23  Prater claims that a number of the prosecutor's comments constituted "testimony." The
range of the prosecution's argument "is properly very wide, and matters of common

24  knowledge and historical facts may be referred to and interwoven in such argument."
*(People v. Johnson* (1950) 99 Cal. App. 2d 717, 730.)  A prosecutor may properly

25  "interject her own view if it is based on facts of record." *(People v. Frye* (1998) 18
Cal.4th 894, 1018.)

26
Prater objects to the following statement made in the rebuttal portion of the prosecution's

27  closing argument: "But what I do know is that East Palo Alto is a dangerous place because
of people like the defendant who think it's perfectly fine to stab another human being and

28  then laugh about it later while describing it because that person stole from him." Contrary

to Prater's assertion, the prosecutor's comment was not "testimony" about the relative safety of East Palo Alto, but a permissible comment on the evidence that Prater's actions made East Palo Alto dangerous. Prater's own counsel raised the issue of the dangerousness of East Palo Alto in his opening statement to argue that Prater had a reasonable fear of Thomas in the situation. Moreover, Prater's counsel raised the issue of East Palo Alto's dangers in his closing argument, to which the prosecution was responding. Defense counsel stated: "[Prater] checks and looks outside and doesn't see anyone or any sign of the police. And he lives in East Palo Alto. We don't live in East Palo Alto, but he does. East Palo Alto is not the suburbs in San Carlos, it's not the suburbs in Foster City. None of us want to live in East Palo Alto, but unfortunately, my client does and so does Daryl Thomas."

Next, Prater objects to the following statements by the prosecutor in the rebuttal portion of closing argument: "Please do not be distracted by the let's-trash-the-victim-defense. I hear that in every case. Let's trash the victim. Let's distract you from what really happened and trash on Daryl [Thomas]. Yes, he's a thief. Yes, he smokes crack. Yes, he probably committed a burglary that day when he got immunity. That wasn't discussed, but he'd like to bring it up so that's fine. . . . So what? Prostitutes can be raped, and crackheads can be stabbed." Prater claims that these statements were "testimonial" and improperly cast aspersions on his "'constitutional right to defend himself and be represented by counsel.'" In the rebuttal portion of closing argument, the prosecutor is entitled to rebut defense counsel's arguments. The prosecutor's remark that "I hear [a trash the victim defense] in every case" was not improper testimony, but allowable hyperbole. Likewise, there is no reasonable likelihood that the jury construed the prosecutor's rebuttal of defense counsel's argument that the victim's testimony could not be trusted as somehow "casting aspersions" on Prater's right to counsel and a defense.

Prater also objects to the statement in the colloquy quoted above that "Yes, [Thomas] probably committed a burglary that day when he got immunity. That wasn't discussed, but [defense counsel] would like to bring it up so that's fine." He claims that this comment "intentionally placed before the jury 'facts' outside the record," and "impugned defense counsel's character and integrity." Again, the prosecutor made this argument in rebuttal, after defense counsel argued that Thomas had reason to testify falsely because he had received immunity from prosecution, and stated "what the prosecutor doesn't understand . . . is that Darryl Thomas committed a residential burglary that day." The prosecutor's comment did not impugn defense counsel's character, but simply explained why the prosecutor was discussing the issue in rebuttal. Assuming this fact was outside the record, it was defense counsel, not the prosecutor, who initially revealed it to the jury. Moreover, we fail to see any prejudice to Prater in the revelation that the victim may have committed a burglary on the day of the incident.

Prater also objects to the prosecutor's comments that he was "not just a sociopath and a barbarian, but also the most 'nonchalant, indifferent, nonremorseful' relater of facts surrounding a stabbing that she had ever seen." "Prosecuting attorneys are allowed a wide range of descriptive comment," including "colorful terms." (*People v. Williams* (1997) 16 Cal.4th 153, 221.) "A prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1251, 278 Cal. Rptr. 640.) Courts have considered numerous epithets used in closing arguments, including "animal," "parasite," and "perverted maniac," and found their use not to constitute misconduct. (See *People v. Pensinger, supra,* at p. 1251; *People v. Terry* (1962) 57 Cal.2d 538, 561, 21 Cal. Rptr. 185; *People v. Rodriguez* (1970) 10 Cal. App. 3d 18, 36-37, 88 Cal. Rptr. 789.)

The prosecutor's actual comment here was that "We are not barbarians, we have laws.

1   Defendant seems to be somewhat of a barbarian. He seems to be somewhat nonchalant about this stabbing quite frankly. . . . [¶] I don't know what a sociopath is, but he's
2   probably pretty close. I have never seen such a nonchalant, indifferent, nonremorseful describing of a stabbing . . . as I have in this case by the defendant." The prosecutor's
3   actual statements, much milder than claimed by Prater, were within the range of "colorful terms" properly used by the prosecutor in her rebuttal closing argument.

4

5   Prater's final claim of misconduct in closing argument is that the prosecutor "impugned defense counsel's character" by telling the jury, "in no uncertain terms, . . . that [Prater] changed his 'story' because of his conversations with his lawyer." The prosecutor's actual
6   words were "The defendant has certainly changed his story since he made that original statement to the police. He's had time to think about it, he's had to talk to a lawyer, he's
7   had time to make a plan of attack. And the law tells you, hey, red flag, there's probably a reason why his story has changed." There is no reasonable likelihood that the jury
8   understood these comments as impugning defense counsel. Instead, the prosecutor was making "a fair comment on the state of the evidence," suggesting that the most logical
9   interpretation of the evidence was that Prater had been telling the truth in his statement to police in the early morning after the incident, and not testifying truthfully at trial. (People
10  v. Mayfield (1993) 5 Cal.4th 142, 178.) We do not find that any of the prosecutor's statements in closing argument rose to the level of misconduct.

