1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    CHRISTOPHER PRATER,              )
                                       )
12              Petitioner,            )    No. C 07-5382 TEH (PR)
                                       )
13         v.                          )    ORDER DENYING PETITION
                                       )    FOR WRIT OF HABEAS
14    DERRAL ADAMS, Warden,            )    CORPUS
                                       )
15              Respondent.            )
      _____)
16

17

18              Pro se Petitioner Christopher Prater seeks a writ of

19    habeas corpus under 28 U.S.C. § 2254, which, for reasons that

20    follow, the Court denies.

21

22                                    I

23              On December 6, 2004, Petitioner was convicted by a San

24    Mateo County jury of assault with a deadly weapon and battery

25    resulting in serious bodily injury, with attached great bodily

26    injury and deadly weapon enhancements.  Doc. #11-2, Ex. 1, Vol. 1

27    at 178-82.  On February 1, 2005, the court sentenced Petitioner

28

to nine years in state prison.  Doc. #11-2, Ex. 1, Vol. 1 at 200-01, 205-06.

Petitioner appealed, but the California Court of Appeal affirmed the judgment and the Supreme Court of California denied review.  Doc. #11-2, Ex. 6; Doc. #11-2, Ex. 8.

On July 10, 2006, Petitioner filed a habeas corpus petition in San Mateo Superior Court, which the court denied on August 23, 2006.  Doc. #1, Ex. D (2nd)[1].

On September 1, 2006, Petitioner filed a habeas corpus petition in the California Court of Appeal, which the court denied on October 6, 2006.  Doc. #11-2, Ex. 9.

On May 15, 2007, Petitioner filed a habeas corpus petition in the California Supreme Court, which the court denied on September 19, 2007.  Doc. #11-2, Ex. 11.

Petitioner then filed the instant federal Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Doc. #1.  Per order filed on March 27, 2008, the Court found that the Petition, liberally construed, stated cognizable claims under § 2254 and ordered Respondent to show cause why a writ of habeas corpus should not be granted.  Doc. #8.  Respondent filed an Answer to the Order to Show Cause, Doc. #11; Petitioner failed to file a Traverse.

//

//

---

[1] Petitioner used duplicate exhibit letters in his Petition.  For clarity, this Order will refer to them in the sequence in which they appear in the Petition.

**2**

**United States District Court**
For the Northern District of California

## II

The California Court of Appeal summarized the facts of the case as follows:

> On September 19, 2004, [Petitioner] was living in a room in a house in East Palo Alto. He rented the room from Karen Johnson, who owned and resided in the house.
>
> [Petitioner] was acquainted with Daryl Thomas, a homeless crack cocaine addict. In early September 2004, Thomas had a disagreement with his girlfriend, with whom he lived, and moved out of her home. [Petitioner] told him he could stay in his room until the house was sold. Thomas began staying in [Petitioner's] room on September 17 or 18, 2004. He brought two suitcases full of his clothing and shoes. On the evening of September 18th, he spent the night alone in [Petitioner's] room.
>
> Thomas left the room early in the morning of September 19th. He returned and crawled through [Petitioner's] window because he did not have a key. Johnson saw him entering by the window at approximately 9:40 a.m. She told Thomas to get his belongings and leave. Thomas and a male friend retrieved his two suitcases and left. Thomas did not steal anything from [Petitioner], "but if [Petitioner] said something was missing, more than likely [Thomas' friend] did."
>
> At about 2:30 p.m. that day, Johnson told [Petitioner] that Thomas had been inside his room and had removed two suitcases. When Johnson saw [Petitioner] at approximately 6:00 p.m., [Petitioner] appeared "upset" and a "little" angry. [Petitioner] said he thought that Thomas had taken some of his property. Johnson went out, and returned around 8:30 p.m. She saw [Petitioner] when she returned, who seemed agitated and said he had been looking for Thomas.
>
> At approximately 11:45 p.m. that evening, [Petitioner] came to Johnson's door. He told her that Thomas had returned, and [Petitioner] asked her to call the police.

3

Johnson called police dispatch.  Within five to ten minutes of [Petitioner] coming to her door, Johnson heard a voice and looked out her window.  She saw [Petitioner] leaning over a man in the foliage and cursing at him.  Johnson then saw the man, whom she assumed to be Thomas, run out of the yard screaming loudly.  [Petitioner] came back inside and asked Johnson if she had called the police.  He was holding "two knives, one in each hand."  [Petitioner] told her "I could have killed that nigger, I could have stabbed him in the heart."  Police arrived within five minutes.  Johnson showed them where she kept her knives in the kitchen.