11

12  Exh. 6 at 6-10.

13          Habeas relief is warranted only if the prosecutor's comments in closing argument "so

14  infected the trial with unfairness as to make the resulting conviction a denial of due process."

15  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Because the standard of review on federal habeas

16  corpus is "the narrow one of due process, and not the broad exercise of supervisory power," even

17  improper argument does not necessarily violate a defendant's constitutional rights. *Thompson v.*

18  *Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996); *see Brown v. Payton*, 544 U.S. 133, 143-147 (2005). In

19  determining whether a due process violation occurred, "[t]he arguments of counsel are generally

20  accorded less weight by the jury than the court's instructions and must be judged in the context of

21  the entire argument and the instructions." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 898 (9th Cir.

22  1996); *see Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) ("A court should not lightly infer

23  that a prosecutor intended an ambiguous remark to have its most damaging meaning or that a jury,

24  sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging

25  interpretations."). "Prosecutors must have reasonable latitude to fashion closing argument, and thus

26  can argue reasonable inferences based on the evidence." *United States v. Necoechea*, 986 F.3d 1273,

27  1276 (9th Cir. 1993); *Menendez v. Terhune*, 422 F.3d at 1037. In addition, "[t]he prosecutor's

28  comments must be evaluated in light of the defense argument that preceded it." *Darden v.*

1  *Wainwright,* 477 U.S. at 179. Thus, an argument that is an "invited response" to defense counsel's
2  remarks does not prejudice the jury. *United States v. Young,* 470 U.S. 1, 11-13 (1985); *United States*
3  *v. Jackson,* 84 F.3d 1154, 1158 (9th Cir. 1996).

4  Here, the state court reasonably concluded that no misconduct resulted from the
5  prosecutor's comments about East Palo Alto, victim Thomas, and petitioner's attitude about the
6  stabbing. Those remarks were within the wide range of fair comment in argument, were in response
7  to defense counsel's introduction of those themes, and would not have been construed by the jury
8  as an attack on defense counsel or the right to present a defense. Counsel was not required to make
9  an objection to the prosecutor's comments, as they did not constitute misconduct and would not have
10  changed the outcome of the trial. *See Garcia v. Bunnell,* 33 F.3d 1193, 1199 (9th Cir. 1994) ("many
11  trial lawyers refrain from objecting during closing argument to all but the most egregious
12  misstatements by opposing counsel on the theory that the jury may construe their objections to be
13  a sign of desperation or hyper-technicality"). The state court's conclusion that counsel rendered
14  effective assistance was a reasonable application of *Strickland.*

15  **C.   Motion To Suppress Confession**

16  Petitioner contends counsel should have moved to suppress his statement to police because
17  he was taking prescription medication at the time. He asserts that his "instability due to the
18  medication placed him in an inadequate position." Petition, attached state petition at 3.

19  Petitioner exhausted this claim in his state habeas petitions. The San Mateo County
20  Superior Court provided the last reasoned decision on the issue in its Order of Denial filed on August
21  23, 2006. The superior court rejected the claim, stating:

22  Even assuming the petition is timely filed and is properly before this court, the Petitioner
   has failed to state a prima facie case for relief. An ineffective assistance of counsel claim
23  requires a showing not only that counsel's performance was deficient, but also that the
   defense was prejudiced, i.e. that the errors were so serious that the result of the trial is
24  unreliable. (Strickland v. Washington (1984) 466 U.S. 668, 687.)

25  Here, the Petitioner argues that his counsel ineffectively failed to move to suppress his
   confession on the grounds that his psychiatric medication rendered the confession
26  involuntary. But he has failed to cite any authority that would compel a court to grant a
   suppression motion on such grounds. On the contrary, the cases he cites stand for the
27  opposition proposition. (See e.g. Colorado v. Connelly (1986) 479 U.S. 157, 165-66 (a
   confession is involuntary under the Due Process clause only when it is coerced by state
28  action, not by a defendant's psychiatric problems).)

1
2
3

The Petitioner also argues that his counsel ineffectively failed to investigate the defense that he could not function effectively due to his medications. However, he has not stated any authority, nor is this court aware of any, that stands for the proposition that such an argument would be a valid legal defense to the offenses of which he was charged and convicted.

4
5

Thus, the Petitioner was not prejudiced by his counsel's performance and has failed to state a prima facie case for the ineffective assistance of counsel.

6 Petition, Exh. D.

7       The Supreme Court has held that a confession is voluntary if it is "the product of an

8 essentially free and unconstrained choice;" it is involuntary where the suspect's "will has been

9 overborne and his capacity for self-determination critically impaired." *Columbe v. Connecticut*, 367

10 U.S. 568, 602 (1961). To make this determination, the court must consider the totality of the

11 surrounding circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). To establish

12 ineffective assistance as a result of counsel's failure to file a motion to suppress, petitioner must

13 show that "(1) had his counsel filed the motion, it is reasonable that the trial court would have

14 granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have

15 been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999);

16 *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

17       The transcript of petitioner's interview with police reveals no psychological coercion

18 whatsoever by the detectives. Petition, Exh. A. The transcript also shows that petitioner was lucid

19 and responded appropriately to the detectives' questions. *Id.* In addition, petitioner told the

20 probation officer that his mental health was "getting better" as a result of his prescription

21 medications. Petition, Exh. B at 8. Thus, there appears to be no factual basis for the claim that

22 petitioner's medications impaired his mental capacity in any way.