Because Johnson was in the process of selling her home, she entered [Petitioner's] room to clean during the weekend after the stabbing.  She began folding clothing that was on the floor.  In the clothing, she found a knife with a brown stain on it.  To the best of Johnson's knowledge, no one other than [Petitioner] had been in the room since September 19, 2004.

Dr. David Gregg, a trauma surgeon at Stanford Hospital, treated Thomas shortly after midnight on September 20, 2004.  Thomas had a deep laceration "into the belly of the muscle" in his right leg.  He was "not completely alert," and had lost "probably half of his blood volume."  Thomas's toxicology screen indicated exposure to marijuana, amphetamines, and cocaine.

At approximately 3:00 a.m. on September 20th, San Mateo County Detective Frank Taylor interviewed [Petitioner] at the police station.  [Petitioner] told him that Thomas arrived at his residence, and he told Johnson to call the police.  [Petitioner] went outside to see if Thomas was vandalizing his car.  [Petitioner] stated that Thomas looked like he was "about ready to swing at me," because of "the look on his face."  [Petitioner] saw nothing in Thomas's hands, and Thomas had no weapons that he "kn[e]w of."  [Petitioner] was not afraid of Thomas.  He stabbed Thomas when he was already on the ground.  [Petitioner] was so angry he could have killed Thomas, and he told Thomas so.

4

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

> [Petitioner] stabbed Thomas because he "just
> wanted him out of there."
>
> At trial, [Petitioner] testified that he
> grabbed one knife, and went outside because
> he was afraid Thomas would damage his car.
> Once Thomas saw the knife, he became "even
> more intimidating," and lunged and swung at
> [Petitioner].  [Petitioner] stabbed Thomas in
> the leg, and he fell into a tree.  He did not
> stab Thomas while he was on the ground.
> [Petitioner] yelled at him to leave, and
> Thomas got up and ran away screaming.

8

Doc. #11-2, Ex. 6 at 2-4.

9

10

### III

11

Under the Antiterrorism and Effective Death Penalty Act

12

of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, a federal

13

court may not grant a writ of habeas corpus on any claim

14

adjudicated on the merits in state court unless the adjudication:

15

"(1) resulted in a decision that was contrary to, or involved an

16

unreasonable application of, clearly established federal law, as

17

determined by the Supreme Court of the United States; or (2)

18

resulted in a decision that was based on an unreasonable

19

determination of the facts in light of the evidence presented in

20

the State court proceeding."  28 U.S.C. § 2254(d).

21

"Contrary to" requires a finding that the state court's

22

conclusion of law is opposite Supreme Court precedent or the

23

state court's decision differs from Supreme Court precedent on a

24

set of materially indistinguishable facts.  <u>Williams v. Taylor</u>,

25

529 U.S. 362, 412-13 (2000).  A state court "unreasonably

26

appli[es]" federal law if it identifies the correct governing

27

legal principle from Supreme Court precedent, "but unreasonably

28

5

1   applies that principle to the facts of the prisoner's case." Id.

2   at 413.  A federal habeas court making the "unreasonable

3   application" inquiry should ask whether the state court's

4   application of clearly established federal law was "objectively

5   unreasonable." Id. at 409.

6       The only definitive source of clearly established

7   federal law under 28 U.S.C. § 2254(d) is in the holdings (as

8   opposed to the dicta) of the Supreme Court at the time of the

9   state court decision.  Williams, 529 U.S. at 412; Clark v.

10  Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law

11  may be "persuasive authority" for purposes of determining whether

12  a state court decision is an unreasonable application of Supreme

13  Court precedent, only the Supreme Court's holdings are binding on

14  the state courts and only those holdings need be "reasonably"

15  applied.  Clark, 331 F.3d at 1069.

16      In determining whether the state court's decision is

17  contrary to, or involved an unreasonable application of, clearly

18  established federal law, a federal court looks to the decision of

19  the highest state court to address the merits of a petitioner's

20  claim in a reasoned decision.  LaJoie v. Thompson, 217 F.3d 663,

21  669 n.7 (9th Cir. 2000).