23       Even if there were such a factual basis, as the superior court observed, a defendant's

24 psychiatric problems alone do not render a confession involuntary. In *Colorado v. Connelly*, 479

25 U.S. 175 (1986), the Supreme Court rejected a claim that the defendant's statement to police was

26 coerced as a result of his schizophrenic condition, which caused him to hear God's voice telling him

27 to confess. *Id.* at 161. The Supreme Court held, "Absent police conduct causally related to the

28 confession, there is simply no basis for concluding that any state actor has deprived a criminal

1  defendant of due process of law." *Id.* at 164. The Supreme Court concluded that "coercive police
2  activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning
3  of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167. The superior court reasonably
4  found that no state action caused petitioner's confession in this case. It follows that a motion to
5  suppress the statement as involuntary would not have succeeded. Nor would the exclusion of
6  petitioner's statement have resulted in a more favorable outcome, as petitioner testified at trial and
7  told essentially the same story he had provided to police. Therefore, the superior court's conclusion
8  that counsel rendered effective assistance was a reasonable application of *Strickland*.

9  ### D.  Appellate Counsel

10  Petitioner contends he received ineffective assistance because his appellate counsel failed
11  to argue that trial counsel was ineffective for failing to move to suppress the confession as
12  involuntary and for failing to investigate and present a mental defense.

13  The *Strickland* standard applies to claims of ineffective assistance of appellate counsel.
14  *Evitts v. Lucey*, 469 U.S. 387 (1985). "Experienced advocates since time beyond memory have
15  emphasized the importance of winnowing out weaker arguments on appeal and focusing on one
16  central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752
17  (1983). Thus, "it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure
18  to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith*
19  *v. Robbins*, 528 U.S. 259, 288 (2000).

20  Petitioner concedes that his appellate counsel on direct appeal was limited to raising only
21  claims that appeared on the record. Petition, attached state petition at 4. He also appears to
22  acknowledge that the claims he wanted appellate counsel to raise were outside the record, as they
23  involved evidence of his mental condition. *Id.* Petitioner's appellate counsel could not have raised
24  those claims on direct appeal. Accordingly, the state courts' denial of relief was not unreasonable.[3/]

25

26  3.  We note that petitioner has no right to counsel, and therefore no right to effective
assistance of counsel, for any state post-conviction proceedings other than the first direct appeal in
27  the appellate court. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see Pennsylvania v. Finley*,
481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Thus, to the extent petitioner's
28  claim may be construed as one that appellate counsel was ineffective for failing to raise these issues

1        **CONCLUSION**

2        Accordingly, respondent respectfully requests that the petition for writ of habeas corpus

3 be denied.

4

5        Dated: May 27, 2008

6                              Respectfully submitted,

7                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

8                              DANE R. GILLETTE
                               Chief Assistant Attorney General
9
                               GERALD A. ENGLER
10                             Senior Assistant Attorney General

11                             JULIET B. HALEY
                               Deputy Attorney General

12
                               /s/ Peggy S. Ruffra
13
                               PEGGY S. RUFFRA
14                             Supervising Deputy Attorney General

15                             Attorneys for Respondent

16

17

18

19

20

21

22

23

24

25

26

27

28 in a state habeas petition, the claim is not cognizable.

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Prater v. Adams*

No.:   **C 07-05382 TEH (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004.

On May 27, 2008, I served the attached **(1) ANSWER TO ORDER TO SHOW CAUSE; (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER; (3) NOTICE OF LODGING OF, AND INDEX TO, EXHIBITS** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

**Christopher Prater**
**V-67110**
**California State Prison-Corcoran**
**P.O. Box 3481**
**Corcoran, CA 93212**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 27, 2008, at San Francisco, California.

|  |  |
|---|---|
| Susan Chiang | |
| Declarant | Signature |

40257965.wpd

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    *Prater v. Adams*

No.:    **C 07-05382 TEH (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004.

On May 27, 2008, I served the attached (1) **ANSWER TO ORDER TO SHOW CAUSE; (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER; (3) NOTICE OF LODGING OF, AND INDEX TO, EXHIBITS** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

**Christopher Prater**
**V-67110**
**California State Prison-Corcoran**
**P.O. Box 3481**
**Corcoran, CA 93212**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 27, 2008, at San Francisco, California.

|  |  |
| --- | --- |
| Susan Chiang | |
| Declarant | Signature |

40257965.wpd

1  2  0

**FILED**
SAN MATEO COUNTY

DEC 2 - 2004

Clerk of the Superior Court
By _____
DEPUTY CLERK

1   JAMES P. FOX, DISTRICT ATTORNEY
    County of San Mateo, State of California
2   State Bar No. 45169
    400 County Center, 3rd Floor
3   Redwood City, California 94063
    By: Carla L. Claeys, Deputy
4   Telephone: (650) 363-4636
    Attorney for Plaintiff
5

6

7

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               IN AND FOR THE COUNTY OF SAN MATEO

10  THE PEOPLE OF THE STATE OF CALIFORNIA,

                                                    No. SC57263
11                                      Plaintiff,
                                                    PROPOSED JURY INSTRUCTIONS
12  v.