22

23                              IV

24      The instant Petition consists of a hopelessly confusing

25  amalgamation of copies of previously filed pleadings in state

26  court, which include exhibits with cover sheets that use

27  identical exhibit letters and miscellaneous correspondence to and

28

                              6

from Petitioner and the state courts and his appellate counsel. These documents are haphazardly inserted amidst the Court's seven-page form petition for writ of habeas corpus.  As a result, it is difficult to determine the bases of the claims Petitioner is raising.

On page six of the Court's form petition, Petitioner designates one claim as "Incompetence of Counsel; Ineffective Assistance of Counsel"; a second claim as "Due Process of Law; Prosecutorial Misconduct"; and a third claim as "Ineffective Assistance of Appellate Counsel."  To make matters more confusing, under the "supporting facts" section of the form petition, Petitioner writes "See:  (Exhibit D)" but does not indicate to which of the two exhibits he attaches to his Petition as "Exhibit D" he refers.  The "Exhibit D" that appears first in the Petition includes what seems to be a partial copy of a petition for rehearing filed in the California Supreme Court and a portion of a form petition for writ of habeas corpus filed in state court.  The "Exhibit D" that appears second in the Petition includes a March 22, 2006 order of the San Mateo County Superior Court denying Petitioner habeas relief on exhaustion grounds; an August 23, 2006 order of the San Mateo County Superior Court denying Petitioner relief on the merits; a handwritten "Complaint for Violation of Defendant's Rights to Due Process and Equal Protection of the Law" dated February 2, 2005 directed to the California Supreme Court and a February 7, 2005 letter sent in response from the clerk of the California Supreme Court to Petitioner.

7

United States District Court
For the Northern District of California

As best as the Court is able to ascertain from reviewing the materials, it appears Petitioner claims he was denied effective assistance of both trial and appellate counsel and that he was denied due process as a result of prosecutorial misconduct.  The Court analyzes these claims below.

**A**

Petitioner claims trial counsel was ineffective because he failed to:  (1) make a motion to suppress Petitioner's interrogation by police; (2) investigate a mental health defense; (3) request proper jury instructions; and (4) object to alleged prosecutorial misconduct.

The Sixth Amendment guarantees the right to effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. <u>Id.</u> at 688.

To prove deficient performance, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688.  To prove counsel's performance was prejudicial, Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

**8**

1

Petitioner first claims that trial counsel was ineffective because he failed to make a motion to suppress Petitioner's statements to police.  Petitioner claims that his statements were inadmissible because they were involuntary as a result of him being on psychiatric medication.

The state superior court rendered the last reasoned opinion on this issue on August 23, 2006, Doc. #1, Ex. D (2nd); the Court's analysis therefore focuses on that decision.  LaJoie, 217 F.3d at 669 n.7.  In denying the claim, the court stated:

> Here the Petitioner argues that his counsel ineffectively failed to move to suppress his confession on the grounds that his psychiatric medication rendered his confession involuntary.  But he has failed to cite any authority that would compel a court to grant a suppression motion on such grounds.  On the contrary, the cases he cites stand for the opposite proposition.  (See e.g. Colorado v. Connelly (1986) 479 U.S. 157, 165-66 (a confession is involuntary under the Due Process clause only when it is coerced by state action, not by a defendant's psychiatric problems).)
>
> . . . .
>
> Thus, the Petitioner was not prejudiced by his counsel's performance and has failed to state a prima facie case for the ineffective assistance of counsel.

Doc. #1, Ex. D (2nd) at 5.

To establish ineffective assistance of counsel based on the failure to litigate a Fourth Amendment issue, Petitioner must show that:  (1) the overlooked motion to suppress would have been meritorious, and (2) there is a reasonable probability that the jury would have reached a different verdict absent the

United States District Court
For the Northern District of California

1   introduction of the unlawful evidence.  <u>Kimmelman v. Morrison</u>,

2   477 U.S. 365, 375 (1986).

3         The voluntariness of a confession is evaluated by

4   reviewing both the police conduct in extracting the statements

5   and the effect of that conduct on the suspect.  <u>See</u> <u>Miller v.

6   Fenton</u>, 474 U.S. 104, 116 (1985); <u>Henry v. Kernan</u>, 197 F.3d 1021,

7   1026 (9th Cir. 1999).  Absent police misconduct causally related

8   to the confession, there is no basis for concluding that a

9   confession was involuntary.  <u>Colorado v. Connelly</u>, 479 U.S. 157,

10  167 (1986); <u>Norman v. Ducharme</u>, 871 F.2d 1483, 1487 (9th Cir.