13  CHRISTOPHER KYLE PRATER,

14                                      Defendant.

15

16  | 1.00 | 2.13 | 2.72 |

17  | 1.01 | 2.20 | 2.90 |

18  | 1.02 | 2.21.1 | 3.30 |

19  | 1.03 | 2.22 | 9.00 |

20  | 1.05 | 2.23 | 9.01 |

21  | 1.20 | 2.27 | 9.02 |

22  | 2.00 | 2.60 | 9.12 |

23  | 2.01 | 2.61 | 17.12 |

24  | 2.03 | 2.62 | 17.16 |

25. | 2.11 | 2.70 | 17.20 |

SC057263 - PRATER - Jury Instructions

1   17.31               17.42                     17.50

2   17.40               17.43

3   17.41               17.45

4       Dated: December ___, 2004

5                            Respectfully submitted,

6                            JAMES P. FOX, DISTRICT ATTORNEY

7                            By _____

                                Carla L. Claeys, Deputy

8

9   CLC/as

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT - B

## TABLE OF AUTHORITIES

| Cases | Page |
|---|---|
| Berger v. United States (1935) 295 U.S. 78 | 21 |
| Chapman v. California (1967) 386 U.S. 18 | 17, 22, 32 |
| Donnelly v. DeChristoforo (1974) 416 U.S. 637 | 21 |
| Gilmore v. Superior Court (1991) 230 Cal. App. 3d 416 | 11 |
| In re Marquez (1992) 1Cal. 4th 584 | 18 |
| In re Neely (1993) 6 Cal. 4th 901 | 19 |
| In re Sixto (1989) 48 Cal. 3d 1247 | 19 |
| Mathews v. United States (1988) 485 U.S. 58 | 17 |
| McKinney v. Rees (9th Cir. 1993) 993 F. 2d 1378 | 37 |
| Nakashima v. Takase (1935) 8 Cal. App. 2d 35 | 12 |
| People v. Alvarez (1996) 14 Cal. 4th 155 | 32 |
| People v. Anderson (1994) 26 Cal. App. 4th 1241 | 25 |
| People v. Bain (1971) 5 Cal. 3d 839 | 30 |
| People v. Bandhauer (1967) 66 Cal. 2d 524 | 26 |
| People v. Bolton (1979) 23 Cal. 3d 208 | 26 |
| People v. Ceballos (1974) 12 Cal. 3d 470 | 10, 11, 12 |
| People v. Day (1992) 2 Cal. App. 4th 405 | 19 |
| People v. Elize (1999) 71 Cal. App. 4th 605 | 17 |
| People v. Espinoza (1992) 3 Cal. 4th 806 | 22 |
| People v. Farley (1979) 90 Cal. App. 3d 851 | 20 |

| Cases | Page |
|---|---|
| People v Frierson (1979) 25 Cal. 3d 142 | 19 |
| People v. Glenn (1991) 229 Cal. App. 3d 1461 | 14 |
| People v. Gonzalez (1991) 51 Cal. 3d 1179 | 18 |
| People v. Gurule (2002) 28 Cal. 4th 557 | 25 |
| People v. Herring (1993) 20 Cal. App. 4th 1066 | 27, 31 |
| People v. Hill (1998) 17 Cal. 4th 800 | 21, 22, 30, 39 |
| People v. Jones (1961) 191 Cal. App. 2d 478 | 10 |
| People v. Ledesma (1987) 43 Cal. 3d 1171 | 18, 19 |
| People v. Marchaud (2002) 98 Cal. App. 4th 1056 | 25 |
| People v. Martin (1985) 148 Cal. App. 3d 1111 | 11, 16 |
| People v. Middleton (1997) 52 Cal. App. 4th 19 | 20 |
| People v. Mitcham (1992) 1 Cal. 4th 1027 | 25 |
| People v. Morales (2001) 25 Cal. 4th 34 | 21 |
| People v. Piorkowski (1974) 41 Cal. App. 3d 324 | 12 |
| People v. Pope (1979) 23 Cal. 3d 412 | 19 |
| People v. Sedeno (1974) 10 Cal. 3d 703 | 14 |
| People v. Spry (1997) 58 Cal. App. 4th 1345 | 17 |
| People v. Superior Court (Romero) (1996) 13 Cal. 4th 497 | 2 |
| People v. Turner (1983) 145 Cal. App. 3d 658 | 27 |
| People v. Walker (1973) 32 Cal. App. 3d 897 | 12, 16 |
| People v. Watson (1956) 46 Cal. 3d 818 | 18, 22, 32 |

| Cases | Page |
|---|---|
| People v. Williams (1998) 17 Cal. 4th 148 | 25 |
| Strickland v. Washington (1984) 466 U.S. 668 | 19 |
| United States v. Gaudin (1995) 515 U.S. 506 | 18 |

**Statutes**

Penal Code section
| | |
|---|---|
| 197 | 9 |
| 197, subdivision 1 | 8 |
| 197, subdivision 2 | 8 |
| 197, subdivision 4 | 8 |
| 243, subdivision (d) | 1 |
| 245, subdivision (a) (1) | 1 |
| 654 | 2 |
| 667.5, subdivision (b) | 2 |
| 1093, subdivision (f) | 14 |
| 1170.12, subdivision (c) (1) | 2 |
| 1237, subdivision (a) | 1 |

**Additional Authorities**

United States Constitution
| | |
|---|---|
| Sixth Amendment | 18 |
| Fourteenth Amendment | 18 |

California Constitution
| | |
|---|---|
| Article I, section 15 | 18 |

CALJIC
| | |
|---|---|
| 5.10 | 8, 9 14, 16 |
| 5.13 | 8, 14 |
| 5.16 | 9, 14 |
| 5.25 | 8, 9, 14 |
| 5.30 | 8, 15 |
| 5.31 | 8, 15 |
| 5.40 | 8, 15 |
| 5.50 | 8 |
| 5.51 | 8 |
| 5.55 | 8 |

## STATEMENT OF THE FACTS

Daryl Thomas, the prosecution's most important witness, was a homeless drug abuser who had no legitimate source of income. (RT 103, 104, 115, 140, 147.) Early in September, 2004, he shared an apartment with his girlfriend and his two children. But Thomas got into an argument with his girlfriend, the police were called, and Thomas moved out. (RT 103, 104.) He took his belongings, packed into two suitcases. One suitcase contained his shoes and the other contained his clothes. (RT 103.)