11  1989).  "The test is whether, considering the totality of the

12  circumstances, the government obtained the statement by physical

13  or psychological coercion or by improper inducement so that the

14  suspect's will was overborne."  <u>United States v. Leon Guerrero</u>,

15  847 F.2d 1363, 1366 (9th Cir. 1988) (citing <u>Haynes v. Washington</u>,

16  373 U.S. 503, 513-14 (1963)).

17        Here, Petitioner has not demonstrated the occurrence of

18  any misconduct on the part of police – either by physical or

19  psychological coercion – during his interrogation.  On the

20  contrary, the record shows that the interviewing officers were

21  cordial and that Petitioner responded readily to their questions.

22  Doc. #11-2, Ex. 1, Vol. 2 at 2-27.

23        Because Petitioner has not offered any evidence to show

24  police engaged in misconduct during his interrogation, he

25  necessarily has not shown that a motion to suppress would have

26  been meritorious.  Trial counsel's failure to make a motion that

27  has not been shown to have merit cannot be considered deficient

28                                10

United States District Court
For the Northern District of California

1   performance under <u>Strickland</u>.  <u>See</u> <u>Kimmelman</u>, 477 U.S. at 375.

2   The superior court's denial of Petitioner's ineffective

3   assistance of counsel claim based on counsel's failure to move to

4   suppress Petitioner's confession was not contrary to, nor did it

5   involve an unreasonable application of, clearly established

6   federal law.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner's claim of

7   ineffective assistance of trial counsel on this particular ground

8   has no merit.

9

10                              2

11       Petitioner next claims trial counsel was ineffective

12  because he failed to investigate and present a mental health

13  defense.  Petitioner alleges that his psychiatric condition

14  rendered him unable to function responsibly, and therefore

15  counsel should have investigated and presented a defense based on

16  Petitioner's inability to form a criminally culpable mental

17  state.

18       The state superior court rendered the last reasoned

19  opinion on this issue on August 23, 2006, Doc. #1, Ex. D (2nd);

20  the Court's analysis therefore focuses on that decision.  <u>LaJoie</u>,

21  217 F.3d at 669 n.7.  In denying the claim, the court stated:

22           The Petitioner also argues that his
             counsel ineffectively failed to investigate
23           the defense that he could not function
             effectively due to his medications.  However,
24           he has not stated any authority, nor is this
             court aware of any, that stands for the
25           proposition that such as argument would be a
             valid legal defense to the offenses of which
26           he was charged and convicted.

27

28                             11

United States District Court
For the Northern District of California

> Thus, the Petitioner was not prejudiced by his counsel's performance and has failed to state a prima facie case for the ineffective assistance of counsel.

Doc. #1, Ex. D (2nd).

Here, Petitioner failed to demonstrate in state court, and fails to demonstrate here, that investigating and putting forth evidence of his mental state would have been a valid and potentially successful defense to the charges.  Under the circumstances, the Court cannot say that trial counsel's failure to investigate a defense that neither had legal merit nor any chance of success amounted to ineffective assistance of counsel under Strickland.  The state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d).  Petitioner's claim of ineffective assistance of trial counsel on this particular ground has no merit.

3

Petitioner next claims that trial counsel was ineffective because he failed to request jury instructions on self-defense, defense of habitation, and attempting to apprehend a person who has committed a felony.  The record shows that the jury received six instructions related to self-defense against assault, defense of property, and the right to eject a trespasser, however.  Doc. #11-2, Ex. 1, Vol. 1 at 156-61; see CALJIC Nos. 5.30; 5.31; 5.40; 5.50; 5.51; and 5.55.