Thomas took his two suitcases and went to Red Bone's (Rosemary's) house in East Palo Alto. (RT 103, 334.) There he got into an argument with Red Bone. Red Bone asked appellant to get Thomas out of the house. (RT 335.) Appellant took Thomas to the room he was renting and allowed Thomas to stay that night. (RT 104, 105, 335, 336.)

The next morning, appellant took Thomas to see Thomas's girlfriend. Thomas left his suitcases in appellant's room. Appellant did not give Thomas a key to the house or to his room. Appellant told Thomas that he could only get the suitcases when appellant was present. Appellant and Thomas exchanged telephone numbers so that Thomas could contact appellant when he wanted to retrieve the suitcases. (RT 105, 109, 336-337.)

Once at the girlfriend's house, an argument between Thomas and the woman ensued. (RT 337.) Thomas called appellant to come and pick him up.

3

Appellant picked Thomas up and took him back to his house. Thomas left appellant's house early that Sunday morning. (RT 337.)

Later that morning, Thomas entered appellant's room by crawling through a window and retrieved his goods. Thomas was there with another person. Though Thomas claimed that he did not steal anything from appellant's room, the other person he was with "more than likely" did. (RT 109-110, 154-156, 223-225, 338-339.) Thomas and his friend left appellant's house with three suitcases. (RT 226.)

Appellant came back to his house at about eleven in the morning on that Sunday. There he met his landlord of the board and care home in which he rented a room, Karen Johnson. She told appellant that Thomas and another person had come to the house, and that Thomas had crawled into appellant's room through the window. Johnson further told appellant that Thomas had indicated that appellant had given Thomas permission to get his belongings that had been left in the room. Appellant told Johnson that this was not true, that he had only given Thomas permission to be at the house when appellant was present. (RT 228.) According to appellant, Thomas and his friend had taken a number of items from his room, CDs, DVDs, and a scanner in a suitcase. (RT 231, 338-339.)

Appellant and Thomas then traded cell phone messages. Appellant told Thomas that things were missing from his room. (RT 112.) Appellant also told Thomas not to come back to his house. (RT 340.)

4

Sometime that day, after crawling into appellant's house, Thomas placed the suitcases in the back of his mother's house. (RT 157.) He then smoked cocaine. (RT 158.)

Later that night Thomas met a woman named Ebony. Thomas and Ebony were driving around in Ebony's car. Thomas had been smoking crack cocaine periodically throughout the day. (RT 115.) Thomas and Ebony got into an argument. Thomas had "lost" something in Ebony's car and, according to Thomas, Ebony would not let him look for the item. Thomas told Ebony to pull the car over and she did. Ebony called the police. According to Thomas, Ebony told the police that he was trying to steal her car. (RT 116.) Thomas told the 911 dispatcher "I took the car, yes I took your car." (CT 113.) Thomas had her keys but then threw the keys back into the car. (RT 116.) The police came and sent them each away separately. (RT 117.)

Close to midnight on September 19, Thomas returned to appellant's house. He walked straight to appellant's room, knocking on the door and window. (RT 123, 235.) According to Thomas he asked appellant to come outside, telling appellant that it was "Daryl, man, it's me." (RT 124.) According to appellant, somebody was outside "messing with my door," "messing with my window," and "was trying to break in" to his room. (RT 342.) Appellant told Rodney Green (RT 305) that Thomas was outside of his door. He told Rodney not to answer or open the door, "even if [Thomas] tries to break, breaks windows." (CT, Supp., 6.) Appellant heard Thomas's voice and went to Karen's room and knocked on her

$*$ $\lceil 5 \rfloor$

door. Appellant told Karen that the "guy that broke into my room is at my door." According to Karen, appellant's knocking was hard and his voice had urgency to it. He told her to call the police because Daryl was back. (RT 236.)

Appellant armed himself and went outside. (RT 127, 344.) He was fearful of what Thomas might do. (RT 344.) Karen called the police. (RT 236.) According to Thomas he did not attack appellant. Thomas sat down on the ground. Appellant approached him and stabbed Thomas in the leg. (RT 129-131.) Thomas then got up and ran to a nearby Chevron gas station. (RT 138.)

Karen, who viewed a portion of the incident from inside the house, saw two people outside. (RT 238.) She heard appellant tell Thomas to get off the property. She did not see appellant make any motion with either of his arms that was consistent with a stabbing motion. (RT 242, 268.) Karen heard Thomas scream and run out of the yard. She assumed that Thomas had screamed "out of fear or maybe because of what Chris had said to him." (RT 243.) She did not see appellant strike Thomas.

According to Karen, appellant reentered the house holding two knives, one in each hand. As appellant walked toward the kitchen with the knives he said, "I could have killed that nigger, I could have stabbed him in the heart." (RT 246.) Appellant then went toward his room. She did not see any blood on either knife and did not know what, if anything, appellant had done with the knives. (RT 247.)