**United States District Court**
For the Northern District of California

The California Court of Appeal provided the following background for this particular claim:

> [Petitioner] argues that the trial court erred in not instructing the jury on certain defenses.  He claims that the court had a sua sponte duty to instruct the jury with "the principles contained within the provisions of [Penal Code] section 197 [justifiable homicide]," and with modified versions of CALJIC numbers 5.10, 5.13, 5.16, and 5.25.  Alternatively, he claims that if the trial court had no sua sponte duty to instruct on the claimed defenses, his trial counsel was ineffective in failing to request those instructions.
>
> . . . .
>
> [Petitioner] maintains that the instructions he now claims were required were "consistent with [his] theory of the case, namely, self-defense, defense of habitation, and attempting to apprehend a person who has committed a felony."  [Petitioner's] sole theory of the case advanced at trial was that he committed the assault and battery in self-defense.  The court gave the jury six different instructions on self-defense: CALJIC numbers 5.30, 5.31, 5.40, 5.50, 5.51, and 5.55.  Those instructions were regarding self-defense against assault, defense of property, and the right to eject a trespasser.
>
> [Petitioner] now claims that the court had a duty to instruct the jury regarding justifiable homicide based on three different factual scenarios:  self-defense, defense of another and the necessity to apprehend a dangerous person who has committed a felony.  (CALJIC Nos. 5.13, 5.25, 5.10)  "It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (People v. Guiton (1993) 4 Cal.4th 116, 1129.)  Because justifiable homicide instructions had no application to the facts of this case, [Petitioner] claims the court should have given a modified version of the instructions.  Altering the justifiable homicide instructions to make them applicable

to the crimes charged here, while preserving a correct statement of law, would result in the self-defense instructions given by the court.

Justifiable homicide instructions did not apply either to the evidence adduced at trial or to [Petitioner's] defense theory at trial.  Moreover, the court instructed the jury regarding self-defense against assault, defense of property, and the right to eject a trespasser.  We find no error in the trial court's failure to give the instructions [Petitioner] now claims were required.

[Petitioner] claims, in the alternative, his trial counsel was ineffective based on his failure to request the "modified" justifiable homicide instructions.  "When a convicted defendant complains of ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  (Strickland v. Washington (1984) 466 U.S. 668, 687-688.) The defendant must show that "'"counsel had no rational tactical purpose for [his or her] omission."'"  (People v. Lucas (1995) 12 Cal.4th 415, 437, citing People v. Zapien (1993) 4 Cal.4th 929, 980.)  Here, the instructions requested by counsel were consistent with the defense theory and the facts demonstrated at trial.  Trial counsel's failure to request modified justifiable homicide instructions did not amount to ineffective assistance of counsel.

Doc. #11-2, Ex. 6 at 5-6.

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings.  Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  The error in refusing the instruction must so infect the trial that the defendant was deprived of his right to a fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment.  Id.

14

United States District Court
For the Northern District of California

Due process does not require that a jury instruction be given unless the evidence supports it. See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  Therefore, a defendant is entitled to an instruction on his defense theory only "if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant."  United States v. Boulware, 558 F.3d 971, 974 (9th Cir. 2009) (internal quotations omitted).  Further, a defendant is not entitled to have jury instructions raised in his precise terms where the given instructions adequately embody the defense theory.  United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996).  The significance of the omission of a requested instruction may be evaluated by comparing it to the instructions that were given.  Henderson v. Kibbe, 431 U.S. 145, 156 (1977).

Here, Petitioner complains that the six instructions the jury received, which related to self-defense against assault, defense of property, and the right to eject a trespasser, did not address the use of deadly force to resist an attempt to commit a felony or during an attempt to apprehend a person who has committed a felony, which is what Petitioner claims occurred on the night of the crime.  According to Petitioner's statements to the police admitted into evidence at trial, the victim knocked on Petitioner's door and stated that his reason for returning to the house was to retrieve a jacket.  Doc. #11-2, Ex. 1, Vol. 2 at 6-7.  Further, Petitioner stated that after the victim left the house, Petitioner, too, left to prevent the victim from

15

United States District Court
For the Northern District of California

1   vandalizing Petitioner's car, and that Petitioner ultimately "ran

2   him [the victim] off".   Id. at 6-7 & 12.   Petitioner's own

3   statements to police do not indicate he used deadly force on the

4   victim to prevent him from committing a felony.

5           Because the record does not support the theory that

6   Petitioner attempted to prevent a felony or apprehend a person

7   (i.e., the stabbing victim) who has committed a felony, and

8   because the six self-defense instructions the jury received were

9   consistent with Petitioner's theory of self-defense, trial

10  counsel's failure to request the particular instructions

11  identified by Petitioner did not rise to the level of deficient

12  performance under Strickland.   The state court's rejection of

13  this claim was not contrary to, nor did it involve an

14  unreasonable application of, clearly established federal law.