Appellant armed himself and went outside because he was afraid of what Thomas might do. (RT 344.) Appellant knew that Thomas was the kind of person

to have a weapon and fight with people. (CT, Supp., 24.) Appellant and Thomas met outside and became engaged in a heated conversation. Appellant told Thomas to leave the property. At that moment, Thomas rushed appellant and swung at him. (RT 346.) Appellant was fearful of what Thomas would do to him because Thomas had previously burglarized his house, was told not to return, then returned to appellant's house near midnight, knocking on the windows and doors. (RT 355.) Thomas looked to appellant like he was crazy and had lost his senses. (RT 356.) It was dark and Thomas lunged at appellant, swinging at him. Appellant ducked. (RT 357, 364.) That is when Thomas got stuck with the knife. (RT 347, 357.)

Appellant told the prosecutor that he did not mean to stab Thomas, and that it was not intentional. "I did not intentionally stab this gentleman. He swung at me. And when he swung at me, I just ducked and stabbed him in the leg. That's all." (RT 389.)

Appellant waited for the police to arrive at his house. He met the police and told them what had happened. (RT 351.) Appellant told the police moments after the incident that Thomas had attacked him. (RT 392, 400.)

[7] *

I.

**THE TRIAL COURT FAILED TO INSTRUCT SUA SPONTE ON THE DEFENSE OF PREVENTION OF A FELONY, DEFENSE OF HABITATION, AND APPREHENSION OF A FELON. THE ERROR IN FAILING TO INSTRUCT WAS PREJUDICIAL.**

The trial court instructed the jury with the following defenses; CALJIC 5.30 [Self-Defense Against Assault], 5.31 [Assault with Fists - - When Use of Deadly Weapon Not Justified], 5.40 [Defense of Property - - Ejection of Trespasser], 5.50 [Self-Defense - - Assailed Person Need Not Retreat], 5.51 [Self-Defense - - Actual Danger Not Necessary], and 5.55 [Plea of Self-Defense May Not Be Contrived].  (RT 470-474; CT 156-161.)

The court, though, did not instruct the jury that the use of deadly force is permissible when resisting any attempt to commit a felony, when committed in defense of habitation against one who commits a felony, or when attempting to apprehend any person who has committed a felony.  (§ 197, subds. 1, 2, & 4.) Appellant maintains that the court should have instructed the jury based upon the principles contained within the provisions of section 197, and supplying the jury with modified versions of CALJIC 5.10 [Resisting Attempt To Commit Felony], CALJIC 5.13 [Justifiable Homicide - - Lawful Defense of Self or Another], and 5.25 [Lawful Arrest or Keeping The Peace], together with the definition of "forcible and atrocious crime" and nighttime residential burglary.  The court's failure to submit the proper instructions to the jury prejudiced appellant.

**A.    The Error.**

Section 197 provides that homicide, and therefore deadly force, is "justifiable when committed by any person in any of the following cases:

1.    When resisting any attempt to . . . commit a felony, or to do some great bodily injury upon a person; or,

2.    When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or, . .

4.    When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace."

CALJIC 5.10 states that the use of deadly force "is justifiable and not unlawful when committed by any person who is resisting an attempt to commit a forcible and atrocious crime." CALJIC 5.16 defines a forcible and atrocious crime as any felony "that by its nature and the manner of its commission threatens, or is reasonably believed by the defendant to threaten life or great bodily injury so as to instill in him a reasonable fear of death or great bodily injury." CALJIC 5.25 provides that the use of deadly force "is justifiable and not unlawful when

9

necessarily committed in attempting by lawful ways and means: [To apprehend any dangerous person who has committed a felony. A dangerous person is one who . . . (b) has committed a forcible and atrocious felony.]"

The word "felony" as it appears in the above subdivisions of section 197 has been qualified by construction. In *People v. Ceballos* (1974) 12 Cal. 3d 470, where the court was concerned with the defense of an empty home against a daytime burglary by means of a lethal trap gun, the court observed that the broad range of modern felonies renders "a literal reading of the section undesirable." (*Id.*, at p. 478.) The court held the statute should be construed in light of the common law doctrine it was intended to codify when enacted in 1872. (*Id.*, at p. 479.) *Ceballos* relied, at least in part, on an earlier case, *People v. Jones* (1961) 191 Cal. App. 2d 478, which considered section 197's application to the "modern" felony of spousal abuse. (*Id.*, at p. 481. "In creating the statutory felony of wife-beating the purpose of the legislature was not to issue a license for a wife to kill her husband but to provide a means of dealing with a particular family situation. The punishment provided by a statute is not necessarily an adequate test as to whether life may be taken for in some situations it is too artificial and unrealistic. We must look further into the character of the crime, and the manner of perpetration." *Id.*, at p. 482.) Therefore, both *Ceballos* and *Jones* held that the statutory term "felony" must be limited to the common law notion of an "atrocious crime attempted to be committed by force," a category that includes murder, rape, robbery, and burglary. (*People v. Ceballos*, *supra*, 12 Cal. 3d at p. 478-479.)

Additionally, the *Ceballos* court held that not all buglaries falling within the current section 459 should qualify as an atrocious crime, but only those whose "character and manner . . . reasonably create a fear of great bodily harm," if it "threatened, or was reasonably believed to threaten, death or serious bodily injury." (*Id.*, at p. 479.)