15  See 28 U.S.C. § 2254(d).

16          Even if the instructions Petitioner identifies as

17  lacking were warranted, their omission was not prejudicial when

18  they are evaluated in light of the instructions the jury did

19  receive.   Henderson, 431 U.S. at 156.   The six self-defense

20  instructions that were given, which related to self-defense

21  against assault, defense of property, and the right to eject a

22  trespasser, were sufficient to address Petitioner's state of mind

23  when he stabbed the victim.   Petitioner's claim of ineffective

24  assistance of trial counsel for failing to request certain jury

25  instructions has no merit, because there is no reasonable

26  probability that the jury would have reached a different verdict

27

28

16

1   but for counsel's failure to request certain jury instructions.

2   See Strickland, 466 U.S. at 694.

3

4                                   4

5           Petitioner next claims trial counsel was ineffective

6   for failing to object to prosecutorial misconduct during closing

7   argument.  He argues that the prosecutor engaged in misconduct by

8   introducing facts not in evidence and impugning defense counsel's

9   character.

10          The California Court of Appeal initially noted that

11  Petitioner's claim of prosecutorial misconduct was forfeited at

12  trial:

13              In general, a defendant may not complain
                on appeal of trial misconduct by a prosecutor
14              unless the defendant timely sought an
                assignment of misconduct and requested that
15              the jury be admonished to disregard the
                impropriety.  (People v. Young, (2005) 34
16              Cal.4th 1149, 1184-1185.)  [Petitioner] has
                made no claim that any harm could not have
17              been cured by objection, and consequently has
                waived any objection.
18

19  Doc. #11-2, Ex. 6 at 6.

20          The court nonetheless proceeded to analyze the claim on

21  the merits, noting:

22              Even had [Petitioner] preserved his
                claim, he must demonstrate that the
23              prosecutor's remarks during closing argument
                "'comprise[d] a pattern of conduct "so
24              egregious that it infect[ed] the trial with
                such unfairness as to make the conviction a
25              denial of due process."'"  (People v. Gionis
                (1995) 9 Cal.4th 1196, 1214.)  Conduct by a
26              prosecutor that does not render a criminal
                trial fundamentally unfair is prosecutorial
27              misconduct under state law only if it

28
                                   17

involves "'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'" (<u>People v. Gray</u> (2005) 37 Cal.4th 168, 216, citing <u>People v. Hill</u> (1998) 17 Cal.4th 800, 819.) "[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (<u>People v. Morales</u> (2001) 25 Cal.4th 34, 44.)

[Petitioner] claims that a number of the prosecutor's comments constituted "testimony." The range of the prosecution's argument "is properly very wide, and matters of common knowledge and historical facts may be referred to and interwoven in such argument." (<u>People v. Johnson</u> (1950) 99 Cal.App.2d 717, 730.) A prosecutor may properly "interject her own view if it is based on facts of record." (<u>People v. Frye</u> (1998) 18 Cal.4th 894, 1018.)

[Petitioner] objects to the following statement made in the rebuttal portion of the prosecution's closing argument: "But what I do know is that East Palo Alto is a dangerous place because of people like the defendant who think it's perfectly fine to stab another human being and then laugh about it later while describing it because that person stole from him." Contrary to [Petitioner's] assertion, the prosecutor's comment was not "testimony" about the relative safety of East Palo Alto, but a permissible comment on the evidence that [Petitioner's] actions made East Palo Alto dangerous. [Petitioner's] own counsel raised the issue of the dangerousness of East Palo Alto in his opening statement to argue that [Petitioner] had a reasonable fear of Thomas in the situation. Moreover, [Petitioner's] counsel raised the issue of East Palo Alto's dangers in his closing argument, to which the prosecution was responding. Defense counsel stated: "[Petitioner] checks and looks outside and doesn't see anyone or any sign of the police. And he lives in East Palo Alto. We don't live in East Palo Alto, but he does. East Palo Alto is not the suburbs in San Carlos, it's not the suburbs in Foster City. None of

18

us want to live in East Palo Alto, but unfortunately, my client does and so does Daryl Thomas."