Applying this standard *Ceballos* concluded that the trap gun shooting under the facts before it could not come within section 197, subdivision 1. As the court explained, the burglary did not threaten death or serious bodily harm because no one was on the premises except the burglars themselves. (*Id.*)

The *Ceballos* court's construction of the term "felony" in section 197 has subsequently been applied in cases arising under the justification for apprehension of a felon provided by subdivision 4 of that section. In *People v. Martin* (1985) 148 Cal. App. 3d 1111 the defendant shot and killed a youth who had committed a nighttime burglary on his son's unoccupied home and had refused defendant's command to halt. The court held that the killing was justified, explaining that this was a lawful attempt to "apprehend the victim while fleeing from the scene of his nighttime residential burglary. We specifically limit our holding to felons fleeing after commission of a crime which was a crime at common law." (*Id.*, at p. 1125.) In *Gilmore v. Superior Court* (1991) 230 Cal. App. 3d 416, a civil case, a frightened homeowner's act of killing a fleeing perpetrator of an attempted nighttime residential burglary was held to be a section 197, subdivision 4 justification and, thus, civilly privileged. (*Id.*, at p. 422.) In *Nakashima v. Takase*

11

(1935) 8 Cal. App. 2d 35, a civil case, the defendant, a restaurant proprietor, suspecting a burglary, hid in a passageway and, when two men broke in and entered, shot one without any warning, killing the man. The defendant there was not liable for wrongful death as the act of shooting and killing the burglar was a justifiable homicide under section 197. (*Id.*, at p. 38.) In *People v. Walker* (1973) 32 Cal. App. 3d 897, a pre-*Ceballos* case, the court found that the defendant's act of shooting when a burglar refused to halt when fleeing a nighttime residential burglary fell within the justification found in section 197, subdivision 4. (*Id.*, at p. 902.)

On the other hand, in *People v. Piorkowski* (1974) 41 Cal. App. 3d 324, another pre-*Ceballos* case, there was no justification under subdivision 4 for killing a minor fleeing from a "commercial burglary;" taking a wallet from a dry cleaning business during the daytime. As the court explained, there was "not the attendant risk to human life which accompanies common law burglary." (*Id.*, at pp. 329-330.)

The facts presented in the instant case satisfy the requirements found in *Ceballos*. Burglary, according to *Ceballos*, has been included in the group of crimes where "from their atrocity and violence human life (or personal safety from great harm) either is, or is presumed to be, in peril." (*People v. Ceballos, supra*, 12 Cal. 3d at p. 478.) The character and manner of Thomas's actions certainly reasonably created a fear of great bodily harm in appellant. Thomas had, earlier that very day, committed a residential burglary of appellant's home. (RT 455.)

12

He was told not to return. Yet he returned to appellant's home near midnight "messing" with appellant's door, "messing" with the window, and was "trying to break in" to appellant's home. Appellant heard Thomas's voice outside. He immediately went to the landlord, telling her that "the guy that broke into my room is at my door." Appellant's knocks on the landlord's door were hard and he had urgency in his voice. He told her to call the police. (RT 236.) Appellant then armed himself and went outside. He armed himself because he knew that Thomas was the kind of person to have a weapon and fight with people. (CT, Supp., 24.) Appellant and Thomas met outside and became engaged in a heated exchange. Appellant told Thomas to leave the property. Thomas rushed appellant and swung at him.

To any reasonable person, Thomas's conduct amounted to an attempt to commit a forcible and atrocious felony in a manner reasonably threatening great bodily injury. The use of deadly force, therefore, is justified when resisting any attempt to commit a felony, when committed in defense of habitation, and when attempting to apprehend any person who has committed a felony. Therefore, there was abundant evidence presented to the jury to support instructions on the justification of preventing a felony, defense of habitation, and apprehension of any person who has committed a felony.

13

**B.    The Trial Court Has A Sua Sponte Duty To Instruct On General Principles Closely And Openly Associated With The Facts.**

An individual charged with a criminal offense has a constitutional right to have a jury determine every material issue presented by the evidence. (§ 1093, subd. (f).)  Even in the absence of a request, a trial court must instruct on the general principles of law relevant to the issues raised by the evidence; that is, those principles that are closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. (*People v. Sedeno* (1974) 10 Cal. 3d 703, 715.)  The trial court must therefore instruct on every theory of the case that is supported by substantial evidence. (*People v. Glenn* (1991) 229 Cal. App. 3d 1461, 1465.)

Moreover, the court has a sua sponte duty to instruct on particular defenses when "it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*People v. Sedeno, supra,* 10 Cal. 3d at p. 716.)  The theories embodied in section 197 surely meet the test of a "general principle of law," and appear among the standard patterned jury instructions. (See, e.g., CALJIC 5.10, 5.13, 5.16, 5.25.)  In this case, there was substantial evidence to support the giving of such principles and was consistent with the defendant's theory of the case, namely self-defense, defense of habitation, and attempting to apprehend a person who has committed a felony.

14

**C.    Prejudice.**

Determining the prejudicial effect of the absence of correct instructions on justification requires a determination of what the given instructions required and how those instructions differed from those the court should have given.

Appellant submits that the correct instructions that should have been supplied to the jury would not have contained the requirement that bodily injury about to be inflicted upon appellant be imminent. (CALJIC 5.30.)  Nor would appellant be limited, in defense of habitation, "by what would appear to a reasonable person, under the existing circumstances, to be necessary to prevent physical injury or death to the occupant." (CALJIC 5.40)  Also, appellant would not be restricted in the force he could use when assaulted with fists.  (CALJIC 5.31.)

No such requirements are appropriate to the defense of resisting any attempt to commit a felony, in defense of habitation, or when attempting to apprehend a person who has committed a felony.