Next, [Petitioner] objects to the following statements by the prosecutor in the rebuttal portion of closing argument: "Please do not be distracted by the let's-trash-the-victim-defense.  I hear that in every case.  Let's trash the victim. Let's distract you from what really happened and trash on Daryl [Thomas].  Yes, he's a thief.  Yes, he smokes crack.  Yes, he probably committed a burglary that day when he got immunity.  That wasn't discussed, but he'd like to bring it up so that's fine. . . .  So what?  Prostitutes can be raped, and crackheads can be stabbed." [Petitioner] claims that these statements were "testimonial" and improperly cast aspersions on his "'constitutional right to defend himself and be represented by counsel.'"  In the rebuttal portion of closing argument, the prosecutor is entitled to rebut defense counsel's arguments.  The prosecutor's remark that "I hear [a trash the victim defense] in every case" was not improper testimony, but allowable hyperbole. Likewise, there is no reasonable likelihood that the jury construed the prosecutor's rebuttal of defense counsel's argument that the victim's testimony could not be trusted as somehow "casting aspersions" on [Petitioner's] right to counsel and a defense.

[Petitioner] also objects to the statement in the colloquy quoted above that "Yes, [Thomas] probably committed a burglary that day when he got immunity.  That wasn't discussed, but [defense counsel] would like to bring it up so that's fine."  He claims that this comment "intentionally plac[ed] before the jury 'facts' outside the record," and "impugned defense counsel's character and integrity."  Again, the prosecutor made this argument in rebuttal, after defense counsel argued that Thomas had reason to testify falsely because he had received immunity from prosecution, and stated "what the prosecutor doesn't understand . . . is that Darryl Thomas committed a residential burglary that day."  The prosecutor's comment did not

**19**

impugn defense counsel's character, but simply explained why the prosecutor was discussing the issue in rebuttal.  Assuming this fact was outside the record, it was defense counsel, not the prosecutor, who initially revealed it to the jury.  Moreover, we fail to see any prejudice to [Petitioner] in the revelation that the victim may have committed a burglary on the day of the incident.

[Petitioner] also objects to the prosecutor's comments that he was "not just a sociopath and a barbarian, but also the most 'nonchalant, indifferent, nonremorseful' relater of facts surrounding a stabbing that she had ever seen."  "[P]rosecuting attorneys are allowed a wide range of descriptive comment," including "colorful terms." (<u>People v. Williams</u> (1997) 16 Cal.4th 153, 221.)  "A prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, as long as these arguments are not inflammatory and principally aimed at arousing the passion or prejudice of the jury."  (<u>People v. Pensinger</u> (1991) 52 Cal.3d 1210, 1251.)  Courts have considered numerous epithets used in closing arguments, including "animal," "parasite," and "perverted maniac," and found their use not to constitute misconduct.  (<u>See People v. Pensinger</u>, <u>supra</u>, at p. 1251; <u>People v. Terry</u> (1962) 57 Cal.2d 538, 561; <u>People v. Rodriguez</u> (1970) 10 Cal.App.3d 18, 36-37.)

The prosecutor's actual comment here was that "[W]e are not barbarians, we have laws. Defendant seems to be somewhat of a barbarian.  He seems to be somewhat nonchalant about this stabbing quite frankly. . . .  [¶] I don't know what a sociopath is, but he's probably pretty close.  I have never seen such a nonchalant, indifferent, nonremorseful describing of a stabbing . . . as I have in this case by the defendant." The prosecutor's actual statements, much milder than claimed by [Petitioner], were within the range of "colorful terms" properly used by the prosecutor in her rebuttal closing argument.

[Petitioner's] final claim of misconduct in closing argument is that the prosecutor

> "impugned defense counsel's character" by
> telling the jury, "in no uncertain terms,
> . . . that [Petitioner] changed his 'story'
> because of his conversations with his
> lawyer."  The prosecutor's actual words were
> "The defendant has certainly changed his
> story since he made that original statement
> to the police.  He's had time to think about
> it, he's had to talk to a lawyer, he's had
> time to make a plan of attack.  And the law
> tells you, hey, red flag, there's probably a
> reason why his story has changed."  There is
> no reasonable likelihood that the jury
> understood these comments as impugning
> defense counsel.  Instead, the prosecutor was
> making "a fair comment on the state of the
> evidence," suggesting that the most logical
> interpretation of the evidence was that
> [Petitioner] had been telling the truth in
> his statement to police in the early morning
> after the incident, and not testifying
> truthfully at trial.  (<u>People v. Mayfield</u>
> (1993) 5 Cal.4th 142, 178)  We do not find
> that any of the prosecutor's statements in
> closing argument rose to the level of
> misconduct.