As regards self-defense, the instructions delivered in the instant case, include the requirement that the bodily injury be imminent or "about to be inflicted upon him." Imminence does not apply to section 197, subdivisions 1 and 4. Burglary may be a forcible and atrocious crime, depending on the character and manner of the commission.  The entry or attempted entry in the nighttime of a residence reasonably creates a fear of death or serious bodily injury.  Where burglary meets the common law definition, a person is presumed to fear that

15

serious bodily injury is about to be inflicted upon him or her. (CALJIC 5.10.) *People v. Martin, supra*, 148 Cal. App. 3d 1111, applied the defense of apprehension of a felon without regard to the imminence of the danger, or the defendant's motivation. There, the defendant was held to be justified as matter of law in shooting a youth fleeing from a nighttime burglary, without the court imposing any requirement that he felt any danger or acted out of fear.   The defendant shot the boy when the boy was running away and he was "separated from the victim by a fence some sixty feet away." (*Id.*, at p. 1120; *People v. Walker, supra*, 32 Cal. App. 3d at p. 902 [defendant justified under subdivision 4 in shooting escaping burglar at distance of 120 feet, as the burglar was running away].)

Appellant submits that if the court had correctly instructed the jury on the following defenses; defense of prevention of a felony, defense of habitation, and apprehension of a felon, the jury would have acquitted appellant.   The jury would have found if properly instructed, that Thomas was attempting to commit a "forcible and atrocious crime." That finding would have relieved appellant of the requirement that he believe that the danger Thomas presented was imminent. Additionally, that jury finding would have allowed appellant to use a deadly weapon, even against fists, because being the victim of a forcible and atrocious crime instills within an individual a reasonable fear that he or she will suffer great bodily injury or death.   Moreover, appellant could only use any force that would

[16]✷

appear to be reasonable under the circumstances, that necessary to prevent physical injury or death.

Under the Sixth and Fourteenth Amendments to the United States constitution the error in this case should be determined under the *Chapman v. California* (1967) 386 U.S. 18 standard. The Supreme Court has held that "[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence for a reasonable jury to find in his favor." (*Mathews v. United States* (1988) 485 U.S. 58, 63.) He is entitled to such instructions regardless of the defendant's testimony, as long as there is substantial evidence to support the instruction. (See, e.g., *People v. Elize* (1999) 71 Cal. App. 4th 605, 612-613.)

A failure to provide the jury with instructions on the defense theory of the case infringes upon appellant's constitutional rights because it stops the jury from considering defendant's defense to the charges against him and from making findings of fact necessary to establish guilt. An instructional error that distorts or eliminates the burden of proof applicable to a defense is subject to federal constitutional error analysis. (See, e.g., *People v. Spry* (1997) 58 Cal. App. 4th 1345, 1371-1372.)

A distortion or omission of instructions on a recognized defense has the same effect on the jury as an omission of an element that defines the offense. When the facts support an affirmative defense, the prosecution has the same beyond a reasonable doubt burden of disproving the defense as he or she does in

17

proving the elements of the offense. (*People v. Gonzalez* (1991) 51 Cal. 3d 1179, 1214-1215.) Instructions that either omit or misdescribe an element of the offense are federal constitutional error and therefore subject to the harmless error analysis. (*United States v. Gaudin* (1995) 515 U.S. 506, 509-511.) Instructions that either omit or misdescribe a defense must be analyzed under the same standard.

Even under the lesser *People v. Watson* (1956) 46 Cal. 2d 818, 836 the error in failing to instruct on justification was nevertheless prejudicial. Examining the entire record of the case leaves one with the distinct impression that it is reasonably possible that appellant would have obtained a more favorable outcome had the jury been properly instructed.

## II.

**COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST APPROPRIATE INSTRUCTIONS RELATED TO THE DEFENSE. APPELLANT SUFFERED PREJUDICE.**

A criminal defendant is guaranteed the right to the assistance of counsel by both the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 15, of the California Constitution. "Construed in light of its purpose, the right entitled the defendant not to some bare assistance but rather to *effective* assistance." (*People v. Ledesma* (1987) 43 Cal. 3d 171, 217. Emphasis in original.) "This means that before counsel undertakes to act, or not to act, counsel must make a rational and informed decision on strategy and tactics founded upon adequate investigation and preparation." (*In re Marquez* (1992) 1 Cal. 4th 584, 602.) "Counsel's first duty is to investigate the facts of his client's

case and to research the law applicable to those facts." (*People v. Ledesma, supra*, 43 Cal. 3d at p. 222. See also *People v. Frierson* (1979) 25 Cal. 3d 142, 163, 164; *People v. Day* (1992) 2 Cal. App. 4th 405, 419, 420.) Moreover, counsel must confer with the client as often as necessary to elicit information that is helpful to the defense and move for the appointment of ancillary defense services where appropriate. (*People v. Pope* (1979) 23 Cal. 3d 412, 425.) Counsel must also seek to suppress evidence or testimony that may incriminate his client. (*In re Neely* (1993) 6 Cal. 4th 901, 919.)

To establish ineffective assistance of counsel, petitioner must show that counsel's representation was deficient and that it fell below an objective standard of reasonableness under prevailing norms, and that the deficient performance prejudiced the defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) Stated another way, a defendant is denied the effective assistance of counsel if, by reason of counsel's failure to engage in adequate pretrial preparation and/or fails to seek suppression of incriminating evidence, defendant is deprived of a crucial or potentially meritorious defense. (*People v. Pope, supra.*) Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*In re Sixto* (1989) 48 Cal. 3d 1247, 1257.) Therefore, it is not required that the defendant establish that the adjudication would necessarily be in his or her favor. A crucial or potentially meritorious defense is not necessarily one that, if

19