Doc. #11-2, Ex. 6 at 6-10.

In evaluating a claim of prosecutorial misconduct, the relevant question is whether a prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)).  In determining whether a due process violation resulted from alleged prosecutorial misconduct, the Court must look to "the fairness of the trial, not the culpability of the prosecutor."  <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).  It "is not enough that [a prosecutor's] remarks were undesirable or even universally condemned."  <u>Darden</u>, 477 U.S. at 181.

United States District Court
For the Northern District of California

Prosecutors are afforded "reasonable latitude to fashion closing arguments," allowing them to "argue reasonable inferences based on the evidence." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993). A prosecutor's comments "must be evaluated in light of the defense argument that preceded it." Darden, 477 U.S. at 179. Remarks by a prosecutor that were "'invited,'" and "did no more than respond substantially in order to 'right the scale,'" are not improper. United States v. Young, 470 U.S. 1, 12-13 (1985); see United States v. Jackson, 84 F.3d 1154, 1158 (9th Cir. 1996).

Here, the prosecutor's criticism of the defense strategy to make a damaging witness seem unreliable was within the range of latitude afforded to prosecutors. See Necoechea, 986 F.2d at 1276. Further, the prosecutor's comments regarding that witness' grant of immunity were allowable because they were made after, and in response to, trial counsel's use of the same fact. See Darden, 477 U.S. at 179; Young, 470 U.S. at 12-13. The prosecutor's isolated statement that Petitioner "seems to be somewhat of a barbarian," although undesirable and perhaps "universally condemned" by some, does not rise to the level of infecting the trial with such unfairness that Petitioner's convictions were a denial of due process. Darden, 477 U.S. at 181. Finally, the statement the prosecutor made noting inconsistency between Petitioner's statements during the police interrogation and those made during trial was a fair comment based on the evidence. See Necoechea, 986 F.2d at 1276.

22

**United States District Court**
For the Northern District of California

The state court's rejection of Petitioner's claim that the prosecutor engaged in misconduct was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).  None of the prosecutor's statements, viewed either in isolation or together, resulted in a trial infected with such unfairness so as to amount to a denial of due process, Darden, 477 U.S. at 181; Donnelly, 416 U.S. at 643.  And for essentially the same reasons, Petitioner's derivative claim of ineffective assistance of counsel for failure to object to prosecutorial misconduct fails as well; it cannot be said that there is a reasonable probability that, had counsel objected to the prosecutor's comments during closing argument, the objection would have been sustained and the result of Petitioner's trial would have been different.  See Strickland, 466 U.S. at 694.

**B**

Petitioner also claims ineffective assistance of appellate counsel.  The substance of Petitioner's ineffective assistance of appellate counsel claims as set forth in the Petition is not entirely clear.  Respondent has interpreted Petitioner's claim fairly as appellate counsel's failure to raise the claim of ineffective assistance of trial counsel for failing to move to suppress Petitioner's statements to the police.  Doc. #11 at 11.

The Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first

United States District Court
For the Northern District of California

appeal.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 392 (1985).  A claim of ineffective assistance of appellate counsel is reviewed according to the <u>Strickland</u> standard.  <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir 1989); <u>United States v. Birtle</u>, 792 F.2d 846, 847 (9th Cir 1986).  That is, Petitioner must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.  <u>Miller</u>, 882 F.2d at 1434 & n.9 (citing <u>Strickland</u>, 466 U.S. at 688, 694; <u>Birtle</u>, 792 F.2d at 849).

The Court already has determined that the state appellate court's rejection of Petitioner's ineffective assistance of counsel claim regarding the failure to move to suppress Petitioner's statements was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.  For essentially the same reasons, Petitioner's claim of ineffective assistance of appellate counsel based on trial counsel's failure to move to suppress fails as well; it cannot be said that there is a reasonable probability that, but for counsel's failure to raise the claim, Petitioner would have prevailed on appeal.  <u>See</u> 28 U.S.C. § 2254(d); <u>Miller</u>, 882 F.2d at 1434 & n.9.

//

//

//

//

//

24

United States District Court
For the Northern District of California

V

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED.

The Clerk shall enter Judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED      August 24, 2009      _____
                               THELTON E. HENDERSON
                               United States District Judge

G:\PRO-SE\TEH\HC.07\Prater-07-5382-petition denied.wpd

